UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, *et al.*,

        Plaintiffs,

v.

BRIDGEPORT PORT AUTHORITY,

        Defendant.

Case No. 03-CV-599 (CFD)

February 6, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL

### I. Introduction

Defendant Bridgeport Port Authority (the "Authority") seeks an Order from the Court compelling Plaintiff Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company") to respond fully to the written discovery requests propounded by the Authority. All of the information and materials sought by the Authority in its written discovery requests directed to the Ferry Company is either relevant in itself, or reasonably calculated to lead to the discovery of relevant, admissible information, and therefore falls within the scope of properly discoverable material under the Federal Rules of Civil Procedure. Although its objections are meritless, the Ferry Company still refuses to turn over a substantial amount of relevant information. As such, the Authority respectfully requests this Court compel the Ferry Company to provide full and complete answers to Interrogatories 5, 11, 12 and 20, and produce all documents and materials responsive to Requests 3, 11, 14 and 15 of the Authority's First Request for Production of Documents.

2261541

## II. Statement of Facts

The Ferry Company and three individuals[1] claiming to be "regular" passengers on the Ferry operated by the Ferry Company commenced this action alleging that a passenger wharfage fee imposed by the Authority on Ferry passengers is unlawful under various federal and state statutory, common law and constitutional grounds.[2] In addition to alleging that the Authority lacks the power to impose the fee, the plaintiffs allege that the amount of the fee improperly exceeds the benefits and services conferred by the Authority on the Ferry passengers. The Authority responded to the Complaint seeking dismissal on two alternative grounds. First, the Authority argued that under the primary jurisdiction doctrine, this matter should be more properly tried in the Federal Maritime Commission. Second, the Authority argued that the Ferry Company, which is not subject to and does not pay the passenger wharfage fee in question, lacks constitutional and prudential standing to protest its validity. That motion has been fully briefed and argued and is pending before the Court for decision. At this point, the Authority has not responded to the merits of the Ferry Company's allegations.

In response to the Authority's Motion to Dismiss on the standing issue, the Ferry Company filed a First Amended Complaint alleging that it "has been damaged and continues to be damaged by the wrongful imposition of the Ferry Tariff" and seeking "compensatory damages." First Amended Complaint ¶¶ 5, 57; *see also id.* ¶ 59 (describing theories of damages Ferry Company claims to have suffered). In Paragraph 61 of its First Amended Complaint, the

---

[1] One individual plaintiff, Robert Heller, filed a voluntary dismissal on July 30, 2003. The Authority also has pending before the Court a Motion for Partial Summary Judgment, arguing that Plaintiff Greg Rose lacks standing because his employer bears the cost of his passage on the Ferry.

[2] Although the passenger wharfage fee was first put in place in 1993, the Authority increased it slightly in the early part of 2003. The increase precipitated this litigation.

Ferry Company promises to "prove at trial the amount of the damages it has sustained." *Id.* ¶ 61. The Ferry Company refused to provide a calculation of its damages with its Rule 26(a)(1) Initial Disclosures. *See* Plaintiffs' Initial Disclosures § C, Exhibit F.[3]

The Authority understands and believes that the Ferry Company, knowing that it lacks standing to protest the validity of the passenger wharfage fee paid by the Ferry passengers, underwent significant efforts to locate passengers who were willing to be named as accommodation plaintiffs to circumvent the constitutional standing requirements of the federal courts. During the depositions of the three individual plaintiffs, it was revealed that the Ferry Company is paying their legal expenses and that they have no stake in this litigation.

With respect to the standing issue and the merits of the allegations pled in the Plaintiffs' First Amended Complaint, the Authority's First Set of Interrogatories and Request for Production of Documents seeks discovery regarding several topics, including: (1) passenger complaints the Ferry Company has received relating to the passenger wharfage fee or the cost of ferry transportation; (2) the efforts by the Ferry Company to persuade passengers to be named in the lawsuit and agreements between the Ferry Company and the three passengers who were named as plaintiffs; and (3) the damages suffered by the Ferry Company, including its financial position during the time that the passenger wharfage fee has been in place. The Authority believes this information will show that the Ferry Company has not sustained any damages from the passenger wharfage fee and that there are several passengers who believe that the benefits conferred by the Authority outweigh the modest cost of the fee.

