UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2004 MAR 12  A 10: 50

U.S. DISTRICT COURT
HARTFORD, CT.

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, ROBERT HELLER,
GREG ROSE, and FRANK C. ZAHRADKA,

Plaintiffs,

v.

BRIDGEPORT PORT AUTHORITY,

Defendant.

_____/

Case No. 03-CV-599 (CFD)

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL OF BRIDGEPORT PORT AUTHORITY

Defendant Bridgeport Port Authority (the "Authority") is before the Court seeking an Order compelling Plaintiff Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company") to fully respond to the Authority's written discovery requests. As set forth in its opening memorandum in support of this Motion to Compel, all information and documents sought by the Authority are relevant or reasonably calculated to lead to the discovery of admissible evidence. The Ferry Company has failed to show that any information or documents sought by the Authority are subject to any recognized privilege or that there is any valid basis for its refusal to respond to the Authority's requests. The Ferry Company's objections, as set forth in its opposition memorandum, are completely without merit and should be overruled.

### Argument

Each of the Authority's discovery requests seeks relevant evidence, or information reasonably calculated to lead to the discovery of admissible evidence in accordance with Rule 26(b) of the Federal Rules of Civil Procedure. Rule 26(b) is broad and includes not only evidence for use at trial, but in addition:

> inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case.

Fed. R. Civ. P. 26(b), advisory committee's note to 1946 amendment.

The Ferry Company's repeated refusal to thoroughly respond to the Authority's discovery requests violates the policy rationale underlying Rule 26 favoring the broad disclosure of relevant or potentially relevant information. The Ferry Company attempts to argue that the interrogatories and document requests are either privileged or too difficult to respond to, or, in the case of information related to damages, that it is not ready to respond yet. Each of these objections is entirely without merit and should be overruled by the Court.

Initially, the Authority notes that the Ferry Company rather circumspectly argues that the Authority waited too long to resolve this discovery dispute. While the Ferry Company states that that the Authority "waited <u>more than four months</u> to raise any discovery disputes," Opp. Memo at 5 (emphasis in original), it cites no cases or other authority holding that four months is inappropriate. During this time, both parties were engaged in discovery-related activities, and in fact under the current scheduling order, factual discovery does not close under April 30, 2004.

Moreover, the Ferry Company has had ample opportunity to update its responses as required by Rule 26(e), which obligates parties to supplement or correct disclosures, responses to interrogatories, or requests for production upon learning that prior responses are "incomplete or incorrect." The Ferry Company could easily have updated its responses either before or after the Authority's legal counsel notified Plaintiffs' legal counsel by letter in January 2004, of the need to fully and completely respond to the Authority's interrogatories and document requests. The Ferry Company's unsupported insinuation that four months is somehow too long simply has no merit and should be disregarded by the Court.

### A.  The Ferry Company's Objections to the Authority's Interrogatories Lack Merit and Should be Overruled

Interrogatory No. 5: The Ferry Company has raised several trivial objections to this Interrogatory, which seeks information relating to the Ferry Company's efforts to "have individual persons or entities named as plaintiffs in this case," and requests that the Ferry Company provide specific details pertaining to such efforts. The information is relevant to whether there are repeat passengers of the Ferry who do not protest the Authority's fee and who believe that the fee supports the benefits provided to passengers by the Authority.

The Ferry Company's position that its refusal to respond to this Interrogatory is justified because the information sought is protected by the attorney-client and work product privileges lacks merit because neither privilege applies. The attorney-client privilege extends only to communications between attorneys and clients or prospective clients. The limited response that the Ferry Company did provide indicates that Frederick A. Hall and Louis Rinaldo were responsible for communicating with potential plaintiffs about this lawsuit. Neither of these individuals is an attorney, and therefore, communications between Messrs. Hall and Rinaldo, and individuals that refused to participate as plaintiffs in this litigation are not privileged.

Similarly, the work product protection extends only to materials "prepared in anticipation of litigation or for trial" by an attorney. Fed. R. Civ. P. 26(b)(4); *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Neither case cited by the Ferry Company supports its argument that the work product doctrine includes conversations involving individuals, none of whom are attorneys, "following discussions" with counsel. Opp. Memo at 6.

