UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, et al.,

            CASE NO. 3:03 CV 599 (CFD)

Plaintiffs,

- against -

BRIDGEPORT PORT AUTHORITY,      March 12, 2004

Defendant.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE
AND MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514

*and*

COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504

*Attorneys for Plaintiffs and Intervenors*

{NY020672.1 }

**Table of Contents**

                                                    **Page**

Introduction ...................................................................................................................... 1

ARGUMENT

I.     BRIAN A. McALLISTER, McALLISTER T&T AND
       CONCESSIONS ARE ENTITLED TO INTERVENE. ............................................. 5

II.    THE SUBPOENA SHOULD BE QUASHED AND
       A PROTECTIVE ORDER SHOULD BE ENTERED. ............................................. 7

       A.    The Ferry Company and the Intervenors
            Have Standing to Object to the Subpoena ................................................... 7

       B.    The Standard on Motions to Quash
            Subpoenas and for Protective Orders .......................................................... 7

       C.    The Motion Should Be Granted With Respect to
            the Intervenors' Banking Records. .............................................................. 8

       D.    The Motion Should Be Granted With Respect to
            the Ferry Company's Banking Records. .................................................... 10

III.   AS THE SUBPOENA WAS ISSUED IN BAD FAITH,
       THE PORT AUTHORITY SHOULD BE SANCTIONED ................................... 11

Conclusion .................................................................................................................... 13

Brian A. McAllister, McAllister Towing and Transportation Company, Inc. ("McAllister T&T"), Steamboat Concessions, Inc. ("Concessions") (collectively the "Intervenors"), and plaintiff Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company"), submit this memorandum of law in support of: (a) the Intervenors' motion to intervene in this action for the sole purpose of moving for relief with respect to a subpoena for documents (the "Subpoena") served by defendant, Bridgeport Port Authority (the "Port Authority"), on Fleet National Bank ("Fleet"), which seeks production of Intervenors' and the Ferry Company's banking and financial documents, and (b) the Intervenors' and the Ferry Company's motion to quash the Subpoena and for a protective order preventing the disclosure of the documents sought by the Subpoena.

### **Introduction**[1]

In this action, plaintiffs – the Ferry Company and two of its passengers – challenge the legality of a ferryboat tariff imposed by the Port Authority. The Ferry Company provides ferry service for vehicles and passengers between Bridgeport and Port Jefferson. It has provided such service continuously since 1883. The Port Authority first imposed the tariff in 1993, shortly after it was established. The tariff is a fee on vehicles and passengers. The Ferry Company collects the tariff from passengers at the time they pay their fares, and remits the collected funds to the Port Authority each month (less a nominal service charge).

The tariff has been a constant source of rancor and dispute between the Port Authority and the Ferry Company, and has been very unpopular with ferry passengers, because it drives up the cost of using the ferry. No such tariff is imposed on ferry passengers on the Long Island

---

[1] The following references are used herein: "**McAllister Decl.**" means the accompanying Declaration of Brian A. McAllister, and "**Domb Decl.**" means the accompanying Declaration of Martin Domb, both dated March 12, 2004.

side, nor is such a tariff imposed on passengers of a competing ferry service between New London, Connecticut and Orient Point, Long Island.

Total tariff collections have increased steadily and significantly each year.  In the first full year (1994) they totaled about $450,000.  Last year (2003), they reached about $1.3 million.  Total collections have increased principally because of:  (1) steady increases in the number of vehicles and passengers, (2) the replacement of older ferry boats with newer and larger boats, (3) the addition of one ferry boat to the service, and (4) increases in tariff rates.

The essence of plaintiffs' claims is that the tariff is illegal – under various clauses of the United States Constitution, a federal statute and common law – because the tariff's proceeds greatly exceed the reasonable value of the facilities and services that the Port Authority actually provides to the Ferry Company or its passengers.

The documents sought by the Subpoenas – essentially every banking and financial document maintained by Fleet concerning its banking relationships with the Ferry Company, with two of its corporate affiliates, and with the corporations' President and sole shareholder – are not only highly confidential, but they have no conceivable relevance to the issues in this case.

In August 2003, near the outset of discovery in this case, the Port Authority requested that the Ferry Company produce the following documents (among other categories):

> Each and every tax return, financial report, profit and loss statement, expense record and shareholder's report of the Ferry Company from January 1, 1993 to the present.

