UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, *et al.*,

Plaintiffs,

v.

BRIDGEPORT PORT AUTHORITY,

Defendant.

Case No. 03-CV-599 (CFD)

April 2, 2004

_____/

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE AND
MOTION TO QUASH SUBPOENA DIRECTED TO FLEET BANK AND
MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

**I.  Introduction**

Defendant Bridgeport Port Authority (the "Port Authority") opposes the motion of Brian A. McAllister, McAllister Towing and Transportation Company, and Steamboat Concessions, Inc., (collectively, the "Intervenors") to intervene in this proceeding for the purpose of quashing the Subpoena directed to Fleet National Bank ("Fleet Bank") issued on February 23, 2004.  The Port Authority also opposes the motion by Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company") and the Intervenors to quash the Subpoena served on Fleet Bank, and the related motion for protective order seeking to protect the bank records of the Ferry Company and the Intervenors.

All three motions should be denied.  The Subpoena seeks highly relevant banking records and other financial information maintained by Fleet Bank pertaining to the Ferry Company, its parent corporation, and the sole shareholder of that parent corporation.  The financial information sought is fundamental to the question of whether the Ferry Company has standing to pursue this litigation, and if so, what its damages are.  As Professor Edward Deak explained

2287778

during his testimony at the preliminary injunction evidentiary hearing on April 1, 2004, because the Ferry Company is a closely-held company, it is imperative that the financial records of its parent company and the sole shareholder of that parent be obtained.  Despite efforts by the Port Authority to obtain financial documentation through the discovery process from the Ferry Company itself, the Ferry Company has consistently resisted disclosing any financial information.  The Port Authority was thus forced to seek the information through an alternative route — through a subpoena directed to Fleet Bank, one of the banks where the Ferry Company maintains its accounts.

Fleet Bank has not opposed the properly-served Subpoena, and its time for doing so has long since passed.  Because both the Ferry Company and the Intervenors lack standing to object to the Subpoena, and because the Subpoena seeks relevant, discoverable information that the Ferry Company has refused to produce, and the pending motions should be denied.

## II.  Statement of Facts

The pending Motions to Intervene, to Quash and for a Protective Order relate to many of the same factual issues raised in the Port Authority's Motion to Compel, currently pending before the Court.  The Port Authority therefore will not repeat in great detail the facts laid out in the Motion to Compel.

In short, the Ferry Company and three individuals claiming to be "regular" passengers on the Ferry operated by the Ferry Company commenced this action alleging that a passenger wharfage fee imposed by the Port Authority on Ferry passengers is unlawful under various federal and state statutory, common law and constitutional grounds.  In addition to alleging that the Port Authority lacks the authority to impose the fee, the plaintiffs allege that the amount of the fee improperly exceeds the benefits and services conferred by the Port Authority on Ferry

passengers. The Port Authority responded to the Complaint seeking dismissal on two alternative grounds. First, the Port Authority argued that under the primary jurisdiction doctrine, this matter should be more properly tried in the Federal Maritime Commission. Second, the Port Authority argued that the Ferry Company, which is not subject to and does not pay the passenger wharfage fee, lacks constitutional and prudential standing to protest its validity. That motion has been fully briefed and argued and is now pending before the Court for decision.

In response to the Port Authority's Motion to Dismiss on the standing issue, the Ferry Company filed a First Amended Complaint alleging that it "has been damaged and continues to be damaged by the wrongful imposition of the Ferry Tariff" and seeking "compensatory damages." First Amended Complaint ¶¶ 5, 57; *see also id.* ¶ 59 (describing theories of damages Ferry Company claims to have suffered).

From the time of its initial set of written discovery requests through the present, the Port Authority has made significant efforts to obtain the financial information of the Ferry Company necessary to determine if it has been damaged by the Port Authority's passenger wharfage fee. Thus far, the Ferry Company has refused to produce any financial documentation. As an alternative means of obtaining the information, on February 25, 2004, the Port Authority caused a Subpoena to be served upon the Meridian, Connecticut branch of Fleet Bank[1] (located within the Court's jurisdiction) seeking all bank records for the Ferry Company, McAllister Towing and Transportation, Inc., Steamboat Concessions, Inc., and Brian A. McAllister. *See* Subpoena to Fleet Bank, Exhibit A; Affidavit of Service, Exhibit B. The Subpoena had a return date of March 15, 2004.

