UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIDGEPORT and PORT JEFFERSON STEAMBOAT COMPANY, et al., Plaintiffs, | : : : : | |
| v. | : : | Civil Action No. 3:03 CV 599 (CFD) |
| BRIDGEPORT PORT AUTHORITY, Defendant. | : : : | |

### RULING ON MOTION FOR PRELIMINARY INJUNCTION

This action was brought by the Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company"), a corporation that provides a public ferry service for passengers and vehicles between Bridgeport, Connecticut and Port Jefferson, New York, and by two of its frequent passengers (collectively the "plaintiffs"),[1] against the Bridgeport Port Authority (the "Port Authority"), a public port authority authorized under Connecticut General Statutes §§ 7-329a to -329u.  Pursuant to a lease agreement dated December 1, 1998 and amended on July 29, 2002 (collectively, the "Lease"), the Ferry Company leases dock facilities for its ferry boat operation at the Water Street Dock in Bridgeport, Connecticut, from the Port Authority.  Since 1993, the Port Authority has imposed a passenger wharfage fee on all ferry passengers, which, pursuant to the Lease, is collected by the Ferry Company.[2]  By letter dated December 10, 2002, the Port

---

[1]There two individual plaintiffs are Greg Rose and Frank Zahradka.  A third passenger-plaintiff, Robert Heller, was voluntarily dismissed from this action on August 5, 2003.

[2]The validity of the fee was the subject of a prior lawsuit between the Ferry Company and the Port Authority.  See Bridgeport & Port Jefferson Steamboat Company v. Bridgeport Port Authority, No. 93cv745.  That action was terminated pursuant to a settlement agreement dated April 8, 1993.

Authority notified the Ferry Company that it was increasing the wharfage fee and requested that the Ferry Company begin collecting the fee at the increased rate beginning on January 15, 2003.[3]

The plaintiffs' amended complaint challenges the legality of the tariff, claiming that it violates the Rivers and Harbors Appropriation Act of 1884, the Commerce Clause of the U.S. Constitution, the Right to Travel under the U.S. Constitution, the Tonnage Clause of the U.S. Constitution, as well as several Connecticut Statutes, because the Port Authority uses only a portion of the tariff proceeds to finance activities related to ferry operations, and "spends the great bulk of such proceeds mostly for its own purposes, unrelated to the ferry." The Amended Complaint also asserts a claim for unjust enrichment.

Pending is the plaintiff's Motion for a Preliminary Injunction [Doc. # 49]. For the following reasons, the motion is DENIED.

## FINDINGS OF FACT

The preliminary injunction is not specifically directed at the tariffs that are the subject of the underlying action, but more narrowly at a 50 cent per ticket surcharge implemented by the Port Authority in March 2004, in order to defray the costs of this lawsuit. On February 10, 2004, the Port Authority wrote to the Ferry Company, indicating that effective March 1, 2004, it was implementing the 50 cent surcharge. As of the date of the hearing on this motion, the Ferry Company had not collected the surcharge from its passengers.[4] In the pending motion for preliminary injunction, the plaintiffs ask the Court to enjoin the Port Authority from adding the

---

[3]The Ferry Company began collecting the increased fee in May of 2003.

[4]At the hearing held on April 1, 2004, the Port Authority indicated that it had considered a plan whereby it would collect the surcharge directly from passengers while they were on the dock if the Ferry Company continued in its refusal to collect the surcharge.

50 cent surcharge to the existing tariff pending the resolution of this action.

As part of their argument that they will be irreparably harmed if this Court fails to grant the injunction (see discussion below), the plaintiffs argue that the Port Authority is–or will be in the near future–insolvent and therefore would not be able to pay a damages award. Regarding the solvency of the Port Authority, the Court makes the following findings:

A significant portion of the Port Authority's budget is derived from the tariffs that are the subject of this litigation. However, the Port Authority has also been the recipient of a number of federal grants. In the more than 10 years it has existed, the Port Authority has proven to be fiscally reliable and responsible. It is subject to regular audits, both in its regular finances and in the various government grants that it administers, and its financial situation has been stable. The Ferry Company has also not met its burden of demonstrating that repayment of the surcharge, if ordered by the Court, would constitute an event that would cause the insolvency of the Port Authority.[5]

As part of their argument that the Port Authority is–or is likely to become–insolvent, the plaintiffs note that there is currently a dispute between the City of Bridgeport and the Port Authority over which entity is responsible for an award of $11 million resulting from the condemnation of the land for the Bridgeport Regional Maritime Complex (the "Cartech Property"). However, based on the testimony of the Port Authority's Executive Director, Joseph A. Riccio, at the hearing on the plaintiffs' motion for a preliminary injunction, the Court concludes that the dispute over the Cartech property is not likely to impact the fiscal solvency of

---

[5]The Ferry Company has also not met its burden of demonstrating that it would not be able to refund ferry passengers or otherwise distribute a damages award if the Court ordered the Port Authority to repay the surcharge.

the Port Authority. According to Riccio's testimony, if the City and the Port Authority are unable to resolve their dispute, the Port Authority will return the land to the City. He testified that the Port Authority will not be responsible for paying the condemnation award.

