UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, et al.,

   Plaintiffs,

CASE NO. 3:03 CV 599 (CFD)

- against -

April 15, 2004

BRIDGEPORT PORT AUTHORITY,

   Defendant.
_____/

# REPLY MEMORANDUM IN SUPPORT OF
# PLAINTIFFS' AND INTERVENORS' MOTIONS
# TO QUASH SUBPOENA TO FLEET NATIONAL BANK

        HILL, BETTS & NASH LLP
        One World Financial Center
        200 Liberty Street, 26th Floor
        New York, New York 10281-1003
        Tel. (212) 589-7577
        Fax (212) 466-0514

        *and*

        COHEN AND WOLF, P.C.
        1115 Broad Street
        P.O. Box 1821
        Bridgeport, Connecticut 06601-1821
        Tel. (203) 368-0211
        Fax (203) 576-8504

        *Attorneys for Plaintiffs*

{NY021388.1 }

**Table of Contents**

**Page**

1. The Proposed Intervenors Are Entitled to *Intervene* ...............................................................1

2. The Intervenors and the Ferry Company Have *Standing* to Challenge the Subpoena ............................................................................1

3. Bank Documents Need Not Be "Privileged" in Order to Be Protected ...............................4

4. The Port Authority's Explanation of the Subpoenaed Documents' Purported Relevance Falls Woefully Short............................................................................4

5. The Court Should Impose Sanctions on the Port Authority ..................................................8

Conclusion ........................................................................................................................................10

The Ferry Company and the proposed Intervenors submit this reply memorandum in further support of their respective motions for a protective order quashing the Port Authority's Subpoena to Fleet.[1]

**1.    The Proposed Intervenors Are Entitled to *Intervene***

In its memorandum in opposition ("Opp. Memo."), the Port Authority does not contend that the proposed Intervenors may not intervene for the limited purpose of challenging the Subpoena.  The Port Authority merely argues (incorrectly, *see* point 2 below) that both the Ferry Company and the Intervenors lack standing to challenge the Subpoena (Opp. Memo., pp. 5-6).

The Intervenors' right to intervene in these circumstances is well established.  *See* Initial Memo. at pp. 5-6 and cases cited therein.  Accordingly, the Court should grant the Intervenors' motion to intervene.

**2.    The Intervenors and the Ferry Company
Have *Standing* to Challenge the Subpoena**

The Port Authority implausibly claims that only Fleet "is the proper party to assert any objections or to move to quash" the Subpoena (Opp. Memo. at 5).  In so arguing, the Port Authority ignores the numerous courts within this Circuit that have held to the contrary.  For example, in Chazin v. Lieberman, 129 F.R.D. 97 (S.D.N.Y. 1991), defendants moved to quash numerous subpoenas served on non-party banks.  The court stated:

> [T]he first issue is whether the moving defendants have standing to object to the issuance of subpoenas against nonparties.  "Ordinarily a party has no standing to seek to quash a subpoena to one who is not a party unless the party claims some personal right or privilege with regard to the

---

[1]    Capitalized terms herein have the same meaning as in the Ferry Company's and Intervenors' initial memorandum, dated March 12, 2004 (the "Initial Memo.").

> documents sought." 9 Wright & Miller, *Federal Practice and Procedure* § 2457 (1971) [currently § 2459]. <u>The moving defendants argue that they have personal privacy rights in the records sought by plaintiff. This claim is sufficient to give them standing to pursue their present motion</u>.

129 F.R.D. at 98 (*emphasis added*). *See also* cases cited in Initial Memo., at p. 7.

In the above quotation, the court quoted from the 1971 edition of C. Wright & A. Miller, *Federal Practice and Procedure*. That same language appears in the treatise's current edition (in a different section):

> Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action <u>unless the party claims some personal right or privilege with regard to the documents sought</u>.

*Id.* § 2459 (2004) (*emphasis added*, *footnotes omitted*). The treatise cites some 19 reported decisions in support of the underscored text.

