UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, et al.,

        Plaintiffs,

- against -

BRIDGEPORT PORT AUTHORITY,

        Defendant.

_____/

CASE NO. 3:03 CV 599 (CFD)

December 7, 2004

**PLAINTIFFS' MEMORANDUM (1) IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL A FURTHER DEPOSITION OF BRIAN A. McALLISTER AND (2) IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION TO EXTEND THE PRETRIAL SCHEDULE**

Plaintiffs submit this memorandum of law (1) in opposition to the motion of defendant, Bridgeport Port Authority (the "Port Authority"), to compel a further deposition of Brian A. McAllister, President and indirect owner of plaintiff Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company"), and (2) in partial opposition to the Port Authority's motion to extend the pretrial schedule.

**Introduction**

1.      The Court is already familiar with this action, having previously issued rulings on two substantive motions.[1] Briefly, plaintiffs – the Ferry Company and two of its passengers – claim that the per-trip tariff imposed by the Port Authority on ferry passengers is excessive and

---

[1] Bridgeport [and] Port Jefferson Steamboat Co. v. Bridgeport Port Authority, 2004 WL 840140 (D. Conn., Apr. 15, 2004) (denying motion for preliminary injunction); and Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority, 335 F. Supp. 2d 275 (D. Conn., Sept. 8, 2004) (denying motions to dismiss and for partial summary judgment).

**ORAL ARGUMENT NOT REQUESTED**

{NY029989.1 }

therefore illegal.  Plaintiffs seek compensatory damages with respect to excessive collections to date and injunctive and declaratory relief with respect to future collections.

2.  By its present motion (the "Motion"), the Port Authority seeks, first, to compel a further deposition of Mr. McAllister, ostensibly on the ground that the Port Authority needs to question Mr. McAllister about the Ferry Company's financial records, which the Ferry Company produced in August 2004, after the Port Authority had deposed Mr. McAllister in February 2004. Second, the Port Authority seeks to extend the pretrial schedule by about two months "to accommodate this discovery" (Motion, p. 1).

3.  The Ferry Company opposes a further deposition of Mr. McAllister because, as detailed below (at ¶¶ 6-27) and supported by the attachments to the accompanying Declaration of Martin Domb (the "Domb Decl."):

(a)  Mr. McAllister testified at his deposition that he does not have detailed knowledge of the Ferry Company's financial records and that William Merritt, the Ferry Company's chief financial officer, is its representative most knowledgeable about the financial records;

(b)  the Port Authority deposed Mr. Merritt the following day; after Mr. Merritt declined to answer certain questions concerning the Ferry Company's finances – because the Ferry Company objected to the disclosure of its financial information – the Port Authority's counsel stated that it might seek to re-depose <u>Mr. Merritt</u> concerning the financial records, if the Court directed their disclosure;

(c)  the Ferry Company produced its tax and financial records in August 2004, promptly after the Court directed their disclosure, and consented to the Port Authority

taking a second deposition of Mr. Merritt concerning such records; that deposition was held in October 2004;

(d) the Port Authority has not shown that the second deposition of Mr. Merritt was inadequate and has not stated any valid reason why Mr. McAllister, in addition to Mr. Merritt, should be deposed again; and

(e) a further deposition of Mr. McAllister under these circumstances is unnecessary and would be wasteful and vexatious.

4. Under Fed. R. Civ. P. 26, the Court has broad discretion to supervise discovery and may properly disallow a deposition (*see* ¶ 28 below). The Court should disallow a further deposition of Mr. McAllister under the circumstances in this case (¶¶ 6-27).

5. Accordingly, there is no need to extend the existing pretrial schedule "to accommodate this discovery," as the Port Authority states. Instead, plaintiffs request a conference with the Court (in person or by telephone) for the purpose of scheduling the remaining proceedings in this case, *i.e.*, the pretrial memorandum and trial (*see* ¶¶ 30-34 below).

**There Is No Valid Reason to Hold a Further Deposition of Mr. McAllister**

6. The Port Authority has already deposed Mr. McAllister at length, on February 10, 2004 (relevant excerpts from the transcript of that deposition are attached as Exhibit A to the accompanying Domb Decl.). That deposition lasted 5 hours and 19 minutes (including breaks).[2]

7. When a topic relating to the Ferry Company's finances first arose – concerning a fee paid by the Ferry Company to its corporate parent – <u>the Port Authority's counsel himself</u> suggested that Mr. Merritt would be the more appropriate Ferry Company representative to be questioned concerning that subject:

---

[2] *See* Domb Decl. Ex. A, pp. 1, 168. The court reporter did not note the times or duration of recesses during that deposition (*e.g.*, *id.*, p. 50, lines 4-13).

