UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, et al.,

                Plaintiffs,

        CASE NO. 3:03 CV 599 (CFD)

    - against -

BRIDGEPORT PORT AUTHORITY,

        February 1, 2005

                Defendant.

_____/

## PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF LAW

1.      Pursuant the Court's standard Trial Memorandum Order (Non-Jury Cases), plaintiffs move in limine and seek the following relief with respect to anticipated evidentiary problems at trial:[1]

      (a)    <u>Ferry Company profits</u>. With respect to evidence of profits and other confidential financial information of plaintiff Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company"), the Ferry Company seeks an order (a) declaring such evidence irrelevant and therefore inadmissible, or, alternatively, (b) providing that any such evidence be introduced in a manner designed to protect its confidentiality, pursuant to the Court's order dated August 5, 2004 (the "Confidentiality Order") (Court Docket # 86) (see ¶¶ 2-14 below).

---

[1]    Because the parties have not yet exchanged exhibits, and because the parties exchanged their witness lists and factual contentions only one day before they filed their Proposed Joint Trial Memorandum, plaintiffs may seek the Court's leave to submit further motions in limine with respect to (a) the Port Authority's proposed trial exhibits, and (b) the Port Authority's proposed witnesses and deposition designations (any such motions to be made within a reasonable period after the exchange of exhibits and witness lists, respectively, and no later than 30 days before the commencement of trial).

**ORAL ARGUMENT REQUESTED**

[NY034473.1 ]

(b)    Expert witness John Arnold. With respect to proposed expert witness John H. Arnold Jr., designated by defendant Bridgeport Port Authority (the "Port Authority"), plaintiffs seek an order limiting the areas in which he may be permitted to testify as an expert, given his lack of education, licenses or experience in the fields of accounting and economics (see ¶¶ 15-20 below).

(c)    Expert witness Edward Deak. With respect to proposed expert witness Edward J. Deak, also designated by defendant Bridgeport Port Authority (the "Port Authority"), plaintiffs seek an order barring his testimony because, as his report and deposition testimony show, the sole purpose of his proposed testimony is to rebut the declaration of economist Steven J. Shapiro, which plaintiffs filed in June 2003 in opposition to the Port Authority's dismissal motion, but plaintiffs have not designated Professor Shapiro as an expert and do not intend to call him as a witness at trial (see ¶¶ 21-24 below).

## The Ferry Company's Confidential Financial Information

2.    During discovery, the parties disputed whether the Ferry Company was required to produce its tax returns, financial statements and other financial information. By order dated July 8, 2004 (Court Docket # 81), the Court directed the Ferry Company to produce such documents, subject to a confidentiality order to be entered at a later date.

3.    The parties accordingly filed a stipulation and proposed order of confidentiality (the "Stipulation of Confidentiality") (Court Docket # 85), and the Court approved it subject to modifications stated in said order (Court Docket # 86). (Copies of the Stipulation of Confidentiality and the Confidentiality Order are attached hereto as Exhibits A and B.)

4.     The Confidentiality Order provides (among other things) that the Ferry Company's financial documents are to be shown to limited classes of persons, not including the Port Authority itself. The persons to whom such information may be disclosed are (a) the Port Authority's <u>attorneys</u>, (b) the Port Authority's experts, and (c) court personnel. (See Stipulation of Confidentiality, ¶¶ 3-6.)

5.     **The Ferry Company's profitability is irrelevant**. The question of whether evidence of the Ferry Company's profits is relevant, and therefore admissible, is governed by Federal Rules of Evidence 401, 402 and 403. Rule 401 defines relevant evidence:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 402 provides in relevant part: "All relevant evidence is admissible . . . . <u>Evidence which is not relevant is not admissible</u>" (emphasis added). Finally, Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6.     The Ferry Company anticipates that the Port Authority will argue that the Ferry Company has not been harmed by the Passenger Fee because the Ferry Company has been generally profitable throughout the period that the Passenger Fee has been in effect. To support this argument, the Port Authority will probably seek to introduce the Ferry Company's profits as stated in its financial statements and/or tax returns.

