UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 FEB 23  P 12: 35

| | |
|---|---|
| BRIDGEPORT AND PORT JEFFERSON STEAMBOAT COMPANY, et al., | Case No. 03-CV-599 (CFD) |
| Plaintiffs, | |
| v. | |
| BRIDGEPORT PORT AUTHORITY, | February 22, 2005 |
| Defendant. | |

**BRIDGEPORT PORT AUTHORITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF LAW**

The case before this Court is Plaintiffs' multi-count challenge to a modest passenger wharfage charge imposed by the Bridgeport Port Authority ("Port Authority") on ferry passengers of the Bridgeport and Port Jefferson Steamboat Company ("Ferry Company"). The proceeds from the wharfage charge are used to defray the cost of providing facilities and services to users of the Bridgeport port. The legal and substantive issues raised by Plaintiffs' allegations have been addressed, most recently, in the parties' joint trial memorandum submitted to this Court on February 2, 2005. (Docket #116)

In response to the Port Authority's position as stated in the joint trial memorandum, Plaintiffs filed a motion to limine requesting this Court: (1) declare as irrelevant materials concerning the Ferry Company's finances and profitability that this Court previously ordered the Ferry Company to produce; (2) limit relevant and admissible portions of the testimony of the Port Authority's expert Mr. John Arnold; and (3) exclude entirely the testimony of the Port Authority's expert Professor Edward Deak, Ph.D.

3066047                                                                 ORAL ARGUMENT REQUESTED

The Port Authority respectfully requests this Court deny Plaintiffs' motion in limine in its entirety. As discussed more fully below, Plaintiffs' contentions are neither supported by the Federal Rules of Evidence nor relevant case law. In fact, this Court has specifically recognized the relevance of the Ferry Company's finances and profitability. Further, the testimony of the Port Authority's expert witnesses is both relevant to the issues that Plaintiffs have raised in this case and admissible under the Federal Rules of Evidence. Each claim is addressed in turn.

I. **The Ferry Company's Financial Materials That Demonstrate A Dramatic Increase In Its Revenue And Profitability Are Relevant To The Port Authority's Defenses**

In their motion in limine, Plaintiffs assert that the Ferry Company's audited financial statements and other documentation evidencing its substantial increase in revenue – that this Court expressly ordered it to produce – are now not relevant to whether the Ferry Company has been <u>financially</u> damaged. (Docket #81) Yet, the Ferry Company simultaneously contends that it has suffered measurable <u>financial</u> harm resulting from the imposition of the passenger wharfage charge. Plaintiff's logic is perplexing. Indeed, by claiming that it has been economically injured, the Ferry Company is placing its profitability (that is, its alleged failure to generate additional profit) directly at issue.

It is without question that the issue of whether the Ferry Company has sustained financial injury by the imposition of the passenger wharfage charge is before this Court. <u>See</u> Amend. Complaint, p. 22; Joint Trial Memorandum, p. 47. In this regard, the Ferry Company has specifically characterized its alleged damages as "lost profits." <u>See</u> motion in limine, ¶ 9.

To ascertain the validity of the Ferry Company's supposed damages, Rule 401 of the Federal Rules of Evidence authorizes the admission evidence that has:

> any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED.R.EVID. 401. The Ferry Company's financial statements and other financial records certainly have a "tendency" to make it more or less probable that it has not suffered economic damage as a result of the passenger wharfage charge. See PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 108-09 (2nd Cir. 1997) (financial records are relevant to plaintiff's claim of damages); American Cash Card Corp. v. AT&T Corp., 184 F.R.D. 521, 522 (S.D.N.Y. 1999) (financial records relating to profitability are relevant to issue of alleged damages). In other words, evidence of any financial harm (if it exists) should be evident from those materials that document the Ferry Company's finances.

Moreover, the Port Authority is entitled to defend its case by demonstrating that the Ferry Company has not suffered economic harm or decreased profitability during the time the passenger wharfage charge has been in effect. Indeed, this Court has recognized the import of the Ferry Company's profitability regarding the issue of constitutional standing, noting that the wharfage charge "increases the real cost of ferry transportation to its customers, thereby depressing demand for such transportation," thus resulting in the potential reduction in revenue. (Docket #81, p.12). By asserting that such financial material is now irrelevant, Plaintiffs are in effect claiming economic damage in the amount of profit they "would have earned" but for the wharfage charge, while suggesting that evidence demonstrating the fiscal impact of their alleged injury is of no concern. This Court should not be so persuaded, and accordingly not exclude relevant material concerning the finances and profitability of the Ferry Company as documented in its audited financial statements.[1]

---

[1] The Port Authority has no objection to any procedure this Court may implement to preserve the confidentiality of those materials relating to the Ferry Company's finances that are subject to the Confidentiality Order.

## II. This Court Should Not Preclude Relevant Testimony Of The Port Authority's Expert Witness, Mr. John Arnold, Concerning Port Economics And Finance

Plaintiffs also attack the admissibility of relevant portions of Mr. Arnold's testimony, suggesting that he be limited to opine on matters concerning "port finance." As previously indicated, Mr. Arnold will likely testify at trial as to the lack of damages incurred by the Ferry Company as a result of the imposition of the passenger wharfage charge. Apparently, Plaintiffs are alleging that Mr. Arnold is not qualified to testify as to the economics of port operations simply because he does not hold a formal degree in accounting or economics. See motion in limine, p. 6-7.

