UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIDGEPORT AND PORT JEFFERSON STEAMBOAT COMPANY, *et al.*, | ) ) | Case No. 03-CV-599 (CFD) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| BRIDGEPORT PORT AUTHORITY, | ) ) | March 7, 2005 |
| Defendant. | ) ) ) | |

**REPLY OF THE BRIDGEPORT PORT AUTHORITY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ALAN A. SCHACHTER**

The ultimate issue before this court is the validity *vel non* of a modest passenger wharfage charge imposed by the Port Authority on ferry passengers in order to defray the cost of providing facilities and services for the port of Bridgeport that are enjoyed by the ferry and its users. Plaintiffs allege that the passenger wharfage charge, a per-trip charge[1] between $0.60 and $2.75 per ferry ticket (depending on the nature of the ticket), is "excessive and therefore illegal." See Plaintiffs' Memo., p. 1.

In support of their contention, Plaintiffs offer Alan A. Schachter to opine on the amount by which the wharfage charge exceeds the cost of port operations. Schachter Report, p.1. In forming his conclusions, however, Mr. Schachter relied on both an incorrect assumption regarding how the Port Authority may spend the money collected from the wharfage charge, as well as insufficient data to support his damages models. Accordingly, Mr. Schachter's

---

[1] See Joint Trial Memorandum, Stipulations of Fact, ¶ 30.

3083491                                              **ORAL ARGUMENT REQUESTED**

conclusions are not admissible under the standards set forth in Rule 702 of the Federal Rules of

Evidence and <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).

### A.    Mr. Schachter's Conclusions Are Not Relevant And Do Not Pass Muster Under *Daubert*

#### 1.    Expert opinion based on a false assumption cannot assist the trier of fact

As a preliminary matter, Plaintiffs claim that because Mr. Schachter relied upon an

incorrect "<u>legal standard</u>, not a false set of facts or factual data," the Port Authority's position is

"fallacious." Plaintiffs' Memo., p.2.  This assertion makes little sense, and is an example of the

old legal phrase "distinction without a difference" because the fact that Mr. Schachter relied

upon a false legal standard – rather than an incorrect set of facts – does not render his opinions

relevant (or even admissible) under <u>Daubert</u>.

To point to a similar example, the assertion that the Commerce Clause requires an "exact

correlation" (rather than a "fair approximation") between the cost of using state facilities and

services for users' benefit is contrary to well-established law; neither party can dispute this.  <u>See</u>

<u>e.g.</u>, <u>United States v. Sperry Corp.</u>, 493 U.S. 52, 60 (1989) ("This Court has never held that the

amount of a user fee must be precisely calibrated to the use that a party makes of Government

services.").  As a result, a damages model based on this erroneous legal assumption is irrelevant

under the correct legal standard.  This same principle applies to Mr. Schachter's report.

Furthermore, Plaintiffs' allegation is contrary to well-established evidentiary principles:

expert testimony must be relevant; that is, "whether it ha[s] any tendency to make the existence

of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence."  <u>United States v. Cruz</u>, 363 F.3d 187, 192 (2nd

Cir. 2004).  "An opinion based on <u>false assumptions</u> is unhelpful in aiding the jury in its search

for the trust, and is likely to mislead and confuse." Wilkinson v. Rosenthal & Co., 712 F.Supp. 474, 479 (E.D. Penn. 1989) (emphasis added). To contend (as plaintiffs contend) that a false assumption is not disabling to the expert's testimony simply because it relates to a legal standard, rather than factual data, ignores the aim of Daubert and the Federal Rules of Evidence.

> **2.      Mr. Schachter's opinions assume the need for a precise correlation between Port Authority revenues and operating expenditures in connection with the ferry and its passengers**

Proceeds generated from the passenger wharfage charge need not match dollar-for-dollar the Port Authority's annual expenditures.[2] See Massachusetts v. United States, 435 U.S. 444, 470, n.25 (1978) ("a surplus of revenue over outlays in any one year can offset against actual deficits of past years and perhaps against projected deficits of future years."); see also Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, 405 U.S. 707, 719-20; Alamo Rent-A-Car, Inc., v. Sarasota-Manatee Airport Auth., 906 F.2d 516, 521-22 (11th Cir. 1990) (rejecting claim that "the Authority can only 'recoup' expenditures, thus implying that the Authority is restricted to seeking reimbursement for funds already expended…and that the Authority is forbidden from levying a fee to fund future development.").

Under Commerce Clause analysis,[3] the 11th Circuit found that a 10% user fee was not excessive in relation to the airport Authority's cost to provide the facility because:

> it was appropriate for the [airport] Authority to factor in future development plans when setting user fees. To ignore the future expense of developing and expanding

---

[2] It makes no difference whatsoever, contrary to the suggestion of Plaintiffs in footnote 6 of their memorandum in opposition, that the Port Authority's financial statements indicate that it has never operated at a deficit.

