UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIDGEPORT AND PORT JEFFERSON STEAMBOAT COMPANY, et al., | : : | |
| Plaintiffs, | : : | Civil Action No. 03-CV-599 (CFD) |
| v. | : : | |
| BRIDGEPORT PORT AUTHORITY, Defendant. | : : : | July 18, 2008 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF BRIDGEPORT PORT AUTHORITY'S MOTION TO STAY JUDGMENT PENDING APPEAL AND TO SEEK EMERGENCY RELIEF</u>**

Defendant Bridgeport Port Authority (the "Port Authority" or "BPA") seeks an Order from the Court to stay its Judgment entered on July 8, 2008, and the permanent injunction granted thereunder, pending appeal, which the Port Authority intends to file. The Port Authority respectfully requests the Court maintain the status quo until the Port Authority's issues can be fully addressed on appeal.

Absent a stay, the Port Authority will be irreparably harmed by being prevented from collecting a main source of its revenue, and from utilizing that revenue in the interests of the Port, during the pendency of the appeal. The Port Authority further contends that it has a strong likelihood of success on appeal. Of course, even if the Court believes otherwise, the likelihood of success of the appeal is not a crucial factor if a balance of the other factors weigh in favor of the Port Authority to support the stay, which they do.

The significant irreparable harm that would be imposed on the Port Authority if the stay is not granted is contrasted with the absolute lack of injury that Plaintiff Bridgeport & Port Jefferson Steamboat Company (the "Ferry Company") stands to suffer, regardless of the

outcome on appeal. As the Court found in its Memorandum of Decision, the Ferry Company failed to prove it suffered any damages as a result of the Port Authority's assessment of the passenger fee, which the Ferry Company has collected on behalf of the Port Authority for the last 15 years. Moreover, any injury suffered by individual passengers by continuing to be assessed the passenger fee is minimal compared to the loss of revenue for the Port Authority. Finally, the public in general would suffer because the Port Authority will be hampered in its efforts to support and maintain the Port of Bridgeport, which benefits the State of Connecticut and the community as a whole. These factors weigh heavily in favor of the Port Authority to warrant a stay of the Judgment pending its appeal.

## I.  Statement of Facts

Plaintiff brought this action challenging the legality of the passenger wharfage fee that the Port Authority has imposed on all ferry passengers since 1993. The matter was originally filed on April 2, 2003, and was tried before the Court in April, 2006. Since that time, the Port Authority has continued to assess, and the Ferry Company has continued to collect, the passenger fee at issue in this dispute. However, the Port Authority has modified, and will continue to modify, its use of the revenue from the passenger fees for activities that benefit ferry passengers but which were not undertaken at the time of trial. For instance, the Port Authority has increased its expenditures on security in the wake of concerns regarding the nation's ports post-9/11. The Port Authority has also spent a greater percentage of the revenue derived from the passenger fee to support the construction of the passenger parking facility, as well as on increased utility costs. Thus, the percentage of revenue the Port Authority earns from the passenger fee that benefits ferry passengers is no longer consistent with the percentage in place at the time this action was initiated or even at the time of trial.

On July 3, 2008, the Court filed its Memorandum of Decision finding that the Port Authority's assessment of a portion of the fee that was not related to the passenger's use of the Port or a fair approximation thereof violated the Commerce Clause and the Tonnage Clause of the U.S. Constitution. Decision at 44-45. At the same time, the Court upheld the Port Authority's right to collect at least a portion of the passenger fee, provided the fee relates to the ferry passenger's use of the Port. *Id*. The Court enjoined the Port Authority from use of the passenger fee revenues to fund activities that are unrelated to and do not benefit the ferry passengers or approximate their use of the Port. *Id*. It further enjoined the Port Authority from collecting a passenger fee in an amount that exceeds what is necessary for its expenses that benefit ferry passengers and fairly approximate their use of the Port. *Id*. While the Court did not calculate a specific amount that the Port Authority may properly charge the ferry passengers, the Court offered its findings of fact as guidance for the Port Authority's future calculations of an appropriate passenger fee. *Id*. at 44. The Court entered its Judgment on July 8, 2008, enjoining the Port Authority as described above.

On the same day as the Court's entry of Judgment, the Ferry Company sent a letter to the Port Authority demanding access to the Port Authority's financial records and taking it upon itself to calculate an "appropriate Passenger Fee that complies with the injunction."[1] *See* Letter dated July 8, 2008 from Martin Domb, counsel for the Ferry Company, to Timothy F. Noelker, counsel for the Port Authority. A copy of the letter is attached hereto as Exhibit A. The Ferry Company further directed that it would withhold from its monthly payment to the Port Authority the portion of the passenger fee that it deemed to be excessive, and place it in escrow. *Id*. The

---

[1] The Port Authority is in the process of providing this information without prejudice to its rights sought herein.

