UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON
STEAMBOAT COMPANY, ET AL.,

        Plaintiffs,

- against -

BRIDGEPORT PORT AUTHORITY,

        Defendant.
_____/

CASE NO. 3:03 CV 599 (CFD)

July 28, 2008

**PLAINTIFFS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE PORT AUTHORITY'S MOTIONS (1) TO STAY THE JUDGMENT PENDING APPEAL, OR (2) ALTERNATIVELY, TO CLARIFY AND AMEND THE JUDGMENT**

AKERMAN SENTERFITT LLP
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone: 212.880.3800
Facsimile: 212.880.8965

*and*

COHEN AND WOLF, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, Connecticut 06601-1821
Tel. (203) 368-0211
Fax (203) 576-8504
*Attorneys for Plaintiffs*

{NY035715;1}

**Table of Contents**

**Page**

Preliminary Statement ...........................................................................................................1

ARGUMENT

I.  THE COURT SHOULD NOT STAY
    THE JUDGMENT PENDING APPEAL ........................................................................3

    A.  Likelihood of Success on Appeal ..........................................................................4

    B.  The Port Authority Will Not Be Irreparably Harmed ............................................5

    C.  A Stay Would Harm Plaintiffs ...............................................................................6

    D.  The Public Interest Is Served By Denying the Stay ..............................................7

    E.  The Damages Awards Should Not Be Stayed .......................................................8

II. THE COURT SHOULD NOT CLARIFY OR
    OTHERWISE AMEND THE JUDGMENT ...................................................................9

III. PLAINTIFFS CONSENT TO THE
     APPOINTMENT OF A SPECIAL MASTER ..............................................................12

    •  Plaintiffs' Proposal Regarding Order Appointing Master ....................................14

Conclusion ............................................................................................................................17

Plaintiffs, Bridgeport and Port Jefferson Steamboat Company (the "Ferry Company"), D & D Wholesale Flowers ("D&D"), and Frank Zahradka, submit this memorandum of law in partial opposition to the two emergency motions filed on July 18, 2008, by defendant, Bridgeport Port Authority (the "Port Authority"). In its main motion, the Port Authority seeks an order staying the judgment pending the Port Authority's appeal therefrom. In its other motion, the Port Authority asks the Court, in the alternative, to clarify the judgment and to appoint a neutral person to resolve disputes between the parties.

For the reasons stated below, plaintiffs: (1) oppose the motion for a stay, (2) oppose the alternative motion to clarify or otherwise amend the judgment, and (3) consent to the appointment of a special master for the purposes and on the terms outlined below.

## **Preliminary Statement**[1]

Since 1993, the Port Authority has been collecting an excessive, and therefore unlawful, Passenger Fee. Throughout these past fifteen years, the Port Authority has maintained that it has the right to impose whatever charge it deems appropriate, unfettered by any law. The Ferry Company's repeated objections to the Port Authority concerning the excessive fee fell on deaf ears. Therefore, the Ferry Company, along with a few of its frequent passengers, challenged the Passenger Fee in court. They commenced this action more than five years ago, in April 2003.

Throughout this litigation, the Port Authority continued to exact its unlawful fee. In addition, during two extended periods while this litigation was pending, the Port Authority imposed surcharges to its already excessive fee, over plaintiffs' objections, for the stated purpose of paying its legal fees to defend this action. In 2004, the Court denied plaintiffs' motion to preliminarily enjoin a 50-cent per passenger surcharge, holding that plaintiffs did not show that

---

[1]    The Court is familiar with the facts of this case, having recently issued its Memorandum of Decision dated July 3, 2008 (the "Decision").

they would be irreparably harmed by it.  In 2006 -- before, during and for many months following the trial held in April of that year -- the Port Authority imposed a $1 surcharge.  The Ferry Company had no alternative but to collect these surcharges, along with the underlying fee, and pay them to the Port Authority, despite its strenuous objection to both, while it pursued its remedies in this Court.

The Court now has ruled that the Passenger Fee is excessive, and therefore violates the Commerce Clause and the Tonnage Clause of the Constitution.  The Court permanently enjoined the Port Authority from continuing to impose an unconstitutional fee and spelled out the types and examples of activities that the Port Authority may not legally fund from the Passenger Fee.  The Court also awarded the Ferry Company $1 in nominal damages and awarded D&D -- the only passenger plaintiff which submitted evidence of its losses -- compensatory damages of $494.63.  That award, if extrapolated to the many thousands of other passengers who have taken the ferry over the past fifteen years, and who were forced to pay an excessive and unlawful fee, would amount to millions of dollars.