On August 5, 2003, the Authority served its First Set of Interrogatories and First Request for Production of Documents on the Ferry Company. On September 19, 2003, the Ferry

---

[3]   All exhibits are filed with the Authority's Motion to Compel, filed contemporaneously herewith.

Company served objections and limited responses to these discovery requests. (The Ferry Company's responses and objections to the Authority's Interrogatories are attached as <u>Exhibit A</u> to its Motion to Compel, and its responses and objections to the Authority's Request for Production are attached as <u>Exhibit B</u> to its Motion to Compel.)

### III. Argument

Rule 26(b) of the Federal Rules of Civil Procedure evidences a policy by the federal courts to allow for a broad scope of discovery. This rule permits parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Furthermore, the "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Rule 26(b) embraces a broad definition of relevance which even includes information that would be inadmissible at trial. *See Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980). As one federal district court has explained:

> A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action.

*Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (quoting *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)).

All of the Authority's requests fit within this broad definition of relevancy. Every piece of information that the Authority seeks is calculated to aid in preparation for trial as is the intent of Rule 26. The information is not cumulative or extraneous, but rather necessary to allow the Authority properly to defend this action. The Ferry Company's refusal to respond fully to the

discovery requests properly served upon it by the Authority violates this broad standard evidence by the rules and relevant caselaw.

The bulk of the Ferry Company's claims arise under federal constitutional and statutory grounds. Its claim of privilege is thus governed by federal law. *See* Fed. R. Evid. 501. The attorney-client privilege is limited only to communications made in confidence *to an attorney* by a person who is, or is about to become, a client for purposes of obtaining legal counsel. *See* 8 John H. Wigmore, Evidence § 2292 (1961). Likewise, the federal court work product doctrine is limited to materials "prepared in anticipation of litigation or for trial by or for another party or by or fot that other party's representative." Fed. R. Civ. P. 26(b)(4); *see also* 8 Wright & Miller, Federal Practice & Procedure § 2024 at 200-01 (1970) ("The test for work product is whether, having revised the nature of the documents and the factual situation in a particular case, the documents can fairly be said to have been prepared because of the prospect of a party having to litigate that particular case or a closely related case."). As the Supreme Court has explained, the work product doctrine was designed only to prevent "unwarranted inquiries into the files and mental impressions of an *attorney*." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (emphasis added).

The Ferry Company's objections on the basis of irrelevancy and confidentiality are utterly groundless. Its unfounded objections on the basis of attorney/client privilege and the work product doctrine are equally without merit. All of the information requested by the Authority is relevant to this action, and the Ferry Company should be compelled to produce the requested non-privileged information and documents.

A. **The Ferry Company's Specific Objections to the Authority's Interrogatories are Without Merit and Should be Overruled**

**Interrogatory No. 5:** This interrogatory seeks information relating to the efforts taken by the Ferry Company or on its behalf "to have individual persons or entities named as plaintiffs in this case," and requests that the Ferry Company provide specific information about those efforts, including the names of people contacted, the date of the contact, the communications with the person, and the reason why people contacted are not named as plaintiffs in this case.

The Ferry Company's answer to this Interrogatory is completely non-responsive; other than the three individuals named in the Complaint, it has refused to disclose the names of other people contacted on the grounds of "attorney-client privilege and the work-product doctrine." However, in response to subpart (c), it states that "Frederick A. Hall and/or Louis Rinaldo" spoke to several passengers "kn[own] to be repeat users of the ferry" about the fee, "and asked whether they would be interested in joining a legal action to challenge the legality of the tariff." Neither Hall nor Rinaldo is an attorney. Certainly, conversations these non-attorneys had with their passengers about the fee imposed by the Authority, including the identity of the passengers these non-attorneys chose to speak to and the content of the conversation, are not privileged. One party's efforts to manufacture evidence to support a lawsuit or its efforts to convince other persons to join its frivolous fight are not protected under any recognizable privilege of which the Authority is aware.