*Draus v. Healthtrust, Inc., The Hosp. Co.*, 172 F.R.D. 384 (S.D. Ind., 1997), for example, addressed privileged communications between attorneys concerning potential litigation against a doctor. The company that owned the hospital where the doctor worked at the time of the lawsuit

was not the same company that owned the hospital at the time reports describing the hospital's problems with the doctor were filed with a government agency. *See id.* at 391. The court held that communications between the non-owning company, and the successor-in-interest hospital were privileged, because the hospital needed to obtain information about the report to properly participate in the lawsuit. *See id.* It also appears that attorneys participated in the hospital's discussions with the prior owner. For this reason, *Draus* is not analogous to this case, because the Ferry Company has admitted that its attorneys were not involved in discussions with other potential plaintiffs. Moreover, in *Draus*, the judge found that the hospital and prior owner shared a community of interest concerning the information about the doctor's activities. *See id.* at 392. There is no evidence of any such community of interest among ferry passengers in this case, particularly those that were asked to join the litigation and refused to do so.

The Ferry Company also claims to be protecting the privacy interests of the potential passengers who declined to participate in this lawsuit by refusing to disclose their identities to the Authority. *See* Opp. Memo at 7. *In re Grand Jury Subpoena dated Oct. 22, 2001*, 282 F.3d 156, 160 (2d Cir. 2002), cited by the Ferry Company in support of this argument, acknowledges only an attorney's right to a zone of privacy with respect to his or her work product, and has nothing to do with protecting the privacy interests of potential clients.

The Ferry Company also argues that its refusal to respond fully to this interrogatory is justifiable because the interrogatory contains subparts, resulting in a violation of the twenty-five question limit. *See* Opp. Memo at 5-6. Its selective paraphrasing of *Security Insurance Co. of Hartford v. Trustmark Insurance Co.*, No. Civ. 3:01CV2198(PCD), 2003 WL 22326563 (D. Conn, Mar. 7, 2003), fails to accurately state the legal rule, which is that subparts consist of separate, distinct questions *only when* they are "logically or factually independent of the question

posed by the basic interrogatory." *Id.* at *1. The subparts to which the Authority seeks responses are all details concerning the Ferry Company's apparently unsuccessful efforts to recruit additional plaintiffs and include names, dates, communications, and reasons as to why individuals declined to participate. The Ferry Company has not alleged that the subparts to this question are independent of the overall question posed, and it should be compelled to fully respond to each of the interrogatory's subparts.

Interrogatory No. 11 and Request Nos. 14 and 15: Interrogatory No. 11 requires the Ferry Company to identify and describe all contracts and agreements to which both it and the individual plaintiffs are parties, as well as provide details concerning the negotiation and drafting of any such agreements. Request No. 14 seeks copies of any agreement identified in Interrogatory No. 11, and Request No. 15 specifically seeks a copy of all retainer agreements to which both the Ferry Company and the individual plaintiffs are parties.

In response to each of these discovery requests, the Ferry Company has produced only a redacted copy of a retainer agreement between the Ferry Company, its attorneys and the individual plaintiffs, and has flatly refused to respond to the questions posed in the Interrogatory. The redacted retainer agreement is simply not responsive to these three discovery requests, and the Ferry Company should be compelled to answer Interrogatory 11 in its entirety and produce an unredacted version of the joint retainer agreement and any other agreements responsive to these requests. As discussed in the Authority's opening memorandum, this information is relevant to the issue of whether repeat passengers believe the wharfage fee is reasonable.

The Ferry Company's initial objection is that the retainer agreement is addressed to three individuals who declined to participate as plaintiffs in this litigation, and redacting their names protects their privacy. *See* Opp. Memo at 7-8. As previously discussed, neither the attorney-

client nor the work-product privilege is intended to protect the privacy interests of individuals. Moreover, the identity of clients is not considered privileged information; in fact, the cases cited by the Ferry Company in claiming privilege for portions of the retainer agreement clearly support disclosure of client identity. *See Vignelli v. United States Drug Enforcement Agency*, 992 F.2d 449, 452 (2d Cir. 1993) (holding that "client identity" does not "fall within the attorney-client privilege"); *Condon v. Petacque*, 90 F.R.D. 53, 54 (N.D. Ill. 1981) (noting that "the fact of representation itself" is not privileged).