(Motion to Compel filed on February 10, 2004 [Court docket # 43], Ex. B, at p. 3, ¶ 3.)  The Ferry Company promptly objected to this request, in its responses served in September 2003, as follows:

> The Ferry Company objects to this request on the grounds that:  (a) it is unreasonably cumulative, duplicative, overbroad and burdensome, (b) it

{NY020672.1 }                                                   - 2 -

> seeks documents that are not relevant to the claim or defense of any party and that do not appear to be reasonably calculated to lead to the discovery of admissible evidence, and (c) the Ferry Company is a privately owned company whose tax returns, financial statements and reports are highly private and confidential.

(*Id.*)  In January 2004, more than four months later, the Port Authority raised this as one of a handful of discovery disputes, and filed a motion to compel the Ferry Company to produce its financial records (Court docket # 43).  The Ferry Company filed its opposition papers on February 27, 2004 (Court docket ## 46-48).

The Port Authority issued and served its Subpoena without waiting for that motion – which concerned the discoverability of the Ferry Company's financial records – to be fully submitted to or decided by the Court.  The Port Authority's counsel issued the Subpoena on February 23, served it on Fleet on February 25, and gave notice of it to plaintiffs' counsel by e-mail on February 26 (at 9:35 p.m.).  The myriad documents sought by the Subpoena include the Ferry Company's financial records that are the subject of the previously filed and pending motion.

Only ten of the Subpoena's 36 paragraphs concern the Ferry Company's banking and financial records (Domb Decl. Ex. A).  The other 26 requests seek such records with respect to <u>non-parties</u> McAllister T&T, Concessions and Brian A. McAllister personally (*id.*).

McAllister T&T is a holding company that owns, in addition to the Ferry Company, some 25 other subsidiaries.  The Ferry Company is the only subsidiary of McAllister T&T that is engaged in the ferry business.  All other McAllister T&T subsidiaries are involved in the tug business and are completely unrelated to the business of the Ferry Company, except that they share a holding company.  The banking and financial information of McAllister T&T in the

possession of Fleet is highly confidential and is of no conceivable relevance to any claim or defense in this case. (McAllister Decl. ¶ 11.)

Concessions, a subsidiary of the Ferry Company, operates a snack bar at the Bridgeport ferry terminal. It leases from the Port Authority a portion of the ground floor of the terminal, in which it operates a kitchen and food counter. Concessions is not subject to the tariff at issue in this action; it alleges no claims; and no claims are alleged against it. Its confidential banking and financial information in the possession of Fleet are of no conceivable relevance to any claims or defenses in this action. (McAllister Decl. ¶ 12.)

Brian A. McAllister's only involvement in this case is in his capacity as President and indirect owner (through McAllister T&T) of the Ferry Company. His personal banking and financial records likewise have no conceivable relevance to this action. (McAllister Decl. ¶ 1, 13.)

Promptly after learning of the Subpoena, counsel for the Ferry Company and the Intervenors wrote to the Port Authority's counsel, informing them that they objected to the Subpoena; asking them for an explanation of why the subpoenaed documents have any relevance to the case; and asking them to adjourn the Subpoena's return date in view of the pending discovery motion (which involves overlapping issues). The Port Authority did not agree to adjourn the return date, never provided an explanation of relevance, and claimed (incorrectly) that the Ferry Company and the Intervenors have no standing to object to or move with respect to the Subpoena. (Domb Decl. ¶¶ 8-12 and Ex. C.)

# ARGUMENT

I.  **BRIAN A. McALLISTER, McALLISTER T&T AND CONCESSIONS ARE ENTITLED TO INTERVENE**

Brian A. McAllister, McAllister T&T and Concessions seek the Court's permission to intervene in this action for the limited purpose of objecting to and seeking relief with respect to the Subpoena.

Rule 24(a) of the Federal Rules of Civil Procedure, which governs intervention "of right," provides in relevant part:

> (a) **Intervention of Right**. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right, an intervenor must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 128-129 (2d Cir. 2001), *quoting* New York News, Inc. v. Kheel, 972 F.2d 482, 485 (2d Cir. 1992).