---

[1] The Port Authority learned during the deposition of William Merritt, the Ferry Company's acting Chief Financial Officer, that Fleet Bank was one of the banks where the Ferry Company did its banking.

The Port Authority directed the Subpoena for bank records of companies and persons other than the Ferry Company because it had earlier learned the following through the Ferry Company's written discovery responses and Mr. McAllister's deposition testimony:

- the Ferry Company is a wholly-owned subsidiary of McAllister Towing and Transportation, Inc. (Answer of Ferry Company to Interrogatory No. 3, Exhibit C);

- Brian A. McAllister owns 100% of McAllister Towing and Transportation, Inc. (Deposition of B.A. McAllister at 34, Exhibit D);

- Steamboat Concessions, Inc. is a wholly-owned subsidiary of the Ferry Company (Answer of Ferry Company to Interrogatory No. 3); and

- the McAllister companies file a consolidated tax return and for financial purposes treat the McAllister companies as one and the same (Deposition of B.A. McAllister at 33-34; Deposition of W. Merritt at 65-66, Exhibit E).

The Ferry Company and the Intervenors, through their attorney, have directed Fleet Bank to not respond to the Subpoena, and in accordance with that direction, Fleet Bank has refused to produce any responsive documentation or information. On March 12, 2004, the proposed Intervenors filed their Motion to Intervene and, in conjunction with the Ferry Company, moved to quash the Subpoena and sought a protective order.

### III. Argument

The Motion to Intervene and Motion to Quash should both be denied. First and most fundamentally, the Ferry Company and the Intervenors lack standing to move to quash the Subpoena served on Fleet Bank. The Subpoena is not directed to them and the information sought is neither privileged nor protected under any recognized notion of confidentiality. Because these parties lack standing, there is no valid basis for granting the Motion to Intervene,

and both the Motion to Intervene and the Motion to Quash should be denied.

Second and more fundamentally, the banking documents and records sought in the Subpoena are highly relevant to the issues presented in this litigation, and thus fall well within the broad scope of discovery required by the Federal Rules of Civil Procedure. District courts within the Second Circuit have previously permitted discovery of private banking records, recognizing that these documents contain discoverable information. Because the information sought by the Port Authority is relevant and not subject to any recognizable privilege, there is no basis to grant the Motion to Quash, and it should be denied.

**A.    The Ferry Company and the Intervenors Lack Standing to Oppose the Subpoena Directed to Fleet Bank**

The Port Authority has issued and caused to be served a subpoena to Fleet Bank. The Ferry Company and the Intervenors to object to discovery of this information. The Intervenors have moved to intervene in this proceeding for purposes of moving to quash the Subpoena. However, neither the Ferry Company nor the Intervenors have standing to object to a subpoena issued to a non-party witness. *See United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997) (noting that "courts have regularly held that a defendant or putative defendant lacks standing to object to a subpoena issued to a nonparty witness"); *see also California Bankers Ass'n v. Schultz*, 416 U.S. 21, 50-51 (1974) (holding that a depositor cannot prevent disclosure of bank records on constitutional grounds).

The documents sought by the Subpoena are business records belonging to Fleet Bank. Only Fleet Bank, the third-party bank to whom the Subpoena has been issued, is the proper party to assert any objections or to move to quash. *See Viltrakis*, 108 F.3d at 1161. Fleet Bank has not done so, and presumably, it does not object to the Subpoena.