## CONCLUSIONS OF LAW

**I. Standard for Preliminary Injunctive Relief**

The Second Circuit has cautioned that preliminary injunctive relief "is an extraordinary and drastic remedy which should not be routinely granted." Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir.1981) (internal quotation marks omitted). Entry of a preliminary injunction is appropriate where the party seeking the injunction establishes: (a) the injunction is necessary to prevent irreparable harm, and (b) either (i) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits of the claim as to make it fair ground for litigation, and a balance of the hardships tips decidedly in favor of the movant. See, e.g., Able v. United States, 44 F.3d 128, 130 (2d Cir.1995). Thus, the first part of the standard–irreparable harm–must always be met, but the party seeking an injunction may satisfy the second prong by establishing *either* a likelihood of success or sufficiently serious questions going to the merits and a balance of hardships in its favor. Thus, here, the Court must first consider whether the plaintiffs would suffer irreparable harm in the absence of a preliminary injunction. If so, the Court must then consider whether plaintiffs are likely to succeed on the merits *or* whether the plaintiffs have raised sufficiently serious questions as to the merits, and the balance of hardships tips in favor of the plaintiffs.

## II.  There is No Threat of Irreparable or Imminent Harm

As explained above, a party seeking a preliminary injunction must demonstrate that it will be irreparably harmed in the absence of an injunction.  The plaintiffs claim that they will be irreparably harmed if the Court allows the Port Authority to impose the 50 cent surcharge because 1) if the Court found that the surcharge was illegal, it would be impossible to locate the passengers who had paid it to refund them, 2) the presence of the fee limits the amount that the Ferry Company can charge and reduces demand for the Ferry Company's services by increasing the cost of tickets to the customers, and 3) the Port Authority is likely to become insolvent.

Ordinarily, monetary damages alone do not constitute "irreparable harm."  See Brenntag Int'l Chemicals, Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir.1999).  See also Sperry Int'l Trade, Inc. v. Government of Israel, 670 F.2d 8, 11-12 (2d Cir. 1981) ("[P]reliminary injunction is inappropriate where the potential harm is strictly financial.").  However, several courts have recognized an exception where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing "imminent bankruptcy," Tucker, 888 F.2d at 974-75, or is in a "perilous financial state." American Hosp. Supply Corp. v. Hospital Products Ltd., 708 F.2d 589, 593 (7th Cir. 1971).  The Second Circuit explained the rationale for this exception in Brenntag:

> As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm. . . .   However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied. . . .  For this reason, courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents.

Brenntag, 175 F.3d at 249-50.

Here, based on the facts set forth above, the Court finds that the Port Authority is not

insolvent, and it is not clear that it would not be able to pay a monetary damages award if the Court so ordered it later in the litigation. Thus, because monetary damages alone do not constitute irreparable harm and because the exception for insolvency does not apply to the facts here, the Court concludes that the plaintiffs have not met their burden of demonstrating irreparable harm.

In addition to failing to demonstrate that the Port Authority is likely to become insolvent, the plaintiffs have not met their burden of demonstrating that the Ferry Company will be harmed by the 50 cent surcharge. Based on the evidence presented by the plaintiffs to support their motion for injunctive relief, the Court is not persuaded that the 50 cent surcharge–which is modest compared to the overall price of a ferry ticket–will result in a reduction in the quantity of ferry tickets demanded.

Also, while the individual passenger plaintiffs have demonstrated that they will be harmed by the surcharge, the Court finds that the Port Authority will be able to reimburse the individual plaintiffs for those amounts if the Court orders it later in the litigation, as the Port Authority is not likely to become insolvent. As to whether all the passengers could be located to receive their portion of any repayment, the plaintiffs have not shown that it would be unlikely or that another method of relief is unavailable.

## II.  Likelihood of Success/Serious Questions Going to the Merits

As stated above, in order for a preliminary injunction to issue, the plaintiffs must demonstrate both that there was irreparable harm *and* either a likelihood of success on the merits or sufficiently serious questions going to the merits with a balance of hardships in their favor. Thus, in light of the Court's holding that the plaintiffs have failed to demonstrate irreparable

harm, the Court need not address the merits of their claim in ruling on the preliminary injunction motion. See Jayaraj v. Scappini, 66 F.3d 36, 38-39 (2d Cir. 1995) ("Because we hold that [plaintiff] failed to establish that he would suffer irreparable harm in the absence of an injunction, there is no need to reach the second portion of the preliminary injunction analysis.").[6]

## **CONCLUSION**

For the forgoing reasons, the plaintiff's Motion for Preliminary Injunction [Doc. # 49] is DENIED.

SO ORDERED this 15th day of April 2004, at Hartford, Connecticut

                                      /s/ CFD
                                 **CHRISTOPHER F. DRONEY**
                                 **UNITED STATES DISTRICT JUDGE**

---

[6]Also, because of the Court's finding that a preliminary injunction should not enter because the plaintiffs have not demonstrated irreparable harm, it need not reach the Port Authority's argument that it lacks jurisdiction to enter an injunction.