In one of the cited cases, <u>Catskill Development, L.L.C. v. Park Place Entertainment Corp.</u>, 206 F.R.D. 78 (S.D.N.Y. 2002), the district court stated as follows in affirming a Magistrate Judge's order which had granted a Native American tribe's motion to quash a subpoena served on a non-party bank:

> Plaintiffs argue that a non-subpoenaed person lacks standing to challenge a subpoena served on another seeking the production of the non-subpoenaed person's records, and cites to *Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.,* 1996 WL 525862 (S.D.N.Y. Sept.17, 1996). The Tribe argues, however, that numerous cases in this District hold that a party whose banking records are subpoenaed has standing to oppose the subpoena, including the *Pkfinans* case cited by plaintiffs. *See, e.g., Pkfinans,* 1996 WL 525862, at *2 n. 3 (S.D.N.Y. Sept.17, 1996) (finding that defendant had a shared privilege interest with its parent company and bank, and therefore had standing to contest the discovery); *Sierra Rutile Limited v. Katz,* 1994 WL 185751, at *2, 1994 U.S. Dist. LEXIS 6188, at *6-7; *Trump v. Hyatt Corp.,* 1994 WL 168021, at *1, 1994 U.S. Dist. LEXIS 5624, at *1 (S.D.N.Y. Apr. 29, 1994); *Carey v. Berisford Metals Corp.,* 1991 WL 44843, at *8 (S.D.N.Y. Mar.28, 1991) (finding that plaintiff had a privacy interest in his bank records sufficient to give him standing to contest discovery); *Chazin v. Lieberman,* 129 F.R.D. 97, 98 (S.D.N.Y.1990). <u>The law is in the Tribe's favor; I find that the Magistrate</u>

> Judge correctly found that the Tribe had standing to object to the Key Bank subpoena.

206 F.R.D. at 93 (*emphasis added*).

In arguing that the Ferry Company and the Intervenors lack standing to challenge the Subpoena, the Port Authority simply ignores the numerous authorities to the contrary, and thus would have the Court apply an incorrect legal standard. Furthermore, the cases on which the Port Authority relies (Opp. Memo. at 6) are clearly distinguishable. U. S. v. Miller, 425 U.S. 435, 440-42, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), was a criminal case, in which the defendant claimed that a government subpoena for certain of his banking records violated his fourth amendment right against unreasonable searches and seizures. U.S. v. South Windsor Bank & Trust Co., 1978 WL 1287 (D. Conn., Dec 20, 1978), involved an individual tax payer's fourth amendment challenge to an Internal Revenue Service summons (akin to a subpoena) requiring production of the individual's bank records in connection with an investigation of his tax liability.[2] Clayton Brokerage Co. Inc of St. Louis v. Clement, 87 F.R.D. 569, 571 (D. Md. 1980), relied on U.S. v. Miller in denying a motion to quash a subpoena for bank records in a civil case, holding that the defendant did not have a personal privacy right in bank records concerning his own bank account. In that regard, Clayton conflicts with the numerous and more recent cases in this Circuit which have held squarely to the contrary.

In short, the Ferry Company and the Intervenors clearly have a privacy right with respect to Fleet's records concerning their accounts, and thus they have standing to challenge the Subpoena.

---

[2]  In South Windsor, the court permitted the tax payer to intervene for the purpose of challenging the summons to his bank. 1978 WL 1287 at *2.

3.  **Bank Documents Need Not Be "Privileged" in Order to Be Protected**

The Port Authority incorrectly argues that, if information sought by a subpoena is not privileged, the subpoena may not be quashed (Opp. Memo., Section B, pp. 6-7).  However, Fed. R. Civ. P. 45 expressly protects against disclosure of (among other things) "privileged or other protected matter," as well as "commercial information."  Rule 45(c)(3)(A)(iii) and (B)(i) (*emphasis added*).  Thus, information need not be "privileged" (*e.g.*, protected by the attorney-client or other recognized "privilege") in order for a court to limit or bar its disclosure pursuant to a subpoena.