> Q. Would it be fair to say that Mr. Merritt would be the one to ask more detailed questions about this area than yourself?
>
> A. He's more knowledgeable than I am about finance. I have a general knowledge of it.
>
> Q. So he might know how the fee that is paid to McAllister Towing is calculated?
>
> A. Well, I have some general knowledge, but he has better knowledge.

(Domb Decl. Ex. A, p. 33, lines 9-17; *see also id.*, page 32, line 21 to page 33, line 8.)

8. A few minutes later, the same question arose with respect to the Ferry Company's financial records generally:

> Q. Is Mr. Merritt a witness who would be more knowledgeable about the financial records of the company than you yourself, sir?
>
> [Objection omitted]
>
> A. He's a very knowledgeable financial man. And he is the chief financial officer of the company. And that's not my forte.

(Domb Decl. Ex. A, p. 39, lines 13-21.)

9. Mr. McAllister again deferred to Mr. Merritt when he was questioned as to whether the Ferry Company earns interest on tariff proceeds between the time it collects the tariff from passengers and the time it remits the proceeds to the Port Authority (*id.*, page 58, lines 8-18).

10. Thus, it was clear from Mr. McAllister's first deposition that Mr. Merritt is the representative of the Ferry Company most knowledgeable about its financial records. Accordingly, the Port Authority's counsel consciously chose not to question Mr. McAllister in detail concerning financial matters and reserved such questions for Mr. Merritt.

11. The Port Authority deposed Mr. Merritt the following day, February 11, 2004 (relevant excerpts from the transcript of that deposition are attached as Exhibit B to the Domb Decl.). The Port Authority's counsel questioned Mr. Merritt about financial matters but he declined to answer certain questions because the Ferry Company had objected to the disclosure of its financial information. The Port Authority's counsel then stated that, if the Court directed the Ferry Company to produce its financial records, the Port Authority might seek to re-depose Mr. Merritt, and plaintiff's counsel so acknowledged:

> MS. MONTGOMERY: We filed a motion on that issue [the discoverability of the financial records], and I would just state for the record that if the judge agrees with our position, we may want to re-depose Mr. Merritt in the area of financial issues if the judge does find that it is discoverable. You appreciate that. Right?
>
> MR. DOMB: Okay.
>
> MS. MONTGOMERY: And I'll let you stand by your objection now knowing that we have a motion pending before the court.

(Domb Decl. Ex. B, p. 44, line 14 to p. 45, line 1; for context, *see also id.*, p. 42, line 25 to p. 44, line 13.)

12. The Port Authority had moved two days earlier, on February 9, 2004, to compel (among other things) production of the Ferry Company's tax and financial records (Court docket # 43). By order entered on July 8, 2004, the Court directed the Ferry Company to produce its tax and financial records subject to a proposed confidentiality order to be submitted by the parties (Court Docket # 81 [the relevant request was number 3]).

13. On August 2, 2004, the parties submitted a stipulation and proposed order of confidentiality (Court Docket # 85). On August 5, 2004, the Court entered an order approving the stipulation, with certain modifications (Court Docket # 86).

14. The very next day, August 6, 2004, the Ferry Company produced to the Port Authority's counsel over 1,200 pages of Ferry Company tax and financial records (Domb Decl. Ex. C). The Ferry Company supplemented that production on August 12, 2004 (*id.*, Ex. D).

15. Following such production, the Port Authority's counsel initially asked to re-depose <u>three</u> Ferry Company representatives concerning the financial records – Mr. McAllister, Mr. Merritt and Frederick Hall, the Ferry Company's General Manager. However, after discussions with plaintiffs' counsel, both sides agreed that the Port Authority would depose Mr. Merritt, and both sides reserved their rights as to whether any further depositions would be taken (*see* Domb Decl. Ex. E).