7.     However, the Ferry Company's profitability is irrelevant to the issues of (a) whether the Passenger Fee has been excessive, and therefore illegal, or (b) whether the Ferry Company has suffered damages as a result of the excessive Passenger Fee. As to the first issue,

the Ferry Company's profitability has nothing to do with the question of whether the Passenger

Fee has been excessive. The Passenger Fee, to be legal, must not exceed the reasonable cost to

the Port Authority of the facilities and services that the Port Authority provides to the ferry

operation (see Trial Memorandum, section 4, Nature of Case, Plaintiffs' Statement, "Authority

for Each Affirmative Claim"). Thus, the legality of the Passenger Fee turns on the <u>Port

Authority's</u> expense records and financial statements, not the Ferry Company's. Likewise, if a

customer claims that a merchant has illegally overcharged for a product or service, the

customer's wealth or income is irrelevant to the question of whether there was an overcharge.

8.      The Ferry Company's profitability also is irrelevant to the issue of the Ferry

Company's damages, because such damages are measured by the amount of the overcharge, not

by reference to the Ferry Company's profits notwithstanding the overcharge. As the Court stated

in a prior ruling in this case (on the issue of the Ferry Company's standing to sue for damages):

> The harm to the Ferry Company is fairly traceable to the Passenger Fee: it
> increases the real cost of ferry transportation to its customers, thereby
> depressing demand for such transportation. In the absence of the
> Passenger Fee, the Ferry Company could either charge the same rates it
> charges now but attract more customers because of the lower real cost to
> the passengers or charge a higher rate for ferry passage without depressing
> demand from its current level (or some combination).

(Ruling dated September 8, 2004, at p. 12.)

9.      Furthermore, as essentially all of the Ferry Company's costs are fixed each year --

the cost of the ferries, fuel, salaries and other major expenses do not vary with the number of

vehicles or passengers carried – the additional revenue that the Ferry Company would have

earned in the absence of Passenger Fee overcharges is itself the measure of the Ferry Company's

lost profits, and therefore its damages.

10.    Even if proof of the Ferry Company's profits and other confidential financial information were marginally relevant, the potential for prejudice and confusion from admitting this evidence outweighs any probative value it may have. Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 207 (2d Cir. 1984) (trial judge has wide discretion in determining whether probative value of financial information is outweighed by the danger of unfair prejudice or confusion); LinkCo, Inc. v. Fujitsu Ltd., 232 F.Supp.2d 182, 191 (S.D.N.Y. 2002) (excluding evidence of profits under Rule 403).

11.    **Alternatively, the confidentiality of the Ferry Company's profits should be preserved at trial**.  In the event the Court determines that evidence of the Ferry Company's profits and other financial information is relevant and admissible, then the Court should take reasonable steps to preserve the confidentiality of such evidence.  The Stipulation of Confidentiality, agreed to by both sides, contains the following provision on the use of confidential information at trial:

> The use of Confidential Information at trial shall be resolved, to the extent possible, between the parties prior to trial, with the assistance of the Court if necessary.  Notwithstanding the foregoing, during trial, or any hearing in this action, if any party intends to offer into evidence or otherwise use any document or information that contains Confidential Information or that is derived therefrom, counsel shall announce the intention to do so beforehand so that the Court and the parties may take such steps as are deemed reasonably necessary to preserve the confidentiality of such document or information.

12.    In this respect the Confidentiality Order provides:

> Hearings and testimony will also be open to the public unless a party makes a prior request that they be closed to the public and such request is approved upon a showing of good cause.

13.    The Ferry Company has already shown good cause for keeping its financial information confidential, not only from the public but even from the Port Authority itself.  The

Court has already accepted the need for confidentiality by entering the Confidentiality Order. See also Declarations of Brian A. McAllister filed on February 27, 2004, and March 15, 2004 (Court Docket ## 47 and 58), and memoranda filed by plaintiffs on those same dates (Court Docket ## 46 and 57), in opposition to Port Authority's motion to compel and in support of the Ferry Company's motion for a protective order, respectively (Court Docket ## 43 and 56).