Yet, there is no requirement that Mr. Arnold have either an economics or accounting degree to proffer testimony relating to port economics or the Ferry Company's financial performance. See Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000) (expert qualified to testify as to damages calculation without a degree in economics or statistics). As one circuit has noted, "[a]nyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." Id.

Mr. Arnold is certainly highly qualified through his education and decades of experience to opine on matters relating to ferry operations and port economics. As Plaintiffs indeed recognize, Mr. Arnold has "considerable experience" in international port operations. See motion in limine, p. 6. In addition, he has worked in approximately "a dozen" domestic ports. See Arnold Depo., p. 18. According to his testimony, Mr. Arnold has been "practicing economics in the transport field" for the U.S. government, multilateral lending agencies, and foreign governments for the past three decades. Id. Specific to this case, Mr. Arnold has provided analysis as to the reasonableness of similar passenger charges in relation to the cost of

the facilities and services provided by various ports. Id. at pp. 21-25. Therefore, all matters on which Mr. Arnold has testified are well within the scope of his extensive expertise and professional competence, and thus should not be excluded or limited as Plaintiffs request.

In support of his testimony, Mr. Arnold relies, in part, on the Ferry Company's own accounting materials – its audited financial statements. The Federal Rules of Evidence expressly support this practice. In particular, Rule 703 provides that an expert may rely on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences to be admitted." Plaintiffs can hardly contend that Mr. Arnold cannot rely on the Ferry Company's own accounting information without putting into contention the veracity of those very records. In fact, Plaintiffs concede that Mr. Arnold should be allowed to testify as to matters concerning "port finance." See motion in limine, p. 7.

As the aforementioned demonstrates, this Court should not preclude Mr. John Arnold from testifying about port economics or the Ferry Company's finances in relation to port operations as these topics relate directly to the Port Authority's defenses.

It matters little that much of Mr. Arnold's experience has been with foreign, rather than U.S. ports, because the two are identical in matters relevant to this proceeding. In short, a ferry dock is a ferry dock, whether it is located in Bridgeport, Connecticut; Bayamon, Puerto Rico; or the Philippines.

### III. Professor Edward Deak's Testimony And Report Are Relevant To The Measure Of Damages Alleged By The Ferry Company

Lastly, Plaintiffs seek to exclude altogether the testimony of the Port Authority's expert, Professor Edward J. Deak, Ph.D., simply because Plaintiffs themselves did not designate Professor Shapiro as a testifying expert. This request makes little sense. Indeed, the relevancy

and admissibility of Professor Deak's testimony is neither dependent on nor limited by Shapiro's testimony.

As with Mr. Arnold, Professor Deak will also likely testify as to the lack of damages sustained by the Ferry Company as a result of the passenger wharfage charge imposed on users of the ferry service. Specifically, Professor Deak concluded that the Ferry Company "has failed to demonstrate that the imposition of the [passenger wharfage charge] on the users of the ferry service has resulted in economic harm" to the Ferry Company. Report of Deak, pp. 2-3. Plaintiffs now contend that Professor Deak's testimony is contingent upon the admission of Shapiro's findings.[2]

Contrary to this assertion, Professor Deak explicitly based his conclusions on "a review of the material listed in Exhibit B" to his report. Not surprisingly, Exhibit B – the information considered, cited, and consulted by Professor Deak – includes, among other materials, the reports of both Plaintiffs' designated experts, George M. Shawah and Alan A. Schachter, as well as ferry fares, vehicle data, and the usage and financial report tabulated by Mr. David Bell. See Exhibit B to Deak Report.

Furthermore, Professor Deak offers an independent analysis detailing that a review of actual customer usage data, Ferry Company revenues, and profit behavior over time is a more accurate and appropriate measure of the passenger wharfage charge's actual affect on Ferry Company revenues. See Deak Report, pp. 12-16. These conclusions are autonomous of Professor Shapiro's report. Therefore, this Court should not exclude the testimony of Professor

---

[2] Plaintiffs apparently base this claim on a footnote contained on page two of Professor Deak's report that provides, "This claim [that the Ferry Company has been economically injured as a result of the imposition of a tariff by the Bridgeport Port Authority upon the users of the Bridgeport Port Jefferson ferry service] is contained within a report prepared by the Steamboat Company's economic expert Dr. Steven J. Shapiro, June 20, 2003 and hereafter referred to as Shapiro report."

Edward Deak simply because Plaintiffs chose not to designate Professor Shapiro as an expert at trial.

## Conclusion

For all the foregoing reasons, Defendant Bridgeport Port Authority respectfully requests this Court deny Plaintiffs' motion in limine in its entirety, and grant any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

THOMPSON COBURN LLP

Edward J. Sheppard, #CT24760
1909 K Street, NW, #600
Washington, DC 20006
202-585-6900
Fax 202-585-6969
esheppard@thompsoncoburn.com

By *[signature]*
Timothy F. Noelker, #CT26291
Jason C. Rahoy, #CT26290
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
Fax 314-552-7000
tnoelker@thompsoncoburn.com

Attorneys for Defendant Bridgeport Port Authority

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via electronic mail and U.S. Mail, postage prepaid, on the following counsel of record, this 22nd day of February, 2005:

Jonathan Bowman (CT# 08526)
Stewart I. Edelstein (CT# 06021)
COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504

Martin Domb (CT# 09544)
Eric M. Underriner
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514

_____
[Signature]