[3] Under the Commerce Clause, a user fee will pass constitutional muster if the fee: (1) "reflects a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed;" (2) "is neither discriminatory against interstate commerce;" and (3) not "excessive in comparison with the governmental benefit conferred…." Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707, 716-17 (1972).

the airport to meet increased demands, would increase rather than mitigate
burdens on interstate commerce.

906 F.2d at 522. Accordingly, it is incorrect to assume, as Mr. Schachter did, that the wharfage

charge proceeds must directly match an estimation of the Port Authority's annual operating

expenditures on behalf of the ferry and its passengers.

Moreover, the cases on which Plaintiffs rely do not demand an exact match between

revenues and direct annual operating expenditures. See e.g., Northwest Airlines, Inc. v. County

of Kent, Mich., 510 U.S. 355 (1994) (refusing to consider claim that airport's fee methodology

generates "huge surpluses" where statute requires the fee not "be excessive in relation to costs

incurred" under Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airline, Inc., 405 U.S. 707

(1972)); American Trucking Assoc. v. Scheiner, 483 U.S. 266, 289-90 (1987) (finding

Pennsylvania's flat taxes on interstate motor carriers invalid because they "discriminate against

out-of-state vehicles" and do not "approximate fairly" the value conferred); Commonwealth

Edison Co. v. Montana, 453 U.S. 609, 617-29 (1981) (upholding severance tax on four-part test

under Complete Auto Transit, 430 U.S. 274, 279 (1977)); Clark v. Paul Gray, 306 U.S. 583,

589-99 (1939) ("The state is not required to compute with mathematical precision the cost of its

services...If the fees charged do not appear to be manifestly disproportionate to services

rendered, we cannot say...they are excessive"); Ingels v. Morf, 300 U.S. 290, 296-97 (1937) (fee

intended to reimburse state treasury invalid as it was not related to the expense of implementing

regulation); New Orleans Steamship Assoc. v. Plaquemines Port, Harbor and Terminal Dist., 874

F.2d 1018, 1021-22 (5th Cir. 1989) (port authorized to impose harbor fees for emergency

response services provided to ships).

Finally, the Port Authority does not contend (or has it even proposed), as Plaintiffs

suggest, that it "could raise the [wharfage charge] to any amount, without any legal restraint."

Plaintiffs' Memo., p.5. Rather, it is because Mr. Schachter's opinions are based on a strict

comparison of proceeds generated from the wharfage charge to an estimate of the annual cost of

port expenditures on behalf of the ferry and ferry passengers, that his report does not assist the

trier of fact in this matter.

**B.    The Limited Information On Which Mr. Schachter Relied And The Assumptions Based On That Data Do Not Satisfy *Daubert's* Standards Of Reliability**

Plaintiffs repeatedly contend that Mr. Schachter's conclusions are "fully" supported by a

"wealth" of available material. See Plaintiffs' Memo., p. 10-16. As set forth in its motion in

limine, the Port Authority disagrees. Mr. Schacher based his conclusions to a large extent on

insufficient estimates of operating expenses, unavailable and incomplete data, and the uniform

reduction of port operating expense allocations. These practices do not satisfy Daubert.

**1.    Mr. Schachter's First Model is based on an insufficient estimate of the Port Authority's operating expenses**

Plaintiffs attempt to support Mr. Schachter's First Method of calculating the supposed

"overcharge" by relying on the Port Authority's allocation of designated "operating expenses."

Plaintiffs' Memo., p.11. In this manner, Mr. Schachter calculates the "overcharge" by reducing

the wharfage charge proceeds by these "operating expenses." See Schachter Report, p.4.

What Mr. Schachter failed to consider is that these "operating expenses" are not an

accurate reflection of the true expenditures relating to port operations; rather, this designation is

an arbitrary formula used by the Port Authority and City of Bridgeport to calculate a 15% fee

payable to the City. See Verrilli Depo. pp. 28-32. As Mr. Verrilli explained, these "operating

expenses" reflect an agreement by which:

> management and the board determine what is a reasonable allocation of what
> items to their understanding – and I'm speaking on their behalf – would be a fair

representation of the net operating results to be shared between the Bridgeport
Port Authority and the City of Bridgeport.

Verrilli Depo., p. 64.  Mr. Verrilli later emphasized that there is "no correlation" between the

allocation of a type of expense and the actual monies expended for those services.  Id. at 208.

Stated simply:

> The allocation had nothing to do with what was expended.  The allocation had to
> do with an arrangement as to the sharing of the net operating income of the Port
> Authority.

Id. at 208-09.  Therefore, Mr. Schachter's reliance on the Port Authority's allocation of a

percentage of "operating expenses" for any given expenditure (that do not reflect actual port

operating expense) as the sole basis for the First Model is necessarily inadequate and unreliable.