Ferry Company advised that it would determine an appropriate passenger fee that complies with the injunction, but set the amount that it would withhold from the Port Authority, on an alleged interim basis, at 57% of its passenger fee collections based on the percentage of the overcharge the Court found with respect to passenger plaintiff D&D for the years 2003 through the date of trial.

## II.  Argument

### A.    Standard for Court to Stay Judgment Pending Appeal.

A court may properly stay its own orders when it has ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained. Fed. R. Civ. P. 62(c) grants the Court discretion to "suspend, modify, restore, or grant an injunction during the pendency of the appeal." In ruling on a motion pursuant Fed. R. Civ. P. 62(c), the district court's objective is to preserve the status quo during the pendency of an appeal. *See Cooper v. United States Postal Service,* 246 FRD 415, 418 (D. Conn. 2007).

The Court is guided to evaluate four factors in deciding whether to stay its ruling pending appeal, namely:

> (1) whether a stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Id*. at 417 (citing *McCue v. City of New York*, 503 F.3d 167 (2d Cir. 2007)).  The degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other.  *Id*.  The necessary level or degree of possibility of success will

vary according to the court's assessment of the other stay factors. In applying this test, the Court may grant a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant.

### B. A Stay is Justified in this Case Pending Appeal to Preserve the Status Quo.

An evaluation of the four factors weighs heavily in favor of the Port Authority and warrants the Court's granting of the stay. Under this consideration, the Port Authority respectfully requests the Court to preserve the status quo pending appeal.

#### 1. The Port Authority has a strong likelihood of success on appeal.

The Port Authority respectfully contends that there is a strong likelihood that the Second Circuit will find that the revenue collected by the Port Authority from passenger fees may be used for activities that indirectly benefit passengers. Other courts have approved port authorities or other government entities' assessment of fees. *See, e.g., Auto. Club of New York v. Port Author. of New York and New Jersey*, 887 F.2d 417, 422-23 (2d Cir. 1989). Indeed, the Court recognized that "the great majority of the courts that have previously considered similar user fees have reached the opposite conclusion and given the government authorities wide discretion to spend user fees." Decision at 33. These conflicting opinions suggest that there is a strong likelihood the Port Authority will prevail on appeal in its argument that its assessment and use of the passenger fee is valid.

Even if the Court finds this factor does not weigh in favor of the Port Authority, the Court may still grant the stay to maintain the status quo pending appeal. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury a party will suffer absent the stay. *Cooper*, 246 F.R.D. at 418 (citing *Mohammed v. Reno*, 309 F.2d 95, 101 (2d Cir. 2002) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d

841, 843 (D.C. Cir. 1977)). This Court recently stayed an injunction pending appeal where it found the enjoined party would suffer irreparable injury under the injunction barring it from exercising its First Amendment rights, even though the Court noted there was not a strong likelihood of success. *Id*. Instead, the Court looked at the other factors and found the balance of hardships favored granting the stay. *Id*. Here, as noted below, the other factors strongly favor the Port Authority and support staying the Judgment.

### 2. The Port Authority will be irreparably harmed absent a stay.

It is unquestionable that the Port Authority will be irreparably injured absent a stay. The injunction prevents the Port Authority from collecting a significant percentage of its biggest revenue source. Decision at 7. Should the injunction be overturned on appeal, or should the percentage of the passenger fee deemed excessive be reduced, the Port Authority will have no recourse to collect the back-passenger fees that should have been paid. Moreover, even if a portion of the passenger fee is placed in escrow, as the Ferry Company has unilaterally directed that it would do, the Port Authority will be irreparably harmed because it will be denied access to revenue that it would otherwise use for the benefit of the Port. Indeed, there is no telling how long an appeal will take; five years have now passed since the Ferry Company filed its complaint.

### 3. The Ferry Company will suffer no damage if the Judgment is stayed and any amount of damage to the individual plaintiffs will be minimal.

In contrast to the irreparable harm imposed on the Port Authority, the Plaintiffs will not be substantially impacted if the Court grants the stay. Indeed, the Court found that the Ferry Company has suffered no damages as a result of the Port Authority's assessment of the passenger fee. Decision at 18-21. Thus, the Ferry Company does not stand to suffer any injury by the Court's entry of a stay. Moreover, the harm to the individual plaintiff passengers is minor

compared to the loss of revenue the Port Authority will suffer. As noted by the Court, the passenger fee makes up a relatively small portion of the total ferry ticket price to passengers. Decision at 6. Further, passengers have continuously been assessed the full passenger fee since it was first imposed in 1993. Thus, the Court's entry of a stay to preserve the status quo will not substantially damage, if at all, the other parties to this proceeding.