In this context, it is inconceivable to plaintiffs that the Port Authority should seek the Court's imprimatur to continue collecting an unlawful fee pending its appeal from the Decision.  For fifteen years, including the more than five years that this action has been pending, the Port Authority has charged an unlawful fee.  The Court has decided that the fee is unlawful and has enjoined further collection or use of its excessive portion.  The Port Authority nevertheless wishes to continue collecting the unlawful fee portion for what could be many more months, while it pursues its appeal.  For evidentiary and practical reasons, the Port Authority may well escape having to disgorge its *past* illegal collections.  But there is no justification for allowing it

to continue gouging the ferry passengers -- or the Ferry Company -- one day longer than it has these past fifteen years.

Accordingly, the Court should deny the motion for a stay (Point I below). Nor is there any need for the Court to clarify or amend the Judgment (Point II below). Finally, because the Court's injunction must be converted from words into dollars -- a process that undoubtedly will require detailed accounting analysis and evidently will be contentious, and thus would unduly burden the Court -- plaintiffs agree with the Port Authority that the Court should appoint a special master, under Fed. R. Civ. P. 53, to address these issues (Point III below).

## ARGUMENT

I. **THE COURT SHOULD NOT STAY THE JUDGMENT PENDING APPEAL**

The Port Authority's motion to stay the Judgment should be denied because it has not met the requirements for the extraordinary relief sought. Fed. R. Civ. P. 62(c), which governs injunctions pending appeal, provides in relevant part:

> When an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

To be entitled to a stay, defendants against whom an injunction has been entered must satisfy the "heavy burden of showing that (1) there is a strong likelihood of success on the merits; (2) they will be irreparably harmed absent a stay; (3) a stay would not substantially injure the plaintiffs; and (4) the public interest favors a stay." Juan F. ex rel. Lynch v. Rowland, No. Civ. H-89-859, 2001 WL 263395 (D. Conn. Feb. 9, 2001). "The degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses

less of the other." In re World Trade Center Disaster Site Litigation, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation omitted).

The Judgment has two components: (1) monetary relief -- $1 to the Ferry Company and $494.63 to D&D, and (2) the injunction. In its motion papers, the Port Authority discusses the injunction but does not mention the monetary relief. The four factors lean strongly against a stay with respect to *both* aspects of the Judgment, as shown below.

### A. Likelihood of Success on Appeal

There is no significant likelihood, much less a "strong" likelihood, that the Port Authority will succeed on appeal. As other courts have noted, this factor places the court in the odd position of deciding the likelihood that its own recently issued decision will be overturned. *E.g.*, Cooper v. U.S. Postal Service, 246 F.R.D. 415, 418 (D. Conn. 2007). Therefore, the court may assess the necessary degree of likelihood of success based on the strength of other factors. *Id.*

Although the Port Authority is required to make a "strong showing" of success on appeal, *id.* at 418, it offers nothing to suggest that the Second Circuit will disagree with the Court's conclusions in this case. The Port Authority does not even suggest that the Court overlooked pertinent case law or made a procedural error. Indeed, the only case bearing on the substance of the underlying dispute that the Port Authority cites in its memorandum of law, Auto Club of New York v. Port Auth. of New York and New Jersey, 887 F.2d 417, 422-23 (2d Cir. 1989) (cited in Memorandum of Law in Support of Bridgeport Port Authority's Motion to Stay [hereinafter "Memo in Support of Stay"], at 6), was explicitly considered by the Court in its Decision (at p. 31). Therefore, the first factor weighs strongly against a stay.

### B. The Port Authority Will Not Be Irreparably Harmed

The Port Authority claims it is "unquestionable" that it will be harmed should the Court decline to stay the Judgment because "the injunction prevents the Port Authority from collecting a significant percentage of its biggest revenue source" (Memo in Support of Stay, at 6). It further argues that it will be irreparably harmed by being denied access to the estimated excessive portion of the Passenger Fee collections that the Ferry Company has escrowed pending a determination of the proper fee amount (*id.*). The Port Authority claims it would use the escrowed funds "for the benefit of the Port" (*id.*).