Moreover, the information sought in Interrogatory No. 5 is relevant to the issues in the case. The identity of persons who the Ferry Company spoke with about joining the litigation as a plaintiff who were ultimately not named as plaintiffs and the reason those persons are not named as plaintiffs is relevant to the issue whether there are repeat passengers who do not protest the fee and who believe that the benefits conferred by the Authority on the passengers and the City of

2261541                                            - 6 -

Bridgeport outweigh the modest amount of the fee. As noted, one of the bases of the plaintiffs' claims that the wharfage fee is invalid is based on its belief that the fee exceeds the benefits and services provided by the Authority to the Ferry passengers.

**Interrogatory No. 11**: This interrogatory requests that the Ferry Company identify contracts and agreements to which it is a party and which any of the individual plaintiffs is also a party. The subparts of the interrogatory requests that the Ferry Company identify the date of the agreement, the identity of each party to the agreement, a description of the rights granted by the agreement, the identity of the persons who participated in any way in the negotiations, discussions or drafting of the agreement, and a description of all communications concerning the agreement. The Ferry Company's perfunctory responses, to "[s]ee response to interrogatory 5, particularly interrogatory 5(f), above," is completely non-responsive. In fact, the Ferry Company's response to Interrogatory No. 5(f) refers only to Deposition Exhibit 1, which is a redacted copy of the retainer agreement for the individual plaintiff,[4] with the Ferry Company and its attorneys.

The redacted retainer agreement is not responsive. The Authority has repeatedly requested that the Ferry Company and the individual plaintiffs (all of whom are represented by the same counsel in this litigation) produce a complete, non-redacted copy of their joint retainer agreement. They have repeatedly refused to do so on the basis of attorney-client privilege. That agreement is not protected by the attorney-client privilege, and should be produced in a complete, non-redacted form. *See, e.g., In re Shargel*, 742 F.2d 61, 63 (2d Cir. 1984); *United States v. Pape*, 144 F.2d 778, 782 (2d Cir. 1944).

---

[4] The document to which the Ferry Company refers and which has been marked as Deposition Exhibit 1 is filed with the Authority's Motion to Compel as <u>Exhibit F</u>.

Moreover, the Ferry Company's mere reference to Interrogatory No. 5 in its so-called "answer" to Interrogatory No. 11 in no way responds to the subparts of that interrogatory. In particular, the Ferry Company has provided no response to subpart (d) requesting the identity of the persons "who participated in any way in the negotiations, discussions or drafting of the contract or agreement, and [a description] with particularity [of] each person's involvement." Nor has it responded to subpart (e) requesting a description of each and every communication concerning the negotiation, discussion or drafting of the agreement. The Ferry Company should be compelled to answer fully Interrogatory No. 11.

**Interrogatory No. 12:** This interrogatory seeks information relating to complaints that the Ferry Company has received from any Ferry passengers about any portion of the fee for Ferry transportation. The subparts of the interrogatory request that the Ferry Company provide the date and location of the complaint, the identity of the person making the complaint and the person(s) to whom the complaint was made, whether the complaint was in writing or oral, whether the Ferry Company solicited the complaint, a description of the substance and content of the complaint, and a description of all communications concerning the complaint.

The Ferry Company responded to subpart (a) that the "dates and time are too numerous to itemize" and that the "usual place of such complaints is on board the ferry boat," and responded to subpart (b) that it "has not kept track of the identities of persons making the complaints." In response to subpart (e), the Ferry Company simply stated that it "is impossible to describe with particularity each and every complaint," but that "[g]enerally the complaints have been to the effect that the cost of the ferry is high." In its vague, unresponsive answers, the Ferry Company made absolutely no effort to itemize any complaints it received or to identify the persons making the complaint. Nor did it make any effort to describe the content of the complaints.