The Ferry Company's primary objection to producing a full, nonredacted copy of this retainer agreement is that the retainer agreement is subject to the attorney-client privilege and the work product doctrine. In general, retainer agreements are not considered privileged information and are therefore discoverable. *See, e.g., In re Shargel*, 742 F.2d 61, 63 (2d Cir. 1984); *U.S. v. Pape*, 144 F.2d 778, 782 (2d Cir. 1944) (holding the attorney-client privilege is "limited to confidential communications, and a retainer is not a confidential communication); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 522 (D. Conn. 1976) ("[N]o legitimate interest of the client is impaired by disclosing" legal advice that does not reveal facts communicated by the client to the attorney.); *Allen v. West Point-Pepperell, Inc.*, 848 F. Supp. 423, 431 (S.D.N.Y. 1994) (retainer agreements are not privileged); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("[a]ttorney's bills and communications regarding retainer agreements are not privileged").

The Ferry Company, as the party "asserting the privilege and resisting discovery," *has not met its burden* to establish that the retainer agreement contains confidential, privileged information. *See Allen*, 848 F. Supp. at 426. Because the retainer agreement is neither privileged nor protected by the work product doctrine, the Ferry Company should be compelled to produce an unredacted copy of it.

Interrogatory No. 12: This Interrogatory seeks detailed information concerning complaints that the Ferry Company claims to have received from passengers about the fee for Ferry transportation. As discussed in the Authority's opening memorandum, this information is relevant to whether passenger complaints pertain to the minimal $1.50 - $2.00 wharfage fee imposed on passenger tickets by the Authority, or whether passenger complaints actually relate to the exorbitant rates charged by the Ferry Company.

In its opposition, the Ferry Company responds with general statements to the effect that passenger complaints are too numerous to itemize, the Ferry Company has not attempted to document any passenger complaints, and describing the nature of the complaints is impossible. *See* Opp. Memo at 8, 9. This response is completely self-serving and does not excuse the Ferry Company's failure to respond to a legitimate inquiry about an issue that is very much at the heart of this litigation. The Ferry Company asks both the Court and the Authority to accept, without any supporting evidence, the Ferry Company's proposition that many passengers complain about the high cost of using the Ferry and the passenger complaints are always about the $2.00 fee imposed by the Authority and never about the high ticket price that the Ferry Company imposes. The Ferry Company should be compelled to answer this interrogatory in its entirety, without asking this Court and the Authority to make such absurd inferences in its favor.

Interrogatory No. 20: This interrogatory requests that the Ferry Company describe the damages it claims to have sustained as a result of the Authority's passenger wharfage fee. The Ferry Company has refused, claiming that this issue is "not worthy of the Court's attention" because it has "not yet quantified its damages." Opp. Memo at 9.

Whether the Ferry Company has actually incurred damages is relevant to both its standing to pursue this litigation, and the amount of compensation that the Ferry Company is

seeking from the Authority. The Ferry Company's failure to disclose damage-related information as required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, and its failure to respond to written discovery on this topic, is consistent with the presumptuous position that it has continuously taken throughout this litigation — that it is automatically entitled to whatever amount that it decides is not somehow directly related to the Ferry Company, regardless of whether the Ferry Company has actually been harmed by the fee it claims is invalid.

The Ferry Company has had ample opportunity to calculate its damages. Even if it does intend to calculate damages in terms of the amount of the fee rather than in terms of compensation for the harm it has supposedly experienced, it could have provided an estimate of its damages based on information contained in its own financials or obtained through discovery. The Ferry Company's reticence to calculate its own damages supports an inference that it has not actually been harmed as a result of the Authority's fee. The Ferry Company should be compelled to fully respond to this Interrogatory, because it has not shown that its failure to disclose damage-related information is either substantially justified or harmless.

### B. The Ferry Company's Objections to the Authority's Requests for Production Lack Merit and Should be Overruled

Request No. 3: This request seeks all tax returns, financial reports, profit and loss statements, expense records, and shareholder reports of the Ferry Company from 1993 through the present. The Ferry Company objects to this request, claiming that the information sought is confidential and irrelevant to damages, and disclosure would be extremely harmful for the Ferry Company. None of these objections are well-founded; the Ferry Company should be compelled to produce its financial information, which is relevant to the harm it claims to have experienced as a result of the Authority's fee and its standing to pursue this lawsuit.

In its opposition, the Ferry Company initially repeats its argument that because it intends

to calculate damages in terms of the fee that the Authority has collected, the Ferry Company's financial information is not relevant to the issue of damages. *See* Opp. Memo at 10. This argument is illogically and irrationally presumptuous. The Ferry Company is not, as a matter of right, entitled to assert without factual support that it has been damaged merely by virtue of the fact that the Authority has collected a wharfage fee from its passengers. The Ferry Company must show that it has actually been harmed as a result of the fee. Surely, the Authority is entitled to have an expert witness of its choosing examine the factual data supporting the Ferry Company's claim of damages to determine if the claim is reasonable or accurate.