All four elements are present here. First, the motion to intervene is timely. The Intervenors first learned of the Subpoena on February 27, 2004. The Subpoena's return date is March 15, 2004. The Intervenors served their motion on March 12, only two weeks after learning of the Subpoena, and before its return date. *See* Nova Biomedical Corporation v. i-Stat Corporation, 182 F.R.D. 419, 422 (S.D.N.Y. 1998) (motion to quash was timely when it was served on the Saturday before the Monday return date for subpoena).

The second and third elements are easily met. The Intervenors clearly have an interest in the action (limited to the Subpoena), in that the Subpoena would require Fleet to produce essentially all of the Intervenors' banking and financial documents in Fleet's possession. Their interest clearly would be impaired if they did not intervene and Fleet produced the subpoenaed records. Courts routinely permit intervention under Rule 24(a) for the purpose of objecting to such subpoenas. Olympic Chartering S.A. v. Min. of Ind. and Trade of Jordan, 134 F. Supp. 2d 528, 529-30 (S.D.N.Y. 2001) (non-party permitted to intervene in order to object to subpoena seeking banking records from non-party bank); Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993) (party had privacy interest in business records, allowing it to contest subpoena served on non-party witness); Carey v. Berisford Metals Corp., 1991 WL 44843 (S.D.N.Y. 1991) (plaintiff had privacy interest in banking records, allowing him to contest subpoena served on non-party bank). *See also* Point II.A below.

Finally, the Intervenors' interests would not be adequately protected by the parties. The Ferry Company may protect its own interest in preserving the confidentiality of its banking records, but it cannot adequately protect the comparable interests of the Intervenors, because each bank customer has rights and privileges only with respect to its own banking records. Chazin v. Lieberman, 129 F.R.D. 97, 98 (S.D.N.Y. 1991). Furthermore, Fleet does not make its own objections to the Subpoena, but rather leaves it up to its customers, the Intervenors, to seek appropriate relief from the Court (Domb. Decl. ¶ 10 and Ex. D). Thus, the only way that Intervenors will be able to have this Court hear their objections is if they are permitted to intervene.

## II. THE SUBPOENA SHOULD BE QUASHED AND A PROTECTIVE ORDER SHOULD BE ENTERED

### A. The Ferry Company and the Intervenors Have Standing to object to the Subpoena

As a threshold matter, both the Intervenors and the Ferry Company have standing to object to and move for relief with respect to the Subpoena. "Ordinarily a party has no standing to quash a subpoena served on a third party, unless the party claims some personal right or privilege with regard to the documents sought." Chemical Bank v. Dana, 149 F.R.D. at 13 (*emphasis added*), *citing* Chazin v. Lieberman, 129 F.R.D. at 98 (defendants had standing to object to the issuance of subpoenas served by plaintiff on non-parties based on claim of personal privacy rights in the records sought), and *quoting* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2457 (1971). *See also* Sierra Rutile Limited v. Katz, 1994 WL 18571, at *2; Olympic Chartering S.A. v. Min. of Ind. and Trade of Jordan, 134 F. Supp. 2d at 530; and Carey v. Berisford Metals Corp., 1991 WL 44843 (all holding that a party has standing to object to a subpoena that seeks banking records from a non-party).

As set forth in Point I above, the Intervenors claim a personal right to the privacy of their banking and financial records in Fleet's possession (*see also* McAllister Decl., generally). The Ferry Company claims the same right (*id.*, Ex. A). Accordingly, both the Ferry Company and the Intervenors have standing to object to the Subpoena pursuant to Rules 26 and 45.

### B. The Standard on Motions to Quash Subpoenas and for Protective Orders

Generally, parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). "Relevancy is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter

that could bear on, any issue that is or may be in the case.'" Carey v. Berisford Metals Corp., 1991 WL 44843, *quoting* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

However, Fed. R. Civ. P 26(c) provides that, "[u]pon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . ." In addition, Fed. R. Civ. P. 45(c)(3)(B)(i) permits the court to quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. Sierra Rutile Limited v. Katz, 1994 WL 18571, at *2 (S.D.N.Y. 1994). Under either of these rules, the Court must weigh the relevance of the information sought against the objecting party's privacy interests. *Id.*; Chazin v. Lieberman, 129 F.R.D. at 98; Chemical Bank v. Dana, 149 F.R.D. at 13.