The records and documents sought by the Subpoena do not belong to either the Ferry

Company or the Intervenors, and these parties have failed to show that they possess a protectable interest in the records justifying their intervention or objection to the Subpoena. Although the Ferry Company and the Intervenors have attempted to argue that their privacy interests are sufficient to support their motions to intervene and to quash, courts have previously rejected similar arguments and have held that account holders do not possess a right to privacy with respect to their bank accounts. *See United States v. Miller*, 425 U.S. 435, 440-42 (1976) (holding that a bank customer does not have a reasonable expectation of privacy in bank records concerning his account); *United States v. South Windsor Bank & Trust Co.*, 1978 U.S. Dist. LEXIS 7103, *12 (D. Conn. Dec. 20, 1978) ("[B]ank records do not fall within a protected zone of privacy. One anticipates their periodic examination by a number of people for various purposes."). For example, in one federal court case, the court held that a bank customer had "no legitimate expectation of privacy" in banking documents because the "records are not confidential communications, but instruments of commercial transactions." *Clayton Brokerage Co., Inc. v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980). The court thus held that the defendant lacked standing "to challenge the subpoena issued to the bank; *a fortiori*, he has failed to identify a personal right on which a challenge to the subpoena may be based."

Because the proposed Intervenors lack standing to oppose the Subpoena, there is simply no basis to grant the Motion to Intervene and it should be denied. *See Donohoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty."). *Id.*

**B.    The Port Authority is Entitled to the Documents Requested in the Subpoena Directed to Fleet Bank and There is No Valid Privilege Protecting the Documents From Production**

The Port Authority is entitled to the documents requested in its Subpoena served on Fleet

Bank pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.  Rule 26 provides that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."  Fed. R. Civ. P. 26(b)(1).  When a party issues a subpoena seeking material from a non-party (as the Port Authority did here), Rule 45 incorporates the broad standard of relevancy articulated in Rule 26.  *See Syposs v. United States*, 181 F.R.D. 224, 226 (S.D.N.Y. 1998); *Palumbo v. Shulman*, 1998 U.S. Dist. LEXIS 16009, *9 (S.D.N.Y. Oct. 13, 1998); *Cofield v. City of Lagrange*, 913 F. Supp. 608, 614 (D.D.C. 1996); *Chemical Bank v. Dana,* 149 F.R.D. 11, 13 (D. Conn. 1993).  Discoverable evidence does not need to be admissible at trial; "if there is any possibility that the information sought may be relevant to the subject matter of th[e] action" then "discovery should ordinarily be allowed."  *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (citing *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)).

The party opposing a subpoena bears the burden of showing that the subpoena is oppressive, irrelevant or seeks privileged material.  *See Heat & Control, Inc. v. Hester Indus. Inc.*, 785 F.2d 1017, 1025 (10th Cir 1980); *United States v. Beacon Aerospace Corp.,* 2000 U.S. Dist. LEXIS 969, *5-*6 (D. Conn. Jan. 11, 2000) (Respondent "opposing enforcement [of a subpoena] must shoulder the burden of showing that the subpoena is unreasonable, or was issued for an improper purpose, or that compliance would be unnecessarily burdensome); *In re Ramaekers*, 33 F. Supp. 2d 312, 314 (S.D.N.Y. 1999).

### 1.   Financial information about the Ferry Company and the Intervenors is Relevant

Information about the financial position of the Ferry Company and the Intervenors is relevant to the Ferry Company's standing to pursue this litigation, and to the quantification of

compensatory damages to which the Ferry Company claims it is entitled. *See, e.g., PPG Indus. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108-09 (2d Cir. 1997) (noting the relevance of financial records to evidence of damages). The Ferry Company may not simply assert, without factual support of any kind, that it has been harmed by the passenger wharfage fee. The need to verify the damages incurred by the Ferry Company is heightened by the fact that the Ferry Company does not pay this fee, but merely collects it on behalf of the Port Authority. The Ferry Company's claim of damages is merely speculative without financial information verifying that it has actually been harmed. Absent a re-dressable injury, the Ferry Company lacks constitutional and prudential standing, and should be dismissed as a party to this litigation.