In Syposs v. U.S., 181 F.R.D. 224 (W.D.N.Y. 1998), for example, the court held that a physician had standing to challenge a subpoena for his telephone records, because he had "a legitimate interest in preserving the confidentiality of the records against disclosure."  *Id.* at 227-28.  The court found support for its holding in those cases in which account holders have been held to have a privacy interest in protecting against unwarranted disclosure of their bank records pursuant to subpoenas served on banks:  "discovery of bank records through a third-party subpoena has been held subject to judicially imposed conditions and the party whose records are at issue to have standing to move against the subpoena."  *Id.* at 227, *citing* Sierra Rutile Limited v. Katz, 1994 WL 18571 (S.D.N.Y. May 11, 1994), at *2; and Chazin v. Lieberman, 129 F.R.D. at 98.

4.  **The Port Authority's Explanation of the Subpoenaed Documents' Purported Relevance Falls Woefully Short**

As shown in the initial motion papers, the Port Authority refused to offer any explanation, before the Ferry Company and Intervenors filed this motion, as to the alleged relevance of the subpoenaed documents.  Thus, the Port Authority's 13-page opposition memorandum contains its first and only explanation of the bank records' purported relevance.

Yet what little the Port Authority has to say about relevance falls woefully short of establishing that the highly confidential records sought by the Subpoena are relevant to this case.[3]

First, the Port Authority repeatedly states very generally that it needs "financial information," or information concerning the "financial position," or "financial records" of the Ferry Company and the Intervenors (*see* Opp. Memo. at 7-10). Nowhere does the Port Authority even attempt to explain, or justify, the Subpoena's request for 36 separate categories of bank records, including such items as all "cancelled checks," "accounts payable" records, and "[a]ny other documents evidencing all other business or service provided" by Fleet to the Ferry Company or the Intervenors (*see* Subpoena; McAllister Decl. ¶ 14).

Second, the Port Authority cites the testimony of Professor Deak at the preliminary injunction hearing held on April 1, 2004 (Opp. Memo. at 8). The Port Authority's summary of Professor Deak's testimony is neither accurate nor complete;[4] furthermore, he has never submitted a written report of his opinions of bases therefore. Based on our notes and recollection, the thrust of Professor Deak's testimony (to the extent that it was intelligible) was that: (a) if the Ferry Company has earned profits while the tariff has been in effect, the Ferry Company has not been damaged by the tariff and would not be damaged by the proposed 50-cent surcharge, but (b) as Professor Deak has not reviewed the Ferry Company's or its affiliates' financial statements, he cannot determine whether or to what extent the Ferry Company has been damaged. Thus, it was apparent that the Port Authority used Professor Deak's testimony, not in relation to the disputed 50-cent surcharge that was at issue in the preliminary injunction motion,

---

[3]   The Port Authority's discussion of relevance is set forth in two identically titled sections, *see* Opp. Memo. sections B.1 and B.2 (beginning at pp. 7 and 9, respectively).

[4]   We ordered a transcript of the hearing immediately following the April 1 hearing, but the court reporter has not yet completed or sent us the transcript.

but rather, to bolster its request for the Ferry Company's financial records and its Subpoena to Fleet.

In any event, neither Professor Deak nor the Port Authority makes a case that the Ferry Company's financial statements, or those of its affiliates or ultimate individual shareholder, are necessary to determine the Ferry Company's damages. The notion that a company operating at a profit cannot be damaged by a tariff that both reduces its ability to raise prices and increases its customers' cost of using its service is simply ludicrous. Furthermore, the Ferry Company has already declared that it will not rely on its financial statements to prove its damages; in a letter preceding the Port Authority's motion to compel the Ferry Company to produce its financial statements, the Ferry Company's counsel stated:

> The Ferry Company does not intend to use or rely on its tax returns or financial information to prove any element of the claims in this case.

(Letter dated February 3, 2004, from Martin Domb to Edward J. Sheppard, attached as Exhibit E to the Port Authority's Motion to Compel [Court Docket No. 43], at p. 3, ¶ 5.)

That financial information may be relevant to the determination of damages in some cases, *e.g.*, PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 108-09 (2d Cir. 1997) (cited in Opp. Memo. at 8), does not mean that a defendant is automatically entitled to such information whenever a plaintiff seeks damages. See U.S. for Use and Benefit of P.W. Berry Co., Inc. v. General Elec. Co., 158 F.R.D. 161, 164 (D. Or. 1994) (contractor's "financial condition from 1989 through 1993" held not relevant to "the method by which [the contractor] plans to prove its claims"); In re Wirebound Boxes Antitrust Litigation, 131 F.R.D. 578 (D. Minn. 1990) (holding that "plaintiffs' financial information is not relevant to any outstanding issue in this litigation" where plaintiffs represented that they 'do not and will not seek to recover

lost profits,' and that their damages will be measured in this price-fixing case by 'calculating the extent of unlawful overcharges imposed by defendants'").