16. In accordance with this agreement, the Port Authority took a second deposition of Mr. Merritt on October 28, 2004 (the "Confidential Merritt Dep.").[3] Having received the Ferry Company's extensive and detailed tax and financial records several weeks earlier, and having the Ferry Company's chief financial officer since 1998 (Mr. Merritt) available for a full day of deposition, the Port Authority chose to question Mr. Merritt for less than two hours (from 9:45 a.m. until 11:30 a.m., including breaks) (Confidential Merritt Dep., pp. 1, 45). The Port Authority devoted a good deal of that time simply to having Mr. Merritt identify and authenticate the financial records, *e.g.*:

- Deposition Exhibit 300 – a 443-page composite exhibit consisting of a series of Form 1120 federal tax returns and Connecticut and New York state tax returns of the Ferry Company (Confidential Merritt Dep., p. 3, line 16 to p. 8, line 3).

---

[3] The Ferry Company is submitting a copy of the full transcript of the Confidential Merritt Dep. with its accompanying motion to file it under seal, given that it concerns the tax and financial records of the Ferry Company, which were produced pursuant to the Confidentiality Order.

- Deposition Exhibit 301 – a 629-page composite exhibit consisting of a series of monthly management reports containing detailed financial data of the Ferry Company (Confidential Merritt Dep., p. 8, line 9 to p. 14, line 14).

- Deposition Exhibit 302 – a 143-page composite exhibit consisting of the Ferry Company's audited financial statements for the years 1992 through 2003 (Confidential Merritt Dep., p. 17, line 10 to p. 21, line 3).

17. The Port Authority spent a further substantial portion of the deposition asking Mr. Merritt to read the Ferry Company's annual net income into the record (*id.*, p. 23, line 3 to p. 25, line 25). The authentication of the records and the reading of figures from them take up more than half the deposition transcript (about 25 of 45 pages).

18. Beyond this, he Port Authority questioned Mr. Merritt very briefly concerning a handful of topics arguably based on the financial records; this portion of the transcript takes up only about 12 pages in total:

- Reasons for the general increase in revenue over the years (*id.*, p. 26, line 1 to p. 27, lime 21).

- Increases in wages (*id.*, p. 27, line 22 to p. 28, line 4).

- "Charter hire" payments (*id.*, p. 28, lines 5 to 25; p. 33, line 18 to p. 34, line 11).

- Professional fees (*id.*, p. 29, line 19 to p. 30, line 21).

- Dividend distributions (*id.*, p. 30, line22 to p. 33, line 17).

- Allocation of corporate overhead to the Ferry Company (*id.*, p. 34, line 12 to p. 37, line 19).[4]

19. The Port Authority devoted the last portion of the deposition – about seven pages – to questioning Mr. Merritt about a topic <u>unrelated</u> to the financial records, and about which it had already questioned Mr. McAllister at his deposition: the relief sought by the Ferry Company

---

[4] This is the topic about which Mr. McAllister testified that he has "some general knowledge, but [Mr. Merritt] has better knowledge," quoted at ¶ 7 above.

and other plaintiffs in this case (Confidential Merritt Dep., p. 37, line 20 to p. 44, line 16; *see also*, *e.g.*, McAllister deposition [Domb Decl. Ex. A], p. 153, line 15 to p. 163, line 3).

20. The Port Authority posed no questions to Mr. Merritt concerning the Ferry Company's financial records that he was unable to answer. At the conclusion of the Merritt Deposition, the Port Authority's counsel did not state that there were any such questions or topics that Mr. Merritt was unable to answer, nor did they state that Mr. Merritt had been an inadequate witness in any respect (Confidential Merritt Dep., p. 44).

21. The sole justification now advanced by the Port Authority for demanding a further deposition of Mr. McAllister is that Mr. Merritt has been the Ferry Company's CFO "only" since 1998. This is a pretext rather than a valid reason. First, the Port Authority did not ask Mr. Merritt any questions at his deposition concerning the pre-1998 financial records that Mr. Merritt was unable to answer. On the contrary, although Mr. Merritt testified that he had not previously seen the audited financial statements from 1992 to 1997, he nevertheless authenticated them (along with those from 1998 to 2003) and answered questions about them, including the net income earned by the Ferry Company those years ((Confidential Merritt Dep., p. 18, line 22 to p. 19, line 11 [authentication]; and p. 22, line 9 to p. 23, line 16 [net income in 1992, 1993, 1996 and 1997]).

22. Second, there is no indication that <u>Mr. McAllister</u> would be able to answer any questions about the financial records from 1992 to 1997 that Mr. Merritt would not have been able to answer had the Port Authority posed them to him. On the contrary, as Mr. McAllister testified at his deposition (*see* ¶¶ 7-9 above), his own knowledge of the Ferry Company's financial records is merely "general" and far less detailed than that of Mr. Merritt.