14.     As the case will be tried to the Court without a jury, it should not be difficult to establish procedures whereby the evidence could be admitted without its disclosure to the public or other persons from whom disclosure is protected under the Confidentiality Order. For example, attorneys and witnesses could be instructed not to state profit or other figures aloud, but instead to identify such figures by reference to financial statements or other documents that may be admitted in evidence.

### Expert Witness John Arnold

15.     The Port Authority has designated John H. Arnold Jr. as one of its expert witnesses. Mr. Arnold has submitted a report, dated August 31, 2004, and he was deposed on October 29 and November 4, 2004 (pages from his deposition referred to herein are attached as Exhibit C). In his report, Mr. Arnold describes himself as a "transport economist" and states that he has been retained by the Port Authority "to provide my expert opinion as a port expert."

16.     Although Mr. Arnold's *curriculum vitae* does reflect that he has had considerable experience analyzing port operations (albeit mostly in foreign countries, see ¶ 19 below), in his report Mr. Arnold repeatedly strays beyond the apparent area of his expertise, opining, for example, on a variety of economic and accounting issues. For example, he opines on price

elasticity and other economic issues (Arnold Report ¶¶ 10-34); the Ferry Company's financial

performance (*id.* ¶¶ 43-45); and accounting issues (*id.* ¶¶ 72-84).[2]

17.    Yet at his deposition, on October 29, 2004, Mr. Arnold testified that he has no

degrees or formal training in accounting, is not a certified public accountant, has never practiced

as an accountant, does not hold himself as an expert in accounting or auditing, holds no degrees

or licenses in economics, and is not a member of any professional association of accountants or

economists (p. 10 line 13 to p. 11 line 18).

18.    When asked to describe his own area of expertise, Mr. Arnold testified that he is a

"port expert," and an expert "in matters of port financing" (p. 37 line 18 to p. 38 line 3).

19.    Notably, Mr. Arnold has testified only once before as an expert, in a case before

the Federal Maritime Commission, and in that case the administrative law judge commented on

Mr. Arnold as follows:

> Mr. Arnold has impressive experience dealing with foreign ports, but not
> U.S. ports, and does not have a background in economics.

Exclusive Tug Arrangements in Port Canaveral, Florida, 2003 WL 1017732 (F.M.C., March 4,

2003), at *34.

20.    Accordingly, plaintiffs submit that Mr. Arnold's testimony as an expert, if any,

should be limited to his stated areas of expertise, "port expert" and "port finance," and that he

should not be allowed to opine in the areas of economics or accounting, in which he has had little

or no training and does not hold himself as an expert.

---

[2]    A copy of the 34-page Arnold report is not attached hereto mainly because it includes
confidential financial information of the Ferry Company that is protected by the Stipulation of
Confidentiality and the Confidentiality Order.  Plaintiffs will submit a copy of the report to the
Court at the hearing of this motion or at such other time and under such conditions as the Court
may direct.

### Expert Witness Edward Deak

21.    The Port Authority has designated Edward J. Deak as one of its expert witnesses.

Mr. Deak has submitted a report, dated August 31, 2004, and he was deposed on October 27,

2004 (pages from his deposition referred to herein are attached as Exhibit D).  Professor Deak

also testified at the preliminary injunction hearing in this case, held on April 1, 2004, prior to his

having submitted a report or been deposed.

22.    In the introduction to his report, Professor Deak states that his "principal

responsibility" was to review and comment on the Ferry Company's argument that it has been

damaged by the excessive Passenger Fee, and that this argument is contained in the report of

Professor Shapiro, dated June 20, 2003 (the "Shapiro Report").  See Deak Report ¶ 2 and

footnote 1 (cited pages attached at Exhibit E).

23.    At his deposition, Professor Deak reiterated several times that his role was limited

to reviewing and critiquing the Shapiro Report.  For example:

> Q.    . . . I'm asking you aside from what Shapiro did, do you have any
> basis for saying whether the price of elasticity of ferry service is in
> this case greater or less than one?
>
> A.    Apart from what material was presented in there, I have no
> independent calculation of what the elasticity is.