Accordingly, it should be excluded.

### 2.    The data extrapolated by Mr. Schachter to support his Second and Third Models is not sufficiently reliable

Plaintiffs contend that Mr. Schachter "extrapolated from the data available" to support his

damages calculations "where gaps existed."  Plaintiffs' Memo., p. 16.  In support of their

position, Plaintiffs rely on two cases for the proposition that "an accounting expert may properly

extrapolate to prior years based on his analysis of the available data."  Id.  These cases, however,

provide no support for Plaintiffs' contention.

The first case cited by Plaintiffs, EFCO Corp. v. Symons Corp., concerned allegations of

false advertising and misappropriation of trade secrets, among others, stemming from a

clandestine agreement between plaintiff's former employee and its competitor.  219 F.3d 734,

737 (8th Cir. 2000).  The subject of that litigation was a system of modular panels used to form

casts for concrete.  Id. at 738.  In calculating alleged damages, plaintiff's expert focused on both

parties' revenue data and other information to analyze leasing market shifts in the panel leasing

market (where the parties were their only major competitors). Id. at 739. Based on this analysis, not extrapolated data as in this case, plaintiff's expert calculated past and future damages. Id.

Plaintiffs' second case, Cooper v. Nelson, is even more distinguishable. 211 F.3d 1008 (7th Cir. 2000). In Cooper, plaintiff, who alleged injuries sustained in a fall, offered the testimony of a medical expert to establish causation and that plaintiff was suffering from chronic pain syndrome. Id. at 1019. Noting that experts extrapolate from existing data, the court found that plaintiff's expert "should not have been excluded under Daubert solely on the ground that his causation diagnosis was based on" plaintiff's self-reported medical history that was accompanied by an "acceptable diagnostic tool of examination." Id. at 1021.

In neither case did plaintiffs' experts extrapolate from existing data when information was not available, and then on that assumed data proffer an opinion. Rather, as EFCO Corp. v. Symons Corp. suggests, an expert may calculate damages based on an analysis of financial material. See 219 F.3d at 739.

In this case, "there is simply too great an analytical gap between the data and opinion proffered." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2nd Cir. 2002), citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (district court did not abuse its discretion by excluding opinion evidence based on individual or a combination of studies). Mr. Schachter's wholesale reductions are not supported by available data; they (inappropriately) assume no change in port operation costs or activities. The resulting conclusions are nothing more than speculation, and accordingly not admissible. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2nd Cir. 1996).

    **3.**    **Mr. Schachter assumed that the Port Authority provides no facilities or services to ferry operations other than at the Water Street Dock**

Plaintiffs also attack the Port Authority, claiming that it "disputes Mr. Schachter's assumption 'that the Port Authority provides facilities and services [to the ferry operation] only at the [Water Street] Dock." Plaintiffs' Memo., p.10. Plaintiffs' allegation is apparently based on nothing more than a statement taken directly from Mr. Schachter's own report. In his report, Mr. Schachter states, "I have been asked to assume that the Port Authority provides facilities and services to the ferry operation only at the Water Street Dock." Schachter Report, p.3. Accordingly, the fact remains, Mr. Schachter improperly assumed that the Port Authority does not provide facilities or services to ferry operations anywhere else than at the Water Street Dock in calculating his damages models. Id.

## Conclusion

This court should adopt the approach used by another court in rejecting Mr. Schachter's testimony, and exclude it on the basis of its incorrect assumptions. See e.g., Kammerman v. SBC Tech., Inc., No. X03CV000506464S, 2002 WL 31662367 (Conn. Super., Nov. 6, 2002).

For all the foregoing reasons, and those contained in its motion in limine, the Bridgeport Port Authority respectfully requests that this Court grant its motion in limine to exclude the testimony and report of Alan A. Schachter in their entirety, and for such other relief that this Court deems appropriate.

Respectfully submitted,

THOMPSON COBURN LLP

Edward J. Sheppard, #CT24760
1909 K Street, NW, #600
Washington, DC 20006
202-585-6900
Fax 202-585-6969
esheppard@thompsoncoburn.com

By_____
Timothy F. Noelker, #CT26291
Jason C. Rahoy, #CT26290
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
Fax 314-552-7000
tnoelker@thompsoncoburn.com

Attorneys for Defendant Bridgeport Port
Authority

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was

served, via electronic mail and U.S. Mail, postage prepaid, on the following counsel of record,

this 7th day of March, 2005:

Jonathan Bowman (CT# 08526)
Stewart I. Edelstein (CT# 06021)
COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504

Martin Domb (CT# 09544)
Eric M. Underriner
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281-1003
Tel. (212) 589-7577
Fax (212) 466-0514