    4.  <u>The public interest favors staying the Judgment pending appeal.</u>

Any harm to individual members of the public is relatively small compared to the loss of revenue the Port Authority will suffer. As noted above, if a stay is granted, individual passengers would continue to be assessed the passenger fee. The Court found this fee makes up only a relatively small portion of the entire ferry ticket price. Decision at 6. Moreover, the passengers have paid a passenger fee for the last 15 years.

However, the public as a whole will be harmed if the stay is not granted because the Port Authority serves the public as a quasi-independent agency of the City of Bridgeport. The Court found that the Port Authority's mission is to promote port facilities and economic development of its waterfront areas. Decision at 3. According to the Bridgeport Municipal Code, Chapter 2.28.010, the Port Authority was created:

> to foster and stimulate the shipment of freight and commerce through the ports of Bridgeport, Connecticut; to develop and promote port facilities with the district in order to create jobs, increase the city's tax base and provide special revenues to the city; to work with the government of the city to maximize the usefulness of available public funding by consolidating and coordinating private efforts to assist the city's waterfront and industrial development program, to cooperate with the state and federal agencies in the maintenance, development, improvement and use of district harbors, waterways and industrially zoned properties.

A copy of this Code was provided to the Court as Plaintiffs' Exhibit 208. The revenue collected by the Port Authority is utilized for the betterment of the Bridgeport Port, and by extension, the State of Connecticut and surrounding community. By restricting the Port Authority's revenue,

the Judgment limits the Port Authority's ability to execute its public mission. Thus, the public interest as a whole favors staying the Judgment.

### III. Request for Emergency Relief

The Port Authority respectfully requests the Court to expedite consideration of its Motion to Stay Judgment Pending Appeal and to Seek Emergency Relief. Local Rule 7(a) allows the Court to expedite a decision for good cause shown. The Court's expedited consideration is necessary because the Judgment, and the permanent injunction granted thereunder, became effective immediately upon its entry. Thus, the Port Authority is currently unable to collect passenger fees or use the revenue derived therefrom in a manner that is not consistent with the Judgment. As noted above, the Port Authority will be irreparably harmed if the stay is not granted. Thus, the Port Authority respectfully requests the Court to expedite its consideration to minimize this harm.

### IV. Request for Oral Argument

Pursuant to Local Rule 7, the Port Authority respectfully requests that the Court schedule oral argument on its Motion to Stay Judgment Pending Appeal and to Seek Emergency Relief. The Port Authority believes that an oral argument in which the parties could explain their positions through a dialogue with the Court would assist the Court in resolving these issues.

### V. Conclusion

For the foregoing reasons, Defendant Bridgeport Port Authority respectfully requests the Court to stay enforcement of the Judgment, entered on July 8, 2008, and the permanent injunction granted therein, as further explained in the Court's Memorandum of Decision filed on July 3, 2008.

- 9 -

        Respectfully submitted,

        THOMPSON COBURN LLP

By  */s/ Tim Noelker*
        Timothy F. Noelker, #CT26291
        One US Bank Plaza
        St. Louis, Missouri 63101
        314-552-6091
        Fax 314-552-7091
        tnoelker@thompsoncoburn.com

        Richard L. Rose, #CT23291
        Murtha Cullina LLP
        177 Broad Street
        Stamford, CT  06901
        203-653-5400
        Fax 203-653-5444
        rrose@murthalaw.com

        Everett E. Newton, #CT02508
        Murtha Cullina LLP
        CityPlace I, 185 Asylum Street
        Hartford, Connecticut 06103-3469
        860-240-6000
        Fax 860-240-6150
        enewton@murthalaw.com

        Attorneys for Defendant Bridgeport Port Authority

Dated:  July 18, 2008

- 10 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via electronic mail and U.S. Mail, postage prepaid, on the following counsel of record, this 18th day of July, 2008:

Jonathan S. Bowman
Stewart I. Edelstein
Cohen and Wolf, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT  06601-1821
jbowman@cohenandwolf.com
sedelstein@cohenandwolf.com

Martin Domb
Akerman Senterfitt LLP
335 Madison Avenue, Suite 200
New York, New York 10017
Martin.domb@akerman.com

_/s/ Tim Moeller_____