This bald assertion is entitled to minimal weight because nowhere in its papers does the Port Authority *specify* how it would be harmed. It does not state what activities it would have to curtail or abandon in order to operate within a constitutionally permissible level of Passenger Fee revenue. It simply maintains that it needs the full amount of the Passenger Fee -- the unlawful as well as the lawful portion -- in order to carry out its broad purposes, including those wholly unrelated to the ferry.

The Port Authority's position is also legally baseless because it completely ignores that the harm it alleges -- fiscal hardship -- cannot constitute irreparable harm. As a court in this district has held, requiring a public agency to spend $7 million in public funds to comply with a court order was "not sufficient irreparable harm to warrant a stay." Juan F. ex rel. Lynch, 2001 WL 263395, at *1 (*citing* Sweeney v. Bane, 996 F.2d 1384, 1387 (2d Cir. 1987)); *see also* American Family Prepaid Legal Corp. v. Columbus Bar Assoc., No. 05 Civ. 459, 2006 WL 1804548, at *6 (S.D. Ohio June 24, 2006) ("stays are rarely, if ever, appropriate when financial damage is the only potential injury"); Schmude v. Sheahan, No. 00 Civ. 4580, 2004 WL 1179418, at *4 (N.D. Ill. May 25, 2004) ("mere economic injury does not equate to irreparable

injury" in context of a Rule 62(c) motion). Indeed, by continuing to collect the full amount of the Passenger Fee and escrowing 57 percent of it, the Ferry Company has ensured that any portion of those funds to which the Port Authority might be entitled will be available.[2] Therefore, there is no danger that the Port Authority might fail to receive all it is legally due if it were to succeed in its appeal. These facts differ from those in cases involving forfeitures on real property, for example, in which courts have held that the potential irreparable harm justifies a stay. U.S. v. One Parcel of Property Located at 32 Medley Lane, Branford, Conn., 372 F. Supp. 2d 248, 272-73 (D. Conn. 2005).

Because the Port Authority cannot demonstrate that it might be irreparably injured, this factor also weighs heavily against a stay.

### C. A Stay Would Harm Plaintiffs

The Port Authority is wrong to claim that plaintiffs would not be harmed if the Court were to stay the Judgment. The Court has held that the Passenger Fee has been excessive for years; implicit in that finding is that the Port Authority has received an enormous, unlawful windfall at the expense of the ferry-riding public. Any financial harm that the Port Authority might suffer is more than offset by the unlawful and unjust revenues it received during the past fifteen years.

The Ferry Company maintains that it, too, has been and continues to be damaged by the excessive Passenger Fee. The Port Authority misstates the Court's findings in stating that "the Ferry Company has suffered no damages" (Memo in Support of Stay, at 6). In its Decision, the

---

[2] Since the Court issued its Decision on July 3, 2008, the Ferry Company has withheld and escrowed 57 percent of Passenger Fee collections because that was the extent of the overcharge that the Court found and applied for the year 2003 and thereafter through the trial in April 2006, for the purpose of determining D&D's damages (Decision at 23-24). This was the "Court's best estimate" of the overcharge based on the evidence presented at trial (id. at 42).

Court acknowledged that "it is possible that the Ferry Company sustained economic loss" (Decision at 18), although it held that the Ferry Company failed "to prove the fact of these damages by a preponderance of the evidence" (*id.* at 19). Of course, the passenger plaintiffs would suffer the same type of harm as the ferry-riding public in general (Point I.D below).

Because plaintiffs will be harmed by a stay, this factor also weighs against a stay.

### D. The Public Interest Is Served by Denying the Stay

The public interest strongly favors denying the Port Authority's motion to stay. A stay of the Judgment would allow the Port Authority to continue imposing and using an excessive Passenger Fee in violation of the constitutional rights, not only of plaintiffs, but of the ferry-riding public as a whole. This is not the type of "status quo" that courts are inclined to preserve pending appeal. On the contrary, courts have been loath to stay judgments where the stay would allow an unconstitutional practice to continue pending appeal. Doe v. Lee, No. 3:99 Civ. 314, 2001 WL 536730 at *1 (D. Conn. May 18, 2001) (refusing to stay injunction that barred state from making sex offender registry publicly available in violation of constitutional rights); Chandler v. Jones, 998 F. Supp. 1255, 1264-65 (M.D. Ala. 1997) (denying stay because it would allow school district to continue violating First Amendment rights of students); *cf.* Cooper, 246 F.R.D. at 418 (holding that the public interest lies in "preservation and implementation" of the public's First Amendment rights).