Although the Ferry Company may believe it is impossible to itemize all complaints it has received or to describe the content of everyone, surely it should answer the interrogatory to the extent it is able to, rather than refusing to answer it in its entirety. Moreover, although it stated that the complaints are "generally" that the costs were high, the Ferry Company made no effort to describe whether the complaints have been about the exorbitant rates charged by the Ferry Company or the modest wharfage fee imposed by the Authority. Certainly it is relevant to the Ferry Company's claim of damages whether the passengers it claims it is losing as a result of the modest fee imposed by the Authority are instead not using the Ferry because of the steep fares imposed by the Ferry Company.

**Interrogatory No. 20:** This interrogatory requests that the Ferry Company describe the damages it "claim[s] to have incurred as a result of the existence of the passenger wharfage fee imposed upon the Ferry," and requests that the Ferry Company include the amount of damages, the method with which it calculated its damages and the information it relied upon in doing so. The Ferry Company outright refused to answer this Interrogatory claiming that it "has not yet calculated its damages which precision."

Whether the Ferry Company has in fact suffered damages as a result of the wharfage fee which it claims is invalid is relevant both to its standing even to pursue this litigation (as discussed at length in the Authority's pending motion to dismiss) and the amount of compensatory damages the Ferry Company is seeking. Its failure to do so suggests that it knows it has not suffered any damages and is abusing the legal process in even proceeding with this litigation. The Ferry Company's refusal to provide any information as to its damages in answer to this interrogatory (or to provide a calculation of its damages with its initial disclosures as required by Rule 26(a)(2)) should not be condoned by the Court.

2261541                                    - 9 -

**B.     The Ferry Company's Specific Objections to the Authority's Request for Production are Without Merit and Should be Overruled**

**Request No. 3:** This request seeks the "tax return[s], financial report[s], profit and loss statement[s], expense record[s] and shareholder's report[s] of the Ferry Company from January 1, 1993 to the present." (The passenger wharfage fee first became effective in 1993). The Ferry Company has refused to produce any documents in response to this request on the bases of duplication, burden, relevance, and confidentiality. The Ferry Company has made no effort to explain how this request is duplicative to other discovery requests, not has it explained how this request is burdensome. These vague, unsubstantiated objections are the types of objections federal courts routinely deem improper, and should be overruled. *See St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000). The party resisting discovery — here, the Ferry Company — must show specifically how each request is duplicative or burdensome. *See Tubbesing v. Arnold*, 98 F.R.D. 555 (E.D. Mo. 1983), *rev'd on other grounds* 742 F.2d 401 (8th Cir. 1984). The Ferry Company has utterly failed to meet this standard.

The information and materials sought in Request No. 3 is relevant to the issues raised in the Ferry Company's Complaint. For example, certainly the financial position of the Ferry Company, including its profits, during the time the passenger wharfage fee has been in effect is relevant to its claim that it has suffered damages and decreased profits as a result of the wharfage fee. *See, e.g., PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108-09 (2d Cir. 1997) (noting that financial records are relevant to a plaintiff's claim of damages). As noted, to date, the Ferry Company has refused to produce any evidence of any kind to support its claim that it has suffered damages as a result of the modest passenger wharfage fee the Authority collects from its Ferry passengers. The Ferry Company's objection on privacy and

confidentiality grounds is equally meritless. There is no valid basis to withhold the relevant financial information sought on the grounds of confidentiality and privacy particularly here, where the party seeking the information is not a competitor of the Ferry Company. *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 568-69 (D. Kan. 1994) (holding that confidential documents are not immune from production because they are confidential nature).