The Ferry Company also argues that this information is confidential and highly sensitive, citing *Corbett v. Free Press Ass'n*, 50 F.R.D. 179 (D. Vt. 1970), and *Palmer v. Reader's Digest Ass'n, Inc.*, 122 F.R.D. 445 (S.D.N.Y. 1988). *See* Opp. Memo at 10-11. Neither of these cases support its position. In *Corbett*, the court stated that the financial data at issue, while "generally of a confidential nature" was not relevant to the plaintiff's claim of duress, and did not compel production at that time, but held that parties could easily produce the information at trial if necessary or relevant. *See Corbett*, 50 F.R.D. at 180. In *Palmer*, the court held that confidential business information *was subject to discovery and should be disclosed*, subject to a protective order. *See Palmer*, 122 F.R.D. at 447. The Ferry Company has not factually supported its speculative, highly inflammatory accusation that the financial data sought by the Authority is likely to be misused by a competitor, the Authority, or any other individual.

In support of its contention that it should not be compelled to disclose financial information, the Ferry Company submitted a Declaration by Brian A. McAllister, the principal of the Ferry Company. This declaration contains numerous vague, conclusory allegations of harm the Ferry Company claims it would encounter if compelled to respond to this document request.

All of Mr. McAllister's unsubstantiated allegations are meritless, and none factually support the Ferry Company's contention that it will be harmed if this data is not disclosed. There is no valid basis for denying the Authority the materials sought in Request No. 3.

Request No. 11: This request seeks all documents concerning all lease agreements to which the Ferry Company is a party. The Ferry Company produced only documents pertaining to its lease with the Authority. Specifically, the Authority is requesting all documents associated with the Ferry Company's lease of facilities at Port Jefferson, Long Island, New York (the other location where the Ferry docks). This information is relevant because the Ferry Company is contending that the wharfage fee is too high compared to its lease for docking space. Documents relating to the Port Jefferson lease will verify the amount the Ferry Company collects from passengers that is actually used to provide various services at the dock.

The Ferry Company's objection that this request is broad and too burdensome is without merit. The Ferry Company produced a limited number of documents pertaining to its lease with the Authority. The Ferry Company has not shown that undertaking a similar search for documents relating to the Port Jefferson lease is an undue burden.

## Conclusion

The Ferry Company should be compelled to produce full and complete discovery responses in accordance with the liberal scope of discovery provided for in the federal rules. The Authority seeks only relevant evidence, and the Ferry Company ongoing refusal to comply with the Authority's written discovery requests continue to prejudice the Authority. For all of the forgoing reasons, the Authority respectfully request the Court enter an Order compelling the Ferry Company to fully respond to the Authority's interrogatories and document requests as set forth in its Motion to Compel.

Dated: March 11, 2004

        Respectfully submitted,

        THOMPSON COBURN LLP

        By_____
        Suzanne L. Montgomery, #CT24761
        One US Bank Plaza
        St. Louis, Missouri 63101
        314-552-6000
        Fax 314-552-7000
        smontgomery@thompsoncoburn.com

        Edward J. Sheppard, #CT24760
        1909 K Street, NW, #600
        Washington, DC 20006
        202-585-6900
        Fax 202-585-6969
        esheppard@thompsoncoburn.com

        ROBERTS, ROSE & BATES
            John W. Roberts, #CT05947
            17 Hoyt Street
            P.O. Box 3610
            Stamford, CT 06905
            203-324-6755
            Fax 203-348-5802
            jroberts@robertsrosebates.com

        Attorneys for Defendant Bridgeport Port Authority

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via electronic mail and U.S. Mail, on the following counsel of record, this 11th day of March, 2004:

Jonathan S. Bowman  
Stewart I. Edelstein  
Cohen and Wolf, P.C.  
1115 Broad Street  
P.O. Box 1821  
Bridgeport, CT 06601-1821  
jbowman@cohenandwolf.com

Frank H. Loomis  
Martin Domb  
Hill, Betts & Nash LLP  
99 Park Avenue, 20th Floor  
New York, NY 10016-1601  
floomis@hillbetts.com  
mdomb@hillbetts.com

_/s/ Montgomery_