In balancing these interests, courts generally limit discovery under subpoenas to material that pertains to acts specified in the complaint.[2] *E.g.*, Chazin v. Lieberman, 129 F.R.D. at 98; Chemical Bank v. Dana, 149 F.R.D. at 13. Furthermore, in the context of a motion pursuant to Rule 26(c), "[c]onfidential information that does not establish a constitutionally protected privacy interest may nevertheless be entitled to protection from unwarranted public disclosure resulting from discovery in federal civil litigation. Syposs v. U.S. 181 F.R.D. 224, (W.D.N.Y. 1998).

### C. The Motion Should Be Granted With Respect to the Intervenors' Banking Records

The Subpoena calls for the production by Fleet of essentially every document in its possession concerning its banking relationships with each of the three Intervenors. It would

---

[2]    Because the Port Authority moved to dismiss the complaint (which motion is *sub judice*), it has not yet filed its answer.

require the production of every check, financial statement, bank account, loan agreement, guarantee, letter, memorandum, and "any other documents" reflecting Fleet's banking relationship with and services to each of McAllister T&T, Concessions, and Brian A. McAllister personally (Domb Decl. Ex. A; *see also* McAllister Decl. ¶ 14). It is difficult to conceive of a broader or more intrusive subpoena.

The records sought by the Subpoena are exactly the kind of "commercial information" explicitly recognized in Fed. R. Civ. P. 45(c)(3)(B)(i), whose disclosure a court may prevent. Sierra Rutile Limited v. Katz, 1994 WL 18571, at *2.

The Intervenors, like the Ferry Company, go to great lengths to protect the privacy of their financial information, which includes their banking records. Only a few top executives of the corporate Intervenors, and the banks that finance them, have access to the companies' financial information (McAllister Decl. Ex. A, ¶¶ 14, 16(a)). Brian A. McAllister, like any individual, has the right to keep his personal banking records private.

The Intervenors' banking and financial records have absolutely no relevance to this action. As discussed in the Introduction above, the central issue in this case is whether the Port Authority's tariff is excessive, and therefore illegal. The matters that are relevant to that issue include, for example: (a) the amount and proceeds of the tariff; (b) the nature and cost of the facilities and services provide by the Port Authority to the ferry operations and passengers; and (c) the nature and cost of the Port Authority's other activities, unrelated to ferry operations, which the Port Authority finances through the ferryboat tariff. It is difficult to understand how the Intervenors' banking and financial records could possibly be relevant to these issues. Read literally, the Subpoena would require Fleet to produce, for example, Mr. McAllister's cancelled checks for payment of rent on his residence or for Christmas gifts; McAllister T&T's purchases

of oil and lubricants for its tug business (which has no connection to the ferry operation); and records of bank loans for the purchase of tug boats (*see* McAllister Decl. ¶ 15).

The Port Authority has not provided any explanation of how these records are relevant to the claims and defenses in this action, although it was specifically asked to do so before this motion was filed (Domb Decl. ¶¶ 8-13).

In short, the Intervenors have a substantial interest in keeping their banking and financial records private. These records have no possible relevance to this action. Accordingly, pursuant to Rules 45(c)(3)(B)(i) and 26(c), the Subpoena should be quashed, and a protective order should be entered, prohibiting the disclosure of the Intervenors' banking records.

**D.     The Motion Should Be Granted With Respect
to the Ferry Company's Banking Records**

The reasons that the Intervenors' banking and financial records should not be disclosed, set forth in Point II.C above, apply equally to the Ferry Company's banking records. In addition, the question of whether the Ferry Company's financial records should be disclosed is the subject of a motion to compel previously filed by the Port Authority and currently pending before the Court. In its opposition to the motion to compel, the Ferry Company explained in substantial detail: (a) why its financial records are highly confidential, not just from its competitors and the public, but especially as to the Port Authority; and (b) why such records are not relevant to any of the claims or defenses in this action (*see* McAllister Decl., Ex. A; *see also* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Compel, dated February 26, 2004 [Court docket # 46], at pp. 10-12). The Court should protect the Ferry Company's financial records in Fleet's possession from disclosure under the Subpoena for the same reasons that it should deny the Port Authority's motion to compel the Ferry Company itself to produce such records to the Port Authority.