As Professor Deak testified during the preliminary injunction hearing, three types of information are necessary to determine whether the Ferry Company has been damaged from the Port Authority's fee, and, if so, by how much, involves much more than simply calculating the amount of the passenger fee paid by the passengers since it went into effect. At the very least, the following three sources of information are needed: (1) the number of passengers riding the Ferry; (2) the Ferry Company's costs; and (3) the Ferry Company's profits. The least important factor is the number of passengers riding the Ferry; the most important factors are the costs and the profits. Thus far, the Ferry Company has refused to produce this information, and it has stymied the Port Authority's ability to assess the Ferry Company's claim of damages.

In addition, financial documents pertaining to the Intervenors are equally as necessary and relevant to the issues of standing and damages because — as Professor Deak explained during the evidentiary hearing on the pending preliminary injunction motion — the financial records of the Ferry Company and the Intervenors are inextricably linked. The records of the Intervenors are necessary because they include records relating to the Ferry Company. Because

all the companies are wholly-owned subsidiaries of one another, ultimately owned by Intervenor Brian A. McAllister, and file one consolidated tax return, the financial information of the related companies are necessary to see a true financial picture of the Ferry Company.

### 2. Financial information about the Ferry Company and the Intervenors is Relevant

The financial and banking information sought by the Subpoena is neither confidential nor protected by any recognized privilege as the Ferry Company and the Intervenors erroneously submit. The Ferry Company and the Intervenors have no legally protectable interest in the documents requested. *See Miller*, 425 U.S. at 440-41. There is no common law or statutory privilege for banking records or for communications between a bank and its customers. *See, e.g.*, *Sierra Rutile Ltd. v. Katz*, 1994 U.S. Dist. LEXIS 6188, *7 (S.D.N.Y. May 11, 1994) (holding that no privilege applies to credit files, account records or correspondence of bank customer); *O'Neil v. Q.L.C.R.I., Inc.*, 750 F. Supp. 551, 556 (D.R.I. 1990) ("Federal courts have refused to recognize any banker-customer privilege."). Despite arguments by the Ferry Company and Intervenors to the contrary, there is simply no basis for holding that the information sought in the Subpoena is immune from discovery.

Federal district courts located in the Second Circuit have previously held that banking and financial records are not only not privileged, but are discoverable, if relevant, via subpoenas to non-parties responsible for maintaining the records. In *Chemical Bank*, the court allowed discovery of financial documents via a subpoena to a non-party. In that case, a bank foreclosing property owned by the defendant subpoenaed financial documents from a law firm that had represented her in previous litigation. The court permitted the firm to disclose the subpoenaed documents over the defendant's objection, finding that the "right to obtain relevant discovery is outweighed by" her privacy interests in the records. *See Chemical Bank*, 149 F.R.D. at 14; *see*

*also South Windsor Bank & Trust Co.*, 1978 U.S. Dist. LEXIS at *12 (holding that bank records are subject to disclosure pursuant to summons by I.R.S. issued to a third-party bank because they are not confidential communications).

Consistent with the Court's holding in *Chemical Bank*, the Southern District of New York has similarly held that subpoenaed bank records are neither privileged nor "'confidential research, development or commercial information'—explicitly recognized grounds under Rule 45, Fed.R. Civ. P., for modifying or quashing subpoenas." *Sierra Rutile*, 1994 U.S. Dist. LEXIS at *7. The *Sierra Rutile* Court applied a balancing test to determine whether to permit discovery of bank records, weighing the relevance of the financial information sought against the privacy interest of the account holder. The court held that the right to discover financial information outweighed the personal privacy rights of the nonparties whose financial information was the subject of the subpoenas at issue. *See id*. at *13. The court reached this result even as it appeared to question whether some of the information sought was relevant or would lead to the discovery of relevant evidence. *See id.* at *10.

Like the documents sought in *Chemical Bank* and *Sierra Rutile*, the financial records that the Port Authority has requested via subpoena to Fleet Bank are neither privileged nor confidential. District courts in the Second Circuit have definitively rejected arguments similar to those made by the Ferry Company and the Intervenors that financial documents, even those belonging or pertaining to third parties, are private and thus not discoverable. When financial information is directly relevant, or might lead to the discovery of relevant evidence (even if the court regards the possibility as dubious), disclosure is appropriate. The Port Authority has repeatedly argued that the Ferry Company's financial information is relevant to standing and damages. For this reason, the motions by the Ferry Company and the Intervenors to quash the

subpoena issued to Fleet Bank and for a protective order should be denied.