The position in this case is essentially the same as in Wirebound. The Ferry Company has stated that it will not use its financial statements in order to prove its compensatory damages; instead, it plans to prove its damages by "calculating the extent of unlawful overcharges imposed by" the Port Authority. Thus, the Ferry Company's profits and losses are not relevant to any issue in the case.

Third, the Port Authority, again relying on Professor Deak, offers the following explanation for its claim that it needs the banking and financial records of the Intervenors as well as the Ferry Company:

> Because all the companies are wholly-owned subsidiaries of one another, ultimately owned by Intervenor Brian A. McAllister, and file one consolidated tax return, the financial information of the related companies are necessary to see a true picture of the Ferry Company.

That explanation is specious. In the first place, the Ferry Company files separate state income tax returns in the two states in which it operates, New York and Connecticut (McAllister Decl., Ex. A, at ¶ 16(b)). Unless the Port Authority alleged that the Ferry Company files fraudulent state income tax returns (which the Port Authority has not alleged and for which there is no evidence), there is no need to invade the Intervenors' confidential financial records in order to get a "true picture" of the Ferry Company's financial position, assuming *arguendo* that the Ferry Company's financial position were relevant.

Furthermore, it is well established that the filing of consolidated federal tax returns or financial statements by affiliated corporations does not warrant disregarding the separate status of each corporation. *E.g.*, Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1264 (10th Cir. 1989) ("The Internal Revenue Code [26 U.S.C. § 1501] allows a parent

corporation to file consolidated income tax returns with its subsidiaries when the parent owns at least eighty percent of the subsidiary. . . . It is a common business practice"); <u>Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.</u>, 751 F.2d 117, 121 n.3 (2d Cir. 1984) (fact that affiliated corporations filed consolidated financial statements, which is required by generally accepted accounting principles when a parent owns more than 50 percent of the subsidiary's stock, did not warrant piercing corporate veil); <u>J.L.B. Equities, Inc. v. Ocwen Financial Corp.</u>, 131 F.Supp.2d 544, 550 (S.D.N.Y. 2001) ("because 'consolidated financial reporting is typical in a parent-subsidiary relationship, a mere department relationship cannot be established solely on the basis of such reporting'"), *quoting* <u>Cornell v. Assicurazioni Generali S.p.A.</u>, 2000 WL 284222, *4 (S.D.N.Y. March 16, 2000).

In sum, neither the Ferry Company's nor the Intervenors' confidential bank records at Fleet are relevant to any issue in this action.

### 5.  **The Court Should Impose Sanctions on the Port Authority**

The Ferry Company and Intervenors seek sanctions in connection with this motion because the Subpoena and motion were unnecessary and the Port Authority's counsel refused to discuss the issues raised by the Subpoena in good faith prior to the filing of this motion.  *See* Domb Decl., ¶¶ 7-9, 12-13.

In its opposition, the Port Authority twice concedes that it served the Subpoena because the Ferry Company had declined to produce its financial statements in response to the Port Authority's document request.  *See* Opp. Memo. at p. 11 ("the Port Authority was forced to obtain the Ferry Company's financial information through alternate means [*i.e.*, the Subpoena] due to the Ferry Company's refusal to comply with discovery requests"); *see also id.* at p. 2 (to the same effect).  Yet the dispute over whether the Ferry Company should be compelled to

produce its financial statements was already the subject of a pending motion, at the time the Port Authority served the Subpoena, and the Port Authority refused even to adjourn the return date of the Subpoena until after the Court decided that motion (Domb Decl. ¶¶ 12-13).  Thus, in serving the Subpoena, the Port Authority not only sought an end-run around the Ferry Company's legitimate objection to the document request, but it also attempted to nullify this Court's eventual consideration and determination of the identical dispute raised in the already-pending motion.