23. Contrary to the assertions of the Port Authority's counsel during his pre-motion discussion with plaintiffs' counsel, at no time during his deposition did Mr. Merritt "defer" to Mr. McAllister on any questions concerning the Ferry Company's financial records (*see* letter from Martin Domb to Timothy F. Noelker dated November 17, 2004, attached to the Motion, at ¶ 5). On the contrary, the one time he was asked whether Mr. McAllister would know the answer to a question concerning the financial records, Mr. Merritt answered: "He wouldn't know unless he reviewed the details. None of us have memories – we have a total of about 35 subsidiaries" (Confidential Merritt Dep., p. 24, lines 3-17).[5]

24. About two weeks after the Confidential Merritt Deposition, the Port Authority's counsel (Mr. Noelker) demanded to take a further deposition of Mr. McAllister concerning the financial records, but when asked to explain why such a deposition was necessary, Mr. Noelker refused to provide any valid explanation for it (*see* letter from Martin Domb to Timothy F. Noelker dated November 17, 2004, attached to the Motion).

25. It is noteworthy that the Port Authority's demand – unreasonable in our view – to re-depose Mr. McAllister concerning the financial records was made by the <u>fourth</u> Port Authority lawyer to have been involved in the depositions and discussions <u>directly</u> relevant to this motion:

- <u>Edward J. Sheppard</u>, of the Washington, D.C. office of Thompson Coburn, LLP ("TC"), deposed Mr. McAllister on February 10, 2004.

- <u>Suzanne L. Montgomery</u>, of TC's St. Louis, office, deposed Mr. Merritt on February 11, 2004. Ms. Montgomery later withdrew from TC and from this case, in July 2004 (Court Docket # 84).

---

[5] Mr. Merritt "deferred" to Mr. McAllister only once, near the end, when he was questioned, not about the financial records, but about the Ferry Company's goal in this litigation (*see* Confidential Merritt Dep., p. 40, lines 7-23). As noted above, the Port Authority previously had questioned Mr. McAllister at length about this topic, at his deposition on February 10, 2004 (Domb Decl. Ex. A, p. 153, line 15 to p. 163, line 3).

- <u>Steve Kellogg</u>, of TC's St. Louis office, replaced Ms. Montgomery. He participated in the discussions with plaintiffs' counsel as to who was the most appropriate Ferry Company representative to be re-deposed concerning the financial records (*see* Domb Decl. Ex. E).

- <u>Timothy F. Noelker</u>, of TC's St. Louis office, replaced Mr. Kellogg and appeared in this case in September 2004 (*see* Court Docket # 90). He took the second deposition of Mr. Merritt on October 28, 2004.

26. Plaintiffs respectfully submit that the Port Authority's unreasonable demand to re-depose Mr. McAllister concerning the financial records is not based on a valid or demonstrated need, but rather results from a combination of personnel changes among the Port Authority's counsel and an improper desire to cover areas that prior counsel already covered or had the full opportunity to cover.

27. A further deposition also would cause plaintiffs to incur significant and unnecessary costs. The Port Authority has conceded that the ferry passenger tariff and the Ferry Company's lease payments account for substantially all of the Port Authority's revenues and operating funds.[6] Thus, the Ferry Company and its passengers in effect are funding, not only their own cost of prosecuting this action, but also (indirectly) the Port Authority's defense costs. If Mr. McAllister were to be deposed again, plaintiffs would bear the cost of preparation, travel and deposition time <u>of both sides</u>. The Court should not allow the Port Authority to engage in unnecessary and duplicative discovery that will needlessly drive up the cost of this litigation.

28. A district court has broad discretion to control discovery, including, in appropriate circumstances, disallowing a deposition. *See* Fed. R. Civ. P. 26, 1970 Advisory Committee's Note ("Rule 26(c) ... confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of [discovery under Fed. R. Civ. P.] 26(b), and

---

[6] Evidence to that effect was presented, for example, at the preliminary injunction hearing on April 1, 2004. In fact, the motion for a preliminary injunction was precipitated by the Port Authority's public announcement that it would assess a 50-cent per trip surcharge in order to fund the legal cost of its defense in this litigation.

these powers have always been freely exercised"); Herbert v. Lando, 441 U.S. 153, 177, 99 S.Ct. 1635 (1979) ("[T]he district courts should not neglect their power to restrict discovery" under Fed. R. Civ. P. 26(c) and "should not hesitate to exercise appropriate control over the discovery process"). In carrying out its oversight of discovery, a court must limit a party's discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). Thus, it is well-settled that "judges may prevent [a] proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship." In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 70 (2d Cir. 2003).