(Deak dep. p. 55 lines 10-16.)

> Q.    So your report is simply a critique of Professor Shapiro, and you
> haven't really gone beyond to express your opinions?
>
> A.    I was asked to take a look at Professor Shapiro's report in terms of
> the application of economics to the question of economic injury to
> the ferry company, and I believe I did that, and I did that to the
> extent of the information that was available in the Shapiro report.
>
> Q.    So apart from what Professor Shapiro said, you have no view of
> what would happen?  You can't predict with any certainty what

would happen if the ferry company right now raised its prices by 50 percent, can you?

A.    Apart from using that as an example of what the extreme would be in the Shapiro report, the answer to your question is no, I have no firsthand information.

(*Id*. p. 85 lines 1-18.)

24.    Plaintiffs have not designated Professor Shapiro as an expert witness to testify at trial, and they have not listed him as a trial witness in the Trial Memorandum. As Professor Shapiro is not expected to testify at trial, and Professor Deak has testified that his role has been limited to commenting on Professor Shapiro's June 2003 declaration, there is no reason for Professor Deak to testify at trial, and thus he should not be permitted to testify at all.

## Conclusion

25.    For the foregoing reasons, plaintiffs respectfully request that the Court enter in limine orders for the relief requested herein.

Dated:  February 1, 2005

<div style="margin-left: 40%">

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, D & D WHOLESALE
FLOWERS, INC., and FRANK C. ZAHRADKA,
*Plaintiffs*

By:    _____
Martin Domb, Federal Bar No. ct 09544
E-mail:  mdomb@hillbetts.com
Eric M. Underriner, Federal Bar No. ct 26020
E-mail:  eunderriner@hillbetts.com
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514

Jonathan S. Bowman, Federal Bar No. ct 08526
E-mail:  jbowman@cohenandwolf.com
Stewart I. Edelstein, Federal Bar No. ct 06021
E-mail:  sedelstein@cohenandwolf.com
COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504

</div>

[NY034473.1 ]

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2005, a copy of the foregoing was served via e-mail

(without exhibits) and overnight mail (with exhibits) upon the following counsel for defendant

Bridgeport Port Authority:

John W. Roberts. Esq.
Roberts, Rose & Bates, P.C.
17 Hoyt Street
Stamford, CT 06905

Edward J. Sheppard, IV, Esq.
Thompson Coburn
1909 K Street, N.W., Suite 600
Washington, D.C. 20005-2010

Timothy F. Noelker, Esq.
Jason C. Rahoy, Esq.
Thompson Coburn
One US Bank Plaza
St. Louis, MO 63101

By:                           

Martin Domb, Federal Bar No. ct 09544
E-mail: mdomb@hillbetts.com
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514

**Exhibit A**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, et al.,

CASE NO. 3:03 CV 599 (CFD)

Plaintiffs,

July 29, 2004

- against -

BRIDGEPORT PORT AUTHORITY,

STIPULATION AND [PROPOSED]
ORDER OF CONFIDENTIALITY

Defendant.

_____/

IT IS HEREBY STIPULATED AND AGREED as follows by and between plaintiff

Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company") and defendant, Bridgeport

Port Authority (the "Port Authority"), through their respective undersigned counsel:

1.     Introduction.  This Stipulation and Order of Confidentiality (the "Order") applies to

"Confidential Information," as defined in paragraph 2 below, that is produced or otherwise disclosed

in this action by the Ferry Company, whether it is contained in documents, deposition or trial

testimony, answers to interrogatories, responses to requests for admission, or otherwise.

2.     Definition.  The term "Confidential Information" as used in this Order means:  (a)

documents or materials to be produced by the Ferry Company pursuant to the Court's order dated July 8,

2004 (Court Docket entry # 81), in response to document request number 3 of Defendant Bridgeport Port

Authority's First Request for Production Directed to Plaintiff Bridgeport and Port Jefferson Steamboat

Company, dated August 5, 2003, and (2) any other record, document, thing or information that contains

financial information or other trade secrets or proprietary information of the Ferry Company, which

the Ferry Company in good faith designates, in the manner provided herein, as materials or

information to be protected pursuant to the terms of this Order.