The courts' reluctance to stay injunctions that prevent unconstitutional conduct flows from the *presumption* that a violation of one's constitutional rights is an irreparable injury. Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996) (affirming district court's reliance on "the presumption of irreparable injury that flows from a violation of constitutional rights"). The passengers have been overcharged for fifteen years; there is no reason to allow this

unconstitutional practice to continue. Although it is yet unclear how the escrowed money will ultimately be distributed, putting those funds aside allows at least the possibility that some restitution will be made, either to particular passengers or to the ferry-riding public generally.

Amazingly, in light of the Decision, the Port Authority attempts to justify its request for a stay on the basis of its purported efforts for "the betterment of the Bridgeport Port, and by extension, the State of Connecticut and surrounding community" (Memo in Support of Stay, at 7). The Port Authority offers this argument despite the Court's holding that "ferry passengers should not be charged for use of the entire Port District" (Decision at 29), and that "user fees are sustainable in exchange for a benefit or service rendered <u>to the payers</u>" (Decision at 32, emphasis in original). Thus, the Port Authority's motion for a stay is nothing more than a request that the Court allow the continued unconstitutional overcharging of ferry passengers (*i.e.*, members of the public) based on a purported benefit to the entire region.

The Port Authority's broad mission "to promote port facilities and economic development of its waterfront areas" (Memo in Support of Stay, at 7) does not trump its responsibility under the United States Constitution to use the Passenger Fee to benefit the ferry passengers that pay the fee. Therefore, the public interest would be strongly served by keeping the injunction in place, and would be substantially harmed by staying it pending appeal.

E. **The Damages Awards Should Not Be Stayed**

The above discussion has focused mainly on rebutting the Port Authority's arguments that the *injunction* should be stayed pending appeal. As noted above, however, the Judgment also awards money damages: $1 to the Ferry Company and $494.63 to D&D. Even if the Court were disposed to stay the injunction -- and assuming that the Port Authority also seeks to stay execution of the monetary relief, although it does not address it in its motion -- there is no reason

to stay execution of the damages awards. The four factors discussed above weigh as heavily against a stay of the monetary awards as they do against the injunction. In addition, even if the Court gave any credence to the Port Authority's claim of fiscal harm, that claim is inapplicable to the damages awards given the small amounts involved. Requiring the Port Authority immediately to pay the $494.63 award to D&D, which incurred those losses between 2001 and 2006 and has waited patiently to recover those damages, obviously will have no impact on the Port Authority's functioning.

Accordingly, the Port Authority's motion to stay should be denied in all respects.

## II. THE COURT SHOULD NOT CLARIFY OR OTHERWISE AMEND THE JUDGMENT

The Port Authority's motion to amend or clarify the Judgment should be denied because it fails to satisfy the requisite grounds for a court to amend a judgment. The Port Authority correctly states that a district court may alter or amend a final judgment, under Fed. R. Civ. P. 59(e), "to correct a clear error of law or prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (cited in Memorandum of Law in Support of Bridgeport Port Authority's Motion to Clarify and Amend Judgment and To Seek Emergency Relief [hereinafter "Memo in Support, Motion to Amend"], at 4).[3]

---

[3] Munafo is the only case cited by the Port Authority concerning a motion to amend or alter (Memo in Support, Motion to Amend, at 4). In Munafo, the court found *neither* an error of law *nor* a manifest injustice that required prevention and, accordingly, denied the motion to amend. The only other case cited by the Port Authority to support its motion to amend is Kregos v. Latest Line, Inc., 951 F. Supp. 24 (D. Conn. 1996), which involved a motion for reconsideration, not to amend. A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). In its motion, the Port Authority has not alleged (because it cannot) that the Court overlooked either law or fact in coming to its decision.