**Request No. 11**: This request seeks "all documents concerning any and all leases to which [the Ferry Company has] been a party from January 1, 1993 to the present." (The passenger wharfage fee first became effective in 1993). The Ferry Company refused to produce any documents other than those relating to the lease for the dock facilities owned by the Authority. Significantly, in response to Request No. 10 in which the Authority requested all leases to which the Ferry Company is a party, the Ferry Company produced a lease it has with Port Jefferson, New York for docking facilities on the New York side of the Long Island Sound. Documents relating to that lease are relevant or likely to lead to the discovery of admissible evidence in this litigation. The Ferry Company bases part of its claim that the wharfage fee is too high on its position that it is disproportionate compared to the amount of its lease for docking space at the Authority's dock. *See* First Amendment Complaint ¶ 3. The limited discovery responses the Ferry Company chose to provide show that it also leases docking space on the New York side of the Long Island Sound. Certainly, documents relating to that other lease, including the negotiation of the cost of that lease, is relevant to the validity of the amount of its lease here and the amounts the Authority collets from the passengers to provide the services it does for them at the dock.

2261541

- 11 -

**Request No. 14:** Like Interrogatory No. 11, this request seeks all agreements or contracts that the Ferry Company is a party to and which any of the individual plaintiffs are also parties. The Ferry Company has refused to produce anything other than a redacted copy of the retainer agreement for the individual plaintiffs. As discussed above, the complete, non-redacted version of that agreement is not privileged or protected by the work product doctrine, and the Ferry Company should be compelled to produce it (and any other documents it has responsive to this request).

**Request No. 15:** Similarly, this request seeks copies of all retainer agreements to which the Ferry Company is a party and which any other party in the litigation is party. The Ferry Company has refused to produced anything other than a redacted copy of the retainer agreement for the individual plaintiffs. The complete version of that agreement is not privileged or protected by the work product doctrine, and it should be produced (along with any other documents the Ferry Company has responsive to this request).

## IV. Conclusion

The Authority submits that full and complete discovery responses from the Ferry Company are necessary for further defense of this action. The federal rules and relevant caselaw provide for a liberal scope of discovery. *See generally* Fed. R. Civ. P. 26(b). By failing to respond to the Authority's discovery requests, the Ferry Company has improperly prevented the Authority from obtaining the information it is entitled to under the relevant rules and which is necessary for its defense in this action. Without complete written discovery responses the Authority will be unable effectively to proceed to the next stages of discovery and has been unable to fully assess the Ferry Company's position in this case. By denying the Authority

access to this information, the Ferry Company has prejudiced and will continue to prejudice the Authority's interests in this litigation.

For the foregoing reasons, the Authority respectfully requests the Court enter its Order compelling the Ferry Company to fully respond to the Authority's First Set of Interrogatories 5, 11, 12 and 20, and the Authority's First Request for Production of Documents Nos. 3, 11, 14 and 15, as set forth in the Authority's Motion to Compel.

Dated: February 6, 2004

>Respectfully submitted,
>
>THOMPSON COBURN LLP
>   Edward J. Sheppard, #CT24760
>   1909 K Street, NW, #600
>   Washington, DC 20006
>   202-585-6900
>   Fax 202-585-6969
>   esheppard@thompsoncoburn.com
>
>By _/s/ Montgomery_
>   Suzanne L. Montgomery, #CT24761
>   One US Bank Plaza
>   St. Louis, Missouri 63101
>   314-552-6000
>   Fax 314-552-7000
>   smontgomery@thompsoncoburn.com
>
>Attorneys for Defendant Bridgeport Port Authority

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via electronic mail and U.S. Mail, postage prepaid, on the following counsel of record, this 6th day of February, 2004:

| | |
|---|---|
| Jonathan S. Bowman | Frank H. Loomis |
| Stewart I. Edelstein | Martin Domb |
| Cohen and Wolf, P.C. | Hill, Betts & Nash LLP |
| 1115 Broad Street | One World Financial Center |
| P.O. Box 1821 | 200 Liberty Street, 26th Floor |
| Bridgeport, CT 06601-1821 | New York, New York 10281 |

_/s/ Montgomery_

2261541