In any event, the Subpoena should be quashed to the extent that it seeks the same documents that are the subject of the motion to compel (*i.e.*, all tax and financial records of the Ferry Company; *see* request quoted at p. 2 above). If the Court determines that the Ferry Company's financial records should be disclosed, the Subpoena is redundant and should be quashed. If the Court determines that the financial information should not be disclosed, then obviously, the Subpoena should also be quashed.

To the extent that the Subpoena seeks bank and financial records of the Ferry Company that are not encompassed by the Port Authority's prior discovery request, the Subpoena should be quashed for the same reasons as apply to the Intervenors' records (*see* Point II.C above).

### III. AS THE SUBPOENA WAS ISSUED IN BAD FAITH, THE PORT AUTHORITY SHOULD BE SANCTIONED

This Court's Local Rule 37(a)(4) provides:

> Where a party has sought or opposed discovery which has resulted in the filing of a motion, and that party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, sanctions will be imposed in accordance with applicable law. If a sanction consists of or includes a reasonable attorney's fee, the amount of such attorney's fee shall be calculated by using the normal hourly rate of the attorney for the party in whose favor a sanction is imposed, unless the party against whom a sanction is imposed can demonstrate that such amount is unreasonable in light of all the circumstances.

The Ferry Company and Intervenors respectfully submit that sanctions should be imposed on the Port Authority under this rule, for: (a) serving such a patently overbroad and abusive Subpoena, (b) refusing to discuss the Ferry Company's and Intervenors' objections to the Subpoena in good faith, (c) failing to provide an explanation (as it was requested to do) of the relevance of the subpoenaed documents to the issues in this case, and (d) even refusing to defer the return date of the Subpoena until this Court has had the chance to consider and rule on a

pending discovery motion, concerning the Ferry Company's financial records, which substantially overlaps the documents requested and the issues raised by the Subpoena. (*See also* Domb Decl. ¶¶ 7-13.)

## Conclusion

For the forgoing reasons, the Court should enter an order (1) permitting Brian A. McAllister, McAllister Towing & Transportation Company, Inc. and Steamboat Concessions, Inc to intervene in this action for the limited purpose of objecting to the Subpoena, (2) quashing the Subpoena, (3) protecting the Ferry Company and Intervenors' banking records from disclosure, (4) imposing sanctions against the Port Authority, and (5) granting such other relief as the Courts deem necessary and proper.

Dated:    March 12, 2004

                                          BRIDGEPORT AND PORT JEFFERSON
                                          STEAMBOAT COMPANY,
                                          *Plaintiff,* and
                                          BRIAN A.McALLISTER, McALLISTER
                                          TOWING AND TRANSPORTATION
                                          COMPANY, INC., and STEAMBOAT
                                          CONCESSIONS, INC.
                                          *Intervenors*

By: _____
       Martin Domb, Federal Bar No. ct 09544
       E-mail: mdomb@hillbetts.com
       HILL, BETTS & NASH LLP
       One World Financial Center
       200 Liberty Street, 26th Floor
       New York, New York 10281-1003
       Tel. (212) 589-7577
       Fax (212) 466-0514

       Jonathan S. Bowman, Federal Bar No. ct 08526
       E-mail: jbowman@cohenandwolf.com
       Stewart I. Edelstein, Federal Bar No. ct 06021
       E-mail: sedelstein@cohenandwolf.com
       COHEN AND WOLF, P.C.
       1115 Broad Street
       P.O. Box 1821
       Bridgeport, Connecticut 06601-1821
       Tel. (203) 368-0211
       Fax (203) 576-8504

## CERTIFICATE OF SERVICE

hereby certify that on this 12th day of March, 2004, a copy of the foregoing was served via e-mail and overnight mail upon the following:

John W. Roberts. Esq.
Roberts, Rose & Bates, P.C.
17 Hoyt Street
Stamford, CT 06905

Suzanne L. Montgomery, Esq.
Thompson Coburn
One US Bank Plaza
St. Louis, MO 63101

Edward J. Sheppard, IV, Esq.
Thompson Coburn
1909 K Street, N.W., Suite 600
Washington, D.C. 20005-2010

Jonathan S. Bowman
Stewart I. Edelstein
COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-182

By _____
Martin Domb
Federal Bar No. ct 09544
E-mail: mdomb@hillbetts.com
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514