**C.    There is no basis for sanctioning the Port Authority for having issued a subpoena to Fleet Bank**

The Ferry Company and the proposed Intervenors have suggested that sanctions should be imposed upon the Port Authority pursuant to Local Rule 37(a)(4) for various reasons associated with having served the Subpoena. Sanctions are not appropriate under any of the circumstances that the Ferry Company and the Intervenors have characterized as justifying this extreme measure.

As an initial matter, the Port Authority was forced to obtain the Ferry Company's financial information through alternate means due to the Ferry Company's refusal to comply with discovery requests. The recalcitrance of the Ferry Company combined with an urgent need for the Ferry Company's financial information more than justifies the Port Authority's attempts to obtain this non-privileged information from a third-party.

Second, the plain language of Local Rule 37 indicates that this rule is inapposite to circumstances involving issuance of a subpoena seeking financial information to a third party. In relevant part, the rule provides for sanctions "[w]here a party has sought or opposed discovery which has resulted in the filing of a motion, and that party's position is not warranted under existing law and cannot be supported by a good faith argument for extension, modification, or reversal of existing law." As the Port Authority has argued, the Subpoena seeks relevant, discoverable documents. District courts located in the Second Circuit have upheld subpoenas issued to third parties to obtain discoverable financial information. The Subpoena at issue is therefore consistent with and supported by existing law.

Moreover, the Ferry Company and the Intervenors cite absolutely no authority for their argument that sanctions, under Rule 37 or pursuant to any other statute or federal or local rule,

are appropriate in this case.  The Port Authority is unaware of any instance in which this Court has sanctioned a litigant under Local Rule 37 for having served a subpoena.

The Subpoena is necessary to obtain discoverable documents that the Ferry Company has willfully withheld throughout the past six months of discovery.  The Subpoena is neither overbroad nor abusive.  The Subpoena requested documents pertaining to the financials of the Ferry Company, and the documents pertaining to the Intervenors are necessary because they are likely to contain information relevant to the financial condition of the Ferry Company.  Counsel for the Port Authority have discussed the need for this information with counsel for the Ferry Company on several occasions, and have repeatedly explained why the information is relevant.  There is simply no basis for sanctions under these circumstances.

### IV.  Conclusion

The Port Authority submits that the Motion to Quash and the Motion to Intervene should be denied.  The Intervenors, as well as the Ferry Company, lack standing to object to the Subpoena issued to Fleet Bank, a non-party to this litigation.  The information sought is highly relevant to the issues of the Ferry Company's standing and damages, and the pending motions should be denied.

For the foregoing reasons, the Port Authority respectfully requests that the Court deny the Motions to Intervene and to Quash.

Dated: April 2, 2004

        Respectfully submitted,

        THOMPSON COBURN LLP
           Edward J. Sheppard, #CT24760
           1909 K Street, NW, #600
           Washington, DC 20006
           202-585-6900
           Fax 202-585-6969
           esheppard@thompsoncoburn.com


By_____
    Suzanne L. Montgomery, #CT24761
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    Fax 314-552-7000
    smontgomery@thompsoncoburn.com


Attorneys for Defendant Bridgeport Port Authority

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via electronic mail and Federal Express overnight delivery, on the following counsel of record, this 2d day of April, 2004:

| | |
|---|---|
| Jonathan S. Bowman | Frank H. Loomis |
| Stewart I. Edelstein | Martin Domb |
| Cohen and Wolf, P.C. | Hill, Betts & Nash LLP |
| 1115 Broad Street | One World Financial Center |
| P.O. Box 1821 | 200 Liberty Street, 26th Floor |
| Bridgeport, CT 06601-1821 | New York, New York 10281 |