In opposing sanctions, the Port Authority states that it is "unaware of any instance in which this Court has sanctioned a litigant under Local Rule 37 for having served a subpoena" (Opp. Memo. at p. 12, *emphasis added*).  Yet the local rule (quoted in full in the Initial Memo, at p. 11), is quite clear on its face and requires no decisional law to interpret it.  Tracking the language of the rule:

> Where a party [the Port Authority] has sought or opposed discovery [through the Subpoena] which has resulted in the filing of a motion [the present motion], and that party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, sanctions will be imposed in accordance with applicable law.

Local Rule 37 (*emphasis added*).

Although we also have not found any cases in which this Court imposed sanctions under Local Rule 37 on a party or its counsel for having served a subpoena, other courts have done so. A good example is Cuthbertson v. Excel Industries, Inc., 179 F.R.D. 599 (D. Kan. 1998).  In that case, which involved claims of employment discrimination, the employer questioned the employee's son, at deposition, about the son's drug use.  The son answered initial questions but declined to answer additional questions on that topic.  The employer then served multiple subpoenas seeking the son's employment, medical, pharmaceutical, chiropractic, dental and psychiatric records.  The court held that the relevancy of the requested documents "was not

apparent," and thus the burden was on the employer to show the relevancy of the subpoenaed records, *id.* at 603; that the subpoenaed records were confidential, *id.* at 604; that it appeared that "the subpoenas were issued for the sole purpose of harassing and embarrassing the deponent and/or the plaintiff," *id.*; that the employer's "retaliatory" action of serving such subpoenas was "improper and unprofessional," *id.*; and that sanctions against the employer and its attorneys were appropriate "in order to punish the offending conduct and to deter future similar conduct," *id.* at 605.

The Port Authority has come forward with no rational explanation for subpoenaing, for example, all of Brian A. McAllister's personal bank account records, among a myriad of other confidential and irrelevant records. The Court should similarly punish and deter the conduct of the Port Authority and its counsel in serving such a blatantly abusive Subpoena, and in forcing the Ferry Company and Intervenors to file this motion by refusing to discuss the Subpoena in good faith.

## Conclusion

For the forgoing reasons and those set forth in the initial motion papers, the Court should enter a protective order quashing the Subpoena to Fleet and imposing sanctions on the Port Authority and/or its counsel.

(*Signature on next page*)

Dated: April 15, 2004

        BRIDGEPORT AND PORT JEFFERSON
        STEAMBOAT COMPANY,
        *Plaintiff, and*
        BRIAN A. McALLISTER, McALLISTER
        TOWING AND TRANSPORTATION
        COMPANY, INC., and STEAMBOAT
        CONCESSIONS, INC.
        *Intervenors*

By: _____
Martin Domb, Federal Bar No. ct 09544
E-mail: mdomb@hillbetts.com
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514

Jonathan S. Bowman, Federal Bar No. ct 08526
E-mail: jbowman@cohenandwolf.com
Stewart I. Edelstein, Federal Bar No. ct 06021
E-mail: sedelstein@cohenandwolf.com
COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 15th day of April, 2004, a copy of the foregoing was served via e-mail and mail upon the following:

| | |
|---|---|
| John W. Roberts. Esq.<br>Roberts, Rose & Bates, P.C.<br>17 Hoyt Street<br>Stamford, CT 06905 | Edward J. Sheppard, IV, Esq.<br>Thompson Coburn<br>1909 K Street, N.W., Suite 600<br>Washington, D.C. 20005-2010 |
| Suzanne L. Montgomery, Esq.<br>Thompson Coburn<br>One US Bank Plaza<br>St. Louis, MO 63101 | Jonathan S. Bowman<br>Stewart I. Edelstein<br>COHEN AND WOLF, P.C.<br>1115 Broad Street<br>P.O. Box 1821<br>Bridgeport, Connecticut 06601-1821 |

      By: _____
            Martin Domb
            Federal Bar No. ct 09544
            E-mail: mdomb@hillbetts.com
            HILL, BETTS & NASH LLP
            One World Financial Center
            200 Liberty Street, 26th Floor
            New York, New York 10281-1003
            Tel. (212) 589-7577
            Fax (212) 466-0514