29.   Plaintiffs submit that, given the circumstances in this case, as detailed above, a further deposition of Mr. McAllister concerning the Ferry Company's financial records is unnecessary and would be wasteful and vexatious. Accordingly, the Court should deny that part of the Port Authority's motion that seeks to compel such a deposition.

### The Court Should Hold a Trial Scheduling Conference

30.   The Port Authority has coupled its motion to compel a further deposition of Mr. McAllister with a request for a two-month extension of the pretrial schedule, ostensibly "to accommodate this discovery" (Motion, p. 1).

31.   Under the pretrial schedule currently in effect, which the Court "so-ordered" on October 4, 2004 (Court Docket # 96), discovery was to be concluded on October 31, 2004;

dispositive motions (if any) were due on November 30, 2004; and the trial memorandum is due on December 21 or 31, 2004.[7]

32.     Discovery in fact has been completed, subject only to the dispute in this motion over whether the Port Authority should be allowed to depose Mr. McAllister again. Neither side has filed a dispositive motion, and counsel for both sides have informed each other that they do not intend to do so. Thus, the next steps in this case are for the parties to file the joint trial memorandum and for the Court to schedule the trial.

33.     Plaintiffs submit that the dispute over whether the Court should allow a further deposition of Mr. McAllister did not warrant extending the pretrial schedule. Nevertheless, given that the briefing of this motion is unlikely to be completed until the second half of December 2004 (even though plaintiffs are filing this opposition well before its due date), it would have been unrealistic for plaintiffs to insist that the parties file the trial memorandum by December 21 or 31, 2004. Accordingly, we have consented to the Port Authority's separate motion to extend the due date for the trial memorandum by 30 days, until January 31, 2004.

34.     In addition, given the advanced posture of this case – discovery having been completed subject only to the dispute over a further deposition of Mr. McAllister – plaintiffs respectfully request that the Court schedule a conference at the earliest available date, either in person or by telephone, for the purpose of setting a definite schedule for both the joint trial memorandum and trial.

---

[7]     The Court docket states, "Trial Brief due 12/21/2004" (*see* Court Docket ## 93, 96). However, we believe that this may be a typographical error, as the proposed schedule in the Port Authority's motion (on consent) granted by the Court provided that the trial memorandum would be due on December 31, 2004.

**Conclusion**

For the foregoing reasons, and those set forth in the accompanying Domb Declaration, plaintiffs respectfully submit that the Court should (1) deny the Port Authority's motion to compel a further deposition of Brian A. McAllister, and (2) set a conference (in person or by telephone) to schedule the remaining proceedings in this case.

Dated:    December 7, 2004

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, D & D WHOLESALE
FLOWERS, INC., and FRANK C. ZAHRADKA
*Plaintiffs*

/s/
By: _____
Martin Domb, Federal Bar No. ct 09544
E-mail: mdomb@hillbetts.com
Eric M. Underriner, Federal Bar No. ct 26020
E-mail: eunderriner@hillbetts.com
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514

Jonathan S. Bowman, Federal Bar No. ct 08526
E-mail: jbowman@cohenandwolf.com
Stewart I. Edelstein, Federal Bar No. ct 06021
E-mail: sedelstein@cohenandwolf.com
COHEN AND WOLF, P.C.
1115 Broad Street, P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504

## CERTIFICATE OF SERVICE

       I hereby certify that on December 7, 2004, a copy of the foregoing was served via e-mail and U.S. mail upon the following counsel for defendant Bridgeport Port Authority:

| | |
|---|---|
| John W. Roberts. Esq. | Edward J. Sheppard, IV, Esq. |
| Roberts, Rose & Bates, P.C. | Thompson Coburn |
| 17 Hoyt Street | 1909 K Street, N.W., Suite 600 |
| Stamford, CT 06905 | Washington, D.C. 20005-2010 |

Timothy F. Noelker, Esq.
Thompson Coburn
One US Bank Plaza
St. Louis, MO 63101

                         /s/
      By:  _____
             Martin Domb
             Federal Bar No. ct 09544
             E-mail: mdomb@hillbetts.com
             HILL, BETTS & NASH LLP
             One World Financial Center
             200 Liberty Street, 26th Floor
             New York, New York 10281-1003
             Tel. (212) 589-7577
             Fax (212) 466-0514