3.    <u>Use of Confidential Information restricted to this action</u>.  Confidential Information

subject to this Order shall be used only in connection with the prosecution or defense of this action and

during its pendency.  Confidential Information may be used as evidence during any hearing, trial or

other proceeding in this action subject to objections and rulings as to its admissibility and other terms

of this Order.  Confidential Information shall not be used or disclosed by any person for any purpose

not directly related to the prosecution or defense of this action; <u>provided, however,</u> that the Ferry

Company may use or disclose Confidential Information in the normal course of its business (e.g., it

may disclose such information to its outside auditors and bankers).  Neither the Ferry Company nor

any other person shall disclose Confidential Information to the media or other members of the public.

4.    <u>Persons to whom Confidential Information may be disclosed</u>.  Confidential Information

shall not be disclosed to any person except the following:

(a)    Counsel of record for the parties and any regular employees of such counsel

assigned to perform services in connection with this action (hereinafter these persons are

collectively referred to as "Counsel").

(b)    Expert witness(es) retained by Counsel, subject to paragraph 5 below.

(c)    The Court, Court reporters and Court personnel, pursuant to the terms of this

Order.

Confidential Information may not be disclosed to the Commissioners or employees of the Port

Authority except upon prior written consent of the Ferry Company or further order of this Court.

5.    <u>Declarations of other persons bound</u>. Before any Confidential Information is disclosed to any person referred to in paragraph 4(b) above, that person must agree to be bound by the terms of this Order. Such person shall indicate his or her assent to the terms of this Order by signing a notarized declaration to that effect. It shall be the responsibility of the Counsel disclosing the Confidential Information to obtain such declaration and retain it in such Counsel's files.

6.    <u>Labeling of Confidential Information</u>. Before producing to Counsel any document or material that contains Confidential Information, the Ferry Company shall place a label or legend on each page of such document or material that states substantially as follows: "**CONFIDENTIAL-ATTORNEYS' EYES ONLY.**" In addition, the Ferry Company may place a label or legend on the first page of each such document which cites this Order.

7.    <u>Use of Confidential Information at depositions</u>. With regard to depositions, the following shall apply:

(a)    Any Confidential Information that is disclosed or discussed during deposition testimony shall be protected or continue to be protected under the terms of this Order.

(b)    If the Ferry Company in good faith deems that any information disclosed or discussed during deposition testimony constitutes Confidential Information, then it shall designate it as such either (i) prior to or contemporaneously with its disclosure, by an oral statement to that effect made on the record and to be included in the transcript of the deposition or (ii) by written notice to Counsel within 10 days following the Ferry Company's receipt of a transcript of the deposition. In such event, the portion of the transcript of the deposition containing such Confidential Information shall be protected under the terms of this Order

(c)    Whenever Confidential Information is disclosed, discussed or referred to during a deposition, the Ferry Company shall be entitled to ensure that only the persons identified in paragraph 4 above are present during that portion of the deposition.

8.    Filings with the Court.  If any party wishes to file or submit Confidential Information to the Court, it shall do so in accordance with this Court's Local Rule of Civil Procedure 5(d)2, which currently provides:

> Counsel filing documents which are, or may be claimed to be, subject to any protective order or impounding order previously entered shall file with the documents, and serve on all parties, a notice that the documents are, or are claimed to be, subject to such order or orders, identifying the particular order or orders by date, and shall submit such documents to the Clerk under seal.

The notice shall include a caption of this action including its title and number and a notation providing substantially as follows:

**CONFIDENTIAL -- SEALED PURSUANT TO A STIPULATION**

**AND ORDER OF CONFIDENTIALITY OF THIS COURT DATED**

**_____, 2004.**

9.    Use of Confidential Information at Trial.  The use of Confidential Information at trial shall be resolved, to the extent possible, between the parties prior to trial, with the assistance of the Court if necessary.  Notwithstanding the foregoing, during trial, or any hearing in this action, if any party intends to offer into evidence or otherwise use any document or information that contains Confidential Information or that is derived therefrom, counsel shall announce the intention to do so beforehand so that the Court and the parties may take such steps as are deemed reasonably necessary to preserve the confidentiality of such document or information.