Nonetheless, the Port Authority fails entirely to satisfy that standard. The motion to amend brings nothing new to the Court's attention -- it fails to cite a single error of law, introduces no new evidence or theories of law, sets forth no new arguments, and articulates no manifest injustice that must be prevented. It is nothing more than an attempt by the Port Authority to continue collecting an unlawful fee for as long as possible. *See* <u>Brookridge Funding Corp. v. Northwestern Human Services Inc.</u>, No. 3:99 Civ. 2399, 2008 WL 749856, at *1 (D. Conn. Mar. 19, 2008) (Droney, J.) (denying motion to amend where court found "no clear error of law or manifest injustice in its decision that requires correction"); <u>Caldrello v. Mercedes Benz of North America, Inc.</u>, 488 F. Supp. 2d 129 (D. Conn. 2007) (denying motion to amend).

Although the Port Authority has avoided its own obligation to comply with the injunction, by promptly reducing the Passenger Fee to a constitutionally permissible amount, it accuses the Ferry Company of "unilaterally assum[ing] power to enforce the Judgment and decide what types of activities the Port Authority may fund with revenue derived from the Passenger Fee" (Memo in Support, Motion to Amend, at 1). That accusation is groundless. The injunction became effective immediately upon entry of the Decision on July 3, 2008 (or, at latest, upon entry of the Judgment on July 8, 2008). Fed. R. Civ. P. 62(a)(1) (injunction is not automatically stayed for ten days, or any other period, following entry of judgment).

The injunction bars the Port Authority from either *collecting* or using the unconstitutionally excessive portion of the Passenger Fee (Decision at 44). The Ferry Company concluded -- properly, we submit -- that if it paid the Port Authority the full amount of the Passenger Fee it collect from passengers on behalf of the Port Authority, such payment would result in the Port Authority collecting an excessive portion of the Passenger Fee, in violation of the injunction. Therefore, beginning with the monthly payment due July 10, 2008 (with respect

to collections in June), the Ferry Company withheld, and escrowed, the portion of the Passenger Fee estimated to be excessive. It based the withheld amount (57 percent) on the Court's own "best estimate" of the overcharge as of 2003, which the Court also used (in the absence of any more current information) through the date of trial in April 2006 (Decision at 23-24).

As parties that prevailed in an action for an injunction, plaintiffs have a legitimate role in seeing to it that the Port Authority complies with the injunction. For example, plaintiffs have standing to bring a motion for contempt if they have a basis for alleging that the Port Authority has imposed a Passenger Fee at an unconstitutionally high rate. Commodity Futures Trading Comm. v. Equity Fin. Group, Lic., No. 04 Civ. 1512, 2005 WL 2205789, at *14 (D.N.J. Sept. 9, 2005) (any party may bring contempt motion to ensure compliance with court order); Independent Living Aids, Inc. v. Maxi-Aids, Inc., 208 F. Supp. 2d 387, 392 (E.D.N.Y. 2002) (court has jurisdiction to supervise an injunction through contempt proceedings). Even the prospective filing of a notice of appeal will not divest the Court of jurisdiction to ensure that its injunction is enforced. Independent Living Aids, Inc., 208 F. Supp. 2d at 392; A. Ides, The Authority of Federal District Court to Proceed After a Notice of Appeal Has Been Filed, 143 F.R.D. 307, 323-25 (1992).

Indeed, the Port Authority concedes that plaintiffs have such a role to play, by requesting that the Court appoint a neutral third party, such as a special master, "to supervise the enforcement of the Judgment and permanent injunction" (Memo in Support, Motion to Amend, at 7). Plaintiffs agree that the Court should appoint a special master (Point III below). Under the rule governing proceedings before a special master, Fed. R. Civ. P. 53, all parties are entitled to participate in such proceedings. The appointment of a special master for the purpose of ensuring compliance with the Judgment does not require that the Judgment be clarified or amended. The

Court need not determine whether any modification of the Judgment would be appropriate until after the master has issued his or her report (see Point III below).

In sum, as the Port Authority has not pointed to any error of law or manifest injustice that must be prevented, the Court should deny the motion to amend or clarify the Judgment.

### III. PLAINTIFFS CONSENT TO THE APPOINTMENT OF A SPECIAL MASTER

Plaintiffs agree with the Port Authority that the Court should appoint a special master to oversee the calculation of the Passenger Fee and ensure that it complies with the Judgment (Memo in Support, Motion to Amend, at 6).