10. <u>Destruction at conclusion of action</u>. Within ninety (90) days following the conclusion of this action, including any appeals, all materials containing or derived from Confidential Information, but excluding any notes or other attorney's work product that may have been placed thereon by counsel, shall be destroyed, and written notice shall be given to opposing counsel certifying that all such materials have been destroyed.

11. <u>Modifications of this Order</u>. Nothing in this Order shall preclude any party from seeking amendments hereto, either broadening or restricting access to or the use of Confidential Information, or from seeking other modifications, including but not limited to restriction of the documents and information which may be designated confidential, in each case pursuant to duly-noticed motion. Prior to making such a motion, counsel shall confer in good faith in an effort to resolve the issue without intervention by the Court.

12. <u>Non-waiver of objections to admissibility</u>. Nothing in this Order shall be construed as a waiver by any party of any objections to discovery, or of any objections as to the admissibility of any evidentiary material. Any party may object to the designation of "confidentiality" if it believes such is improper, and if such objection is made, the burden shifts to the party asserting the confidential status to show that the materials are confidential.

13. <u>Continuing obligations</u>. The obligations under this Order shall survive the termination of this action and continue to bind the parties and other persons subject to it.

Dated: July 29, 2004

*(Signatures appear on next page)*

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, GREG ROSE, and
FRANK C. ZAHRADKA
*Plaintiffs*

BRIDGEPORT PORT AUTHORITY,
*Defendant*


By: _____
Martin Domb, Federal Bar No. ct 09544
E-mail: mdomb@hillbetts.com
Eric M. Underriner, Federal Bar No. ct 26020
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel. (212) 839-7000
Fax (212) 466-0514

By: _____
Edward J. Sheppard, Federal Bar No. ct 24760
E-mail: esheppard@thompsoncoburn.com
THOMPSON COBURN
1909 K Street, NW, #600
Washington, D.C. 2006
Tel. (202) 585-6900
Fax (202) 585-6969

Steven Kellogg, Esq.
E-mail: skellogg@thompsoncoburn.com
THOMPSON COBURN
One US Bank Plaza
St. Louis, MO 63101
Tel. (314) 552-6405
Fax (314) 552-7405


SO ORDERED:


_____
UNITED STATES DISTRICT JUDGE

Dated:

**Exhibit B**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT and PORT JEFFERSON     :
STEAMBOAT COMPANY, et al.,        :
    Plaintiffs,               :
                              :
    v.                        :    Civil Action No.
                              :    3:03 CV 599 (CFD)
BRIDGEPORT PORT AUTHORITY,        :
    Defendant.                :

## ORDER

The parties' Stipulation and [Proposed] Order of Confidentiality [**Document # 85**] is

hereby **APPROVED**, subject to the modifications of this order.

Any papers, materials or information submitted to the court will be deemed public

documents, unless a party requests to have those documents filed under seal and such request is

approved upon a showing of good cause.  The request to seal shall be filed in accordance with

Rule 5(d) of the Local Rules of Civil Procedure for the District of Connecticut.  Any submissions

to the court accompanied by a request to seal will be treated as sealed until the court acts upon

the request.  The request to seal shall set forth each document subject to the request and the basis

for such request.

Hearings and testimony will also be open to the public unless a party makes a prior

request that they be closed to the public and such request is approved upon a showing of good

cause.

SO ORDERED this 5th day of August 2004, at Hartford, Connecticut.