In the more than two weeks since the Court issued its Decision on July 3rd, and since the Clerk entered the Judgment on July 8th, the Port Authority has given no indication that it intends to reduce the Passenger Fee so as to comply with the injunction. On the contrary, the Port Authority now claims -- without submitting an iota of evidence, documentary or by affidavit -- that it has altered its use of Passenger Fee revenue to devote a greater percentage to ferry-related activities (Memo in Support, Motion to Amend, at 2). In addition, the Port Authority continues to maintain that it may use the Passenger Fee to support its activities "for the betterment of the Bridgeport Port, and by extension, the State of Connecticut and surrounding community" (Memo in Support of Stay, at 7) -- a position that this Court has expressly rejected (*e.g.*, Decision at 31-32 [Commerce Clause], and 35 [Tonnage Clause]). It is evident to plaintiffs, therefore, as it is to the Port Authority, that it would be appropriate for the Court to appoint a neutral party to assist the Court in enforcing the Judgment.

Post-trial masters may be appointed either: (a) "to perform duties consented to by the parties," Rule 53 (a)(1)(A), or (b) without such consent, to address other matters "that cannot be

effectively and timely addressed by an available district judge or magistrate judge of the district," Rule 53(a)(1)(C).

As the Advisory Committee stated in its notes to the 2003 amendments to Rule 53, "[c]ourts have come to rely on masters to assist in framing and enforcing complex decrees." Advisory Committee Notes to Fed. R. Civ. P. 53, 2003 Amendments (hereinafter "Advisory Committee Notes"), Subdivision (a)(1), "Post-Trial Masters." *See* Cronin v. Browner, 90 F. Supp. 2d 364, 377 (S.D.N.Y. 2000) ("there is considerable room for appointing special masters when the purpose of the master is to enforce a judicial decree"). As the court in Cronin stated, "the special master would be better positioned than [the] Court to perform the monitoring necessary to ensure compliance, given his time availability and expertise." *Id*. at 377-78. Appointment of a master to assist in enforcing a decree is especially appropriate "when a party has proved resistant or intransigent." Advisory Committee Notes, Subdivision (a)(1), "Post-Trial Masters."

In this case, the parties have consented *generally* to the appointment of a special master. Rule 53(b)(2) prescribes certain minimum contents that an order appointing a master must include. The Port Authority's request that the Court appoint a master is extremely vague; in its motion, the Port Authority does not discuss or suggest any terms of such an order. Plaintiffs summarize below the terms that they believe the appointment order should contain, as well as the qualifications that the master to be appointed ideally should possess. Should the parties disagree as to one or more elements of the proposed order, the Court has ample discretion to issue an appropriate order containing such terms as the Court deems proper, under Rule 53(a)(1)(C).

**Plaintiffs' Proposal Regarding Order Appointing Master**

Plaintiffs respectfully submit the following proposals regarding their request that the Court appoint a master under Rule 53.

1. **Qualifications**. (a) <u>Independence</u>. Above all, the master to be appointed must be free of any bias or any actual or apparent conflict of interest. *See* Rule 53(a)(2) and (b)(3). In this case, it is especially important that the master not have any political involvement in or connection to government or politics in the City of Bridgeport. (b) <u>Expertise</u>. It is also essential that the master have substantial experience in financial and accounting matters, given that enforcement of the Judgment will require close analysis of the Port Authority's financial records.

2. **Master's duties** (Rule 53(b)(2)(A)). The order appointing a master should state that the master's duties are to: (a) gather and analyze all financial and other records of the Port Authority that are relevant to establish the amount of a Passenger Fee that complies with the Judgment for the period July 3, 2008, through December 31, 2008, expressed in dollars and/or as a percentage of the Port Authority's overall annual expenses; (b) recommend to the Court the amount of such a lawful Passenger Fee for such period of 2008; (c) recommend to the Court a method by which the amount of such lawful Passenger Fees may be established, modified and/or reviewed with respect to 2009 and future years; (d) if all parties consent thereto, explore the possible settlement of all or some of the above issues; and (e) file with the Court a report setting forth the master's findings, the evidence on which it is based, and his or her recommendations (the "Final Report"), promptly following the completion of such duties (and within the time limit set forth in paragraph 6 below).

3. **Proceedings before master** (Rule 53(c)). The order should provide that, in addition to such authority as is provided by Rule 53(c), the master shall have the authority to: (a)

require parties to produce relevant records; (b) conduct evidentiary hearings, in which parties shall have the right to examine or cross-examine witnesses, and submit testimony and reports of expert witnesses; (c) record proceedings stenographically; (d) hold proceedings in places other than the courthouse, or by video conference or teleconference, in order to minimize expense or for the mutual convenience of the master and the parties; (e) allow parties to issue subpoenas requiring non-party witnesses to appear in proceedings before the master; and (f) impose or recommend sanctions pursuant to Rule 53(c)(2).