    /s/ CFD

    **CHRISTOPHER F. DRONEY**
    **UNITED STATES DISTRICT JUDGE**

**Exhibit C**

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF CONNECTICUT

3    - - - - - - - - - - - x
     BRIDGEPORT PORT JEFFERSON    :   Docket Number
4    STEAMBOAT COMPANY, ET AL.,   :   3:03 CV 599 (CFD)
                Plaintiffs,       :
5                                 :
                                  :
6            vs.                  :
                                  :
7    BRIDGEPORT PORT AUTHORITY,   :   October 29, 2004
                Defendant.        :
     - - - - - - - - - - - x
8

9

10

11

12

13       DEPOSITION OF JOHN H. ARNOLD, JR.

14

15

16       Taken before Ellen Szamier, LSR #162,
     Court Reporter and Notary Public within
17   and for the State of Connecticut, pursuant
     to the Rules of Federal Procedure, at the
18   offices of Bridgeport Port Authority,
     330 Water Street, Bridgeport, Connecticut,
19   on Friday, October 29, 2004, commencing at
     9:29 a.m.

20

21

22              BEECHER & HORVATH
              REPORTING ASSOCIATES
23             73 Millbrook Road,
        North Haven, Connecticut   06473
24             (203) 230-0010
             Fax (203) 281-3429

1    Q    I'm sorry.  Let me take a look.  I may have

2    referred to the wrong number.  Let me rephrase that

3    question, please.  I withdraw that.  I misspoke about

4    the Item Number 8.  I had a prior list in front of me.

5    So looking at Exhibit 609 -- I was working off of a

6    prior draft.

7            Let me ask the next question.  Concerning

8    your education and training, from your CV, you have a

9    BS, a bachelor of science, in electrical engineering;

10   is that correct?

11   A    That's correct.

12   Q    And you also have a master's degree in civil

13   engineering?

14   A    That's correct.

15   Q    Your degrees, did they have any

16   specialization or --

17   A    Yes.

18   Q    What was your specialization?

19   A    The electrical engineer's was in operations

20   research.

21   Q    What is operations research, generally?

22   A    Study of physical systems and the

23   interactions between physical systems, a queue --

24   Q    A queue?

1    A    A line, the discipline of -- q-u-e-u-e.

2    When you go in a bank, whether a person waits in a

3    single line or whether you wait in one -- it's called

4    a queue.  So a lot of it is the theory of how to make

5    sequential processes work efficiently.

6    Q    What about your master's in civil

7    engineering, did that have a specialization also?

8    A    Yes.

9    Q    What was that?

10    A    The Center for Transportation Studies at MIT

11    was with the engineering department, so my

12    specialization was transportation.

13    Q    Do you have any degrees in accounting?

14    A    No.

15    Q    Do you have any formal training in

16    accounting?

17    A    No.

18    Q    Are you a certified public accountant?

19    A    That I am not.

20    Q    And you have never practiced as an

21    accountant or a CPA, correct?

22    A    I have not practiced as a CPA.  I have

23    worked as a financial analyst.

24    Q    What was the nature of your work as a

 1    financial analyst?

 2        A     Evaluating accounts, developing financial

 3    models for organizations, evaluating different

 4    proposals for financing capital investments.

 5        Q     Do you hold yourself as an expert in

 6    accounting or auditing?

 7        A     No.

 8        Q     Do you have any degrees in economics?

 9        A     Not directly.  It was transportation

10    economics, but it's not formally stated on the degree.

11        Q     Are you a member of any professional

12    association of accountants?

13        A     No.

14        Q     Of economists?

15        A     No.

16        Q     Do you hold any certifications in the field

17    of accounting or economics?

18        A     No.

19        Q     Have you reviewed the accounting books and

20    records of the Port Authority other than the audited

21    financial statements?

22        A     Only the audited financial statements.

23        Q     Have you reviewed the working papers of the

24    Port Authority's outside auditors who performed the

1    audits of the Port Authority's financial statements?

2        A    I haven't reviewed them all.  I looked at

3    some of them, yes.

4        Q    Let me refer to one of the papers in

5    exhibit -- off the record.

6                    (Discussion off the record.)

7    BY MR. DOMB:

8        Q    In Exhibit 608.  That's your compilation of

9    work papers.  I found there one sheet which appears to

10   me to come from the auditor's working papers.  It's

11   entitled, "Bridgeport Port Authority Grant income."  I

12   gather you reviewed that as part of your work?

13       A    Yes, that's correct.

14       Q    Do you recall any other audit working papers

15   that you reviewed in connection with your work in this

16   case?