    4.    **Whether *ex parte* communications allowed** (Rule 53(b)(2)(B)).  The order should provide that the master shall not communicate *ex parte* with any party or its counsel, except if and when the master, with the consent of all parties, is performing settlement duties under paragraph 2(d) above.  The order also should provide that the master shall not communicate *ex parte* with the Court after the Court has issued the appointment order.

    5.    **Record of master's activities** (Rule 53(b)(2)(C)).  The order should provide that the master shall file with the Court (a) the Final Report, (b) a complete record of the evidence considered in preparing the Final Report, and (c) any other reports, orders, or rulings that the master shall make.

    6.    **Time limits** (Rule 53(b)(2)(D)).  The order should provide that the master shall complete his or her duties, including the filing of the Final Report, no later than December 15, 2008.

    7.    **Standards and timing of review** (Rules 53(b)(2)(D) and 53(f)(3) and (4)).  The order should provide that the Court shall (a) review the master's findings of fact for clear error; (b) review the master's rulings on procedural matters only for abuse of discretion; and (c) review *de novo* any conclusions of law in the Final Report.  The parties shall file any objections to the

Final Report, or to any other order, report or ruling issued by the master, within 20 days following their receipt thereof.

      **8.** **Master's compensation** (Rules 53(b)(2)(E) and 53(g)).  The order should state the hourly rate at which the master shall be compensated, and the disbursements for which he or she may be reimbursed.  The order should further provide that:  (a) the master shall keep reasonably detailed hourly time records, as well as records of any reimbursable disbursements, and from time to time (approximately monthly) shall issue bills to the parties reflecting such time charges and disbursements; (b) the master's compensation shall be paid on an interim basis 50 percent each by the Port Authority and the Ferry Company, without prejudice to any party's right to ask the Court to amend such allocation, after the master has filed the Final Report, pursuant to Rule 53(g)(3); and (c) the Port Authority and the Ferry Company shall pay their respective shares of each invoice duly issued by the master within 30 days of its issuance.

* * *

      Accordingly, the Court should appoint a special master for the purposes and on the terms outlined above.

      (*Conclusion and signature appear on next page.*)

**Conclusion**

For the foregoing reasons, the Court should (1) deny the Port Authority's motion to stay the Judgment pending appeal, (2) deny the Port Authority's motion to clarify or otherwise amend the Judgment, and (3) appoint a special master for the purposes and on the terms stated above.

Dated:  July 28, 2008

>BRIDGEPORT AND PORT JEFFERSON STEAMBOAT COMPANY, D & D Wholesale Flowers Inc., and FRANK C. ZAHRADKA
>*Plaintiffs*
>By:
>
>s/ *Martin Domb*
>_____
>Martin Domb (ct 09544)
>Jeremy Shure (phv 0938)
>AKERMAN SENTERFITT LLP
>335 Madison Avenue, 26th Floor
>New York, New York 10017
>Tel. (212) 880-3800
>Fax (212) 880-8965
>
>*and*
>
>Jonathan Bowman (ct 08526)
>Stewart I. Edelstein (ct 06021)
>COHEN AND WOLF, P.C.
>1115 Broad Street
>P.O. Box 1821
>Bridgeport, Connecticut 06601-1821
>Tel. (203) 368-0211
>Fax (203) 576-8504

## CERTIFICATE OF E-SERVICE

      I hereby certify that on **July 28, 2008**, a copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE PORT AUTHORITY'S MOTIONS (1) TO STAY THE JUDGMENT PENDING APPEAL, OR (2) ALTERNATIVELY, TO CLARIFY AND AMEND THE JUDGMENT** was filed electronically and served by mail on anyone unable to accept electronic filing (all counsel were served electronically). Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            s/ Martin Domb (ct 09544)
                                            AKERMAN SENTERFITT LLP
                                            335 Madison Avenue, 26th Floor
                                            New York, New York 10017
                                            Tel. (212) 880-3800
                                            Fax (212) 880-8965
                                            E-mail: martin.domb@akerman.com