17       A    Not specifically.  I met with the auditor

18   and we were discussing -- he brought along some

19   documents, and we were looking at them at the time.

20       Q    Who was the auditor that you met with?

21               MR. NOELKER:  Joe Verrilli.

22               THE WITNESS:  Yes, Joe Verrilli.  Thank

23           you.  I forgot his last name.

24

1       A     It was -- the one I recall had to do with

2    the restoration of the bulkhead out there, in that

3    direction.

4       Q     East?

5       A     Okay, east.  Just up from the ferry berth.

6       Q     Any other examples in that category?

7       A     Not that I remember right now.  There were

8    others, but I'm not recalling.

9       Q     I take it from your CV that you are not a

10   lawyer?

11      A     That is quite correct.

12      Q     You have no legal training or formal legal

13   training?

14      A     No, I'm not.

15      Q     You're not qualified to give legal opinions;

16   is that correct?

17      A     That's correct.

18      Q     Are you familiar with the Rivers and Harbors

19   Act of 1984 and amended and now codified in Title 33

20   of the code, Section 5?

21      A     No.

22      Q     Are you familiar with the commerce clause of

23   the U.S. Constitution and how that clause has been

24   interpreted by the courts?

```
1         A      No.

2         Q      Or the tonnage clause of the U.S.

3    Constitution?

4         A      The tonnage, I'm not.

5         Q      What about the right to travel as some

6    courts have found exists under the U.S. Constitution?

7         A      No.

8         Q      Are you familiar with the laws of

9    Connecticut concerning taxes or user fees?

10        A      In the Connecticut tax code?

11        Q      State of Connecticut, yes.  Laws in

12   Connecticut concerning --

13        A      Oh, the tax laws, no.

14        Q      You're not giving any opinions as to the

15   legality of the Port Authority's tariff under any of

16   those provisions that I just mentioned, are you?

17        A      No.

18        Q      In your opinion as a port expert -- let me

19   back up.  Do you consider yourself to be a port

20   expert?

21        A      That's correct.

22        Q      Is that the area of expertise that you are

23   being put forward in in this case?  How would you

24   describe the area of expertise that you are bringing
```

```
 1    to this case?
 2         A     Port expert.  It's a bit broad, but yes.  An
 3    expert in matters of port financing.
 4         Q     In your opinion as a port expert, if I use
 5    that phrase, does the Port Authority have the right to
 6    charge passengers a user's fee and spend a portion of
 7    that fee to finance activities unrelated to the
 8    services and facilities it provides to the person who
 9    pays the user fee?
10         A     Can you clarify what you mean by spending
11    the money received from the passengers on other
12    activities?
13         Q     Well, spending it on activities -- let's
14    take a fee that's imposed on ferry passengers as in
15    this case.  Does Port Authority have the right to take
16    the proceeds from that fee and spend it on activities
17    at the port that are not related to the ferry
18    operation, that are, for example, developing land for
19    industrial purposes at the port?
20         A     The issue with that question, and I think
21    the confusion, is the problem of functionability that
22    pertains to any commercial or even government activity
23    engaged in multiple endeavors.  There is no person
24    collecting a dollar from a passenger walking across
```

1    the street and giving it to someone to do something

2    else.  The revenues go into the base of the general

3    revenues out of which monies come, but there's no

4    one-for-one linkage by any means.

5         And I think in basically any corporation you

6    look at, if you look at the money earned from

7    something, there's no way to say where that went to.

8    What you do is you look historically, and you say,

9    have the revenues I've earned from that activity bear

10   a reasonable resemblance to the costs I have incurred

11   in providing the assets and services used by the

12   customer.

13        But if you can't do with a one-to-one time --

14   a person who walks off the ferry does not hand a

15   dollar to someone, and I don't mark it and say, it's

16   to use in the social security problem.

17   Q    We'll get back to that topic a little later

18   in context.  Turn to Paragraph 6, please, of your

19   report.  You talk about ferry services there or you

20   refer to them.

21   A    Yes.

22   Q    What's the source of your information in

23   that paragraph, factual information?  Is it your

24   general knowledge?