UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


BRIDGEPORT and PORT JEFFERSON      :
STEAMBOAT COMPANY, et al.,         :
    Plaintiffs,                    :
                                   :
    v.                             :        Civil Action No.
                                   :        3:03 CV 599 (CFD)
BRIDGEPORT PORT AUTHORITY,         :
    Defendant.                     :


## RULING

This action was brought by the Bridgeport and Port Jefferson Steamboat Company (the

"Ferry Company"), a corporation that provides a public ferry service for passengers and vehicles

between Bridgeport, Connecticut and Port Jefferson, New York, and by two of its frequent

passengers (collectively the "plaintiffs"),[1] against the Bridgeport Port Authority (the "Port

Authority"). The Ferry Company leases dock facilities for its ferry boat operation from the Port

Authority. The subject of this action is the validity of a passenger wharfage fee ("Passenger

Fee") that the Port Authority imposes on all ferry passengers. This Passenger Fee –which has

been in effect since 1993– is collected by the Ferry Company and then turned over to the Port

Authority.[2]

The plaintiffs' amended complaint challenges the legality of the Passenger Fee, claiming

that it violates the Rivers and Harbors Appropriation Act of 1884, the Commerce Clause of the

---

[1]There two individual plaintiffs are Greg Rose and Frank Zahradka. A third passenger-plaintiff, Robert Heller, was voluntarily dismissed from this action.

[2]The Ferry Company also collects ticket charges from its passengers, but keeps those funds.

U.S. Constitution, the right to travel under the U.S. Constitution, the Tonnage Clause of the U.S.

Constitution, and several Connecticut Statutes.  The basis for those claims by the Ferry Company

is its contention that the Port Authority uses only a portion of the Passenger Fee proceeds to

support activities related to ferry operations, and "spends the great bulk of such proceeds mostly

for its own purposes, unrelated to the ferry."  The Amended Complaint also asserts a claim for

unjust enrichment.

Pending are the defendant's Renewed Motion to Dismiss or Stay [Doc. # 23] and Motion

for Partial Summary Judgment [Doc. # 28].  For the following reasons, the motions are DENIED.

## I.  Background[3]

The Port Authority is a quasi-public entity created pursuant to Connecticut General

Statutes §§ 7-329a to 7-329u.  These enabling statutes give the Port Authority jurisdiction over

the entire Port of Bridgeport Harbor.  The Port Authority owns and operates the Water Street

Dock in the harbor.  The Ferry Company ferries are berthed at the Water Street Dock.  Bridgeport

Harbor also has several marine cargo terminals, which receive international shipments of

consumer goods, that are under the regulatory jurisdiction of the Port Authority.  However, the

only terminal facility that is owned and operated by the Port Authority is at the Water Street

Dock, which is used exclusively by the Ferry Company.  The other terminal facilities are owned

and operated by private entities.

The Ferry Company, which dates back to 1883, provides year-round public ferry

transportation between Bridgeport, Connecticut and Port Jefferson, New York.  Beginning in the

---

[3]The following facts are taken from the allegations of the Amended Complaint as well as
the undisputed materials which supplemented the motion and its opposition.

1960s, the Ferry Company began leasing its docking facilities in Bridgeport Harbor from the City

of Bridgeport and later from the Port Authority.  Currently, the Ferry Company leases the Water

Street Dock facilities under a lease agreement with the Port Authority dated December 1, 1998

and supplemented by an amendment dated July 29, 2002 (collectively, the "Lease").  In addition

to the docking facilities, the Lease also provides that the Ferry Company is permitted to use part

of a two-story terminal building built in 1995 by the Port Authority ("Terminal").  The Lease

entitles the Ferry Company to operate a food concession in the Terminal, (the concession is the

subject of a separate lease), occupy office and waiting room space "as the Port Authority may

from time to time provide," and make use of four parking spaces for Ferry Company employees.

Under the terms of the Lease, the Ferry Company pays annual rent of $100,000 for the first year,

increasing to $158,956 through the final year, 2011.

A.  The Passenger Fee

        In 1993, the Port Authority instituted the Passenger Fee.[4]  As of March 1, 2003, it ranged

from sixty cents (for senior citizens and children) to $2.75 (for cars with unlimited passengers).

The Amended Complaint alleges that income from the Passenger Fee and rent paid by the Ferry

Company comprised over ninety percent of the Port Authority's total operating revenues for

fiscal years 1997 through 1999 and that "significant portions" of the Passenger Fee are

---

        [4]The validity of the Passenger Fee was the subject of a prior lawsuit between the Ferry
Company and the Port Authority in this Court.  See Bridgeport & Port Jefferson Steamboat
Company v. Bridgeport Port Authority, No. 3:93cv745.  That action was terminated pursuant to a
settlement agreement dated April 8, 1993.

allocated to activities that are not related to, and do not provide any benefit to, the Ferry

Company or the passengers who pay it.[5]

## B. Claims

Count one of the Amended Complaint alleges that the Passenger Fee violates the Rivers

and Harbors Appropriation Act of 1884, as Amended, 33 U.S.C. § 5(b), which provides, in

relevant part, that:

> [n]o taxes, tolls, operating charges, fees or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters, subject to the authority of the United States, or under the right to freedom of navigation on those waters, except for–
>
> . . .
>
> (2) reasonable fees charged on a fair and equitable basis that–
>
>> (A) are used solely to pay the cost of a service to the vessel or water craft;
>>
>> (B) enhance the safety and efficiency of interstate and foreign commerce; and
>>
>> (C) do not impose more than a small burden on interstate or foreign commerce.

The Ferry Company claims that its ferries operate on navigable waters and that none of the

exceptions in the act would permit the Passenger Fee. Count two alleges that the Passenger Fee

violates the Commerce Clause of the United States Constitution because it discriminates against

interstate commerce. Count three asserts that the Passenger Fee violates the right to travel as

guaranteed by the United States Constitution.[6] Count four alleges that the Passenger Fee violates

---

[5]The Passenger Fee was increased effective March 1, 2004. That increase was the subject of an injunction motion by the plaintiffs. The Court denied the request for injunctive relief on April 15, 2004.

[6]Article 1, § 8 and Amendment XIV, § 1.

the Tonnage Clause of the United States Constitution.[7]  Count five claims that the Port Authority

has been unjustly enriched by the Passenger Fee.  Count six alleges that the Port Authority has

exceeded the authority granted to it by Conn. Gen. Stat. §§ 7-329a through 7-329u (the Port

Authority enabling statutes), and count seven claims that the Passenger Fee constitutes an unfair

tax or user fee under Connecticut law.  Finally, count eight alleges violations of the Connecticut

Unfair Trade Practices Act ("CUTPA").

## II.  Discussion

### A.  Motion to Dismiss or Stay

#### 1.  Standard

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual

allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

grounds, Davis v. Scherer, 468 U.S. 183 (1984); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d

Cir.1991), cert. denied, 504 U.S. 911 (1992).  Dismissal is warranted only if, under any set of

facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be

granted.  See Hishon v. King & Spalding, 467 U.S. 69 (1984); Frasier v. General Elec., Co., 930

F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will

prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United

States v. Yale-New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn.1990) (citing Scheuer, 416

U.S. at 232).  Thus, a motion to dismiss under 12(b)(6) should not be granted "unless it appears

---

[7]"No state shall, without the consent of Congress, lay any Duty of Tonnage, . . . ".
Article I,  § 10.

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994) (citations and

internal quotations omitted), cert. denied, 513 U.S. 816 (1994).  In its review of a 12(b)(6)

motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents

attached as exhibits or incorporated by reference in the pleadings and matters of which judicial

notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir.1993).[8]

        2.  Primary Jurisdiction

        In its motion to dismiss, the Port Authority argues that this Court should invoke the

doctrine of "primary jurisdiction" to dismiss the case, and allow this dispute to be resolved by the

Federal Maritime Commission ("FMC").[9]

        The Court has subject matter jurisdiction over the plaintiffs' claims, as the case arises

under the United States Constitution and the laws of the United States within the meaning of 28

U.S.C. § 1331.  However, "[p]rimary jurisdiction is not a doctrine that implicates the subject

matter of the federal courts.  Rather, it is a prudential doctrine under which court may, under

appropriate circumstances, determine that the initial decision-making responsibility should be

performed by the relevant agency rather than the courts."  Syntek Semiconductor Co. v.

Microchip Technology, Inc., 307 F.3d 775, 780 (9th Cir. 2002).

> An examination of the cases illustrates the relatively narrow scope of the doctrine of
> primary jurisdiction. The doctrine has been applied only when a lawsuit raises an issue,
> frequently the validity of a commercial rate or practice, committed by Congress in the

---

[8]The standard is different for resolving the Motion for Partial Summary Judgment.
However, because of the resolution of that motion infra, it is of no significance.

[9]In the alternative, the Port Authority asks this Court to stay this action pending the
FMC's conclusion as to whether or not it has jurisdiction over the plaintiffs' claims.

first instance to an agency's determination, particularly when the issue involves technical
questions of fact uniquely within the expertise and experience of an agency.

Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 851 (2d Cir. 1988).

Primary jurisdiction is a discretionary doctrine[10] under which courts defer to agencies in

matters over which they share concurrent jurisdiction in the interest of promoting "[u]niformity

and consistency in the regulation of business entrusted to particular agency . . ." United States v.

Western Pac. RR. Co., 352 U.S. 59, 65 (1956). "[C]ourts have resisted creating any fixed rules

or formulas for its [the doctrine's] application. . . .  Rather, '[i]n every case the question is

whether the reasons for the existence of the doctrine are present and whether the purposes it

serves will be aided by its application in the particular litigation.'" Tassy v. Brunswick Hosp.

Center, Inc., 296 F.3d 65, 68 (2d Cir. 2002).  The Second Circuit has held that, for the

application of the doctrine to be warranted, the Court must be satisfied that 1) the agency at issue

has jurisdiction over the issue presented and 2) the purposes of the doctrine would be advanced

by deferring to the agency:

> The primary jurisdiction doctrine applies "whenever enforcement of the claim requires
> the resolution of issues which, under a regulatory scheme, have been placed within the
> special competence of an administrative body." United States v. Western Pac. R.R. Co.,
> 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L. Ed.2d 126 (1956); see also Johnson v. Nyack
> Hosp., 964 F.2d 116, 122-23 (2d Cir.1992) (finding the doctrine applicable to cases
> involving state agencies). The aim of the doctrine, then, is to ensure that courts and
> agencies with concurrent jurisdiction over a matter do not work at cross-purposes. See
> General Elec. Co. v. M.V. Nedlloyd, 817 F.2d 1022, 1026 (2d Cir.1987) (citing 3 K.
> Davis, Administrative Law, § 19.01 at 5 (1958)), cert. denied, 484 U.S. 1011, 108 S. Ct.
> 710, 98 L. Ed.2d 661 (1988). In deciding whether to apply the primary jurisdiction
> doctrine to a given case, a court must take into account the need for uniform decisions
> and the specialized knowledge of the agency involved. Western Pac. R.R., 352 U.S. at 64,
> 77 S. Ct. at 165; see also Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 851

---

[10]Tassy v. Brunswick Hosp. Center, Inc., 296 F.3d 65, 72 (2d Cir. 2002) ("We emphasize
that primary jurisdiction is a discretionary doctrine . . .").

(2d Cir.1988). As a threshold matter, of course, a court must find that the agency has jurisdiction over the issue presented. Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 59 (2d Cir.1994).

Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d Cir. 1996).

The plaintiffs contend that, as to the threshold issue of agency jurisdiction, the FMC does not have jurisdiction over their claims because the Port Authority is not a "Marine Terminal Operator" within the meaning of the Shipping Act, 46 U.S.C. App. § 1709(d), which is a statutory requirement for FMC jurisdiction in a case such as this. The Port Authority claims that it is, and that the propriety of the Passenger Fee therefore falls within the jurisdiction of the FMC. The parties agree that, pursuant to the Shipping Act, only entities that serve "common carriers"[11] are Marine Terminal Operators and they agree that the Ferry Company –the only entity that uses the Water Street facility– is not a common carrier. The parties also agree that common carriers do dock at other facilities at Bridgeport Harbor. However, the plaintiffs claim that because the only dock in the harbor owned by the Port Authority does not serve common carriers (as noted above, the other terminal facilities are owned by private entities), the Port Authority is not a terminal operator within the meaning of the Shipping Act–at least with regard to the Water Street facilities. The plaintiffs also note that the Port Authority does not charge a fee to, nor restrict access to, any common carriers at the other facilities. The Port Authority argues that because it has regulatory jurisdiction over other facilities in Bridgeport Harbor that do serve common carriers, it is a terminal operator within the meaning of the Act, even as to its dispute with the Ferry Company.

---

[11]A "common carrier" provides international water transportation of passengers or cargo. 46 U.S.C. App. 1702(b).

Thus, the question for the Court is whether the FMC has jurisdiction over disputes that arise at terminals that do not serve common carriers where the entity that operates the terminal has regulatory authority over private facilities–in the same harbor–that do serve common carriers. The Second Circuit has not addressed this issue and the parties have cited opinions from different jurisdictions that are difficult to completely reconcile. The Port Authority relies primarily on Plaquemines Port, Harbor and Terminal Dist. v. Federal Maritime Comm'n., 838 F.2d 536 (D.C. Cir. 1988) in which the U. S. Court of Appeals for the District of Columbia reviewed an FMC decision regarding the Louisiana Port Authority, situated on the mouth of the Mississippi River. That port served thousands of common carriers and the Louisiana Port Authority imposed a tariff on those carriers to pay for the costs of the fire and emergency services it provided. Those services involved operating two "patrol/rescue/fire" vessels, a helicopter, a sea plane and a marine communications system. Failure to pay the tariff resulted in a denial of access to the private terminal facilities. The Court upheld the FMC's finding that the Louisiana Port Authority was a "Terminal Operator" within the meaning of the Shipping Act because, although it did not own or operate any of the terminal facilities, "the Port's combination of offering essential services and controlling access to the private facilities *amounts* to the furnishing of terminal facilities." Id. at 543 (emphasis added). The Court reasoned that

> we read the purpose of the relevant portions of the 1916 [Shipping] Act, and its successor, the 1984 Act, to be the prevention of discrimination in the provision of terminal facilities. Ownership or operation of terminal facilities is not a necessary prerequisite to the ability to discriminate. Thus, the critical issue for jurisdiction is that the degree of the Port's involvement enables the Port to discriminate. In this case, the Port has the ability to discriminate in the fees it charges by controlling access to private facilities.

Id.

The plaintiffs rely on Puerto Rico Ports Authority v. Federal Maritime Commission, 919

F.2d 799 (1st Cir. 1990), in which the First Circuit Court of Appeals found that the Puerto Rican

Ports Authority ("PRPA") was not a Terminal Operator under the Shipping Act with regard to its

activities in the port at Ponce, even though it imposed a service charge on common carriers at

that port.  The Court held that

> Section 10(d)(1) of the 1984 Act provides, in relevant part, that no "marine terminal
> operator may fail to establish, observe, and enforce just and reasonable regulations and
> practices relating to or connected with the receiving, handling, storing, or delivering
> property." Id. at § 1709(d)(1). A "marine terminal operator" is defined at § 3(15) as a
> person engaged "in the business of furnishing wharfage, dock, warehouse, or other
> terminal facilities in connection with a common carrier." Id. at § 1702(15). In order to
> uphold the Commission's exercise of jurisdiction in the instant case, we would have to
> conclude that, through the imposition of its harbor service fee, PRPA has become a
> "marine terminal operator" or "other person" as defined by the Shipping Acts. . . .
>
> A plain reading of §§ 3(15) and 10(d)(1) of the 1984 Act demonstrates that Congress did
> not intend that PRPA's activities at Ponce be subject to regulation under the Shipping
> Acts. PRPA, under any plausible interpretation, is not in the "business of furnishing
> wharfage, dock, warehouse, or other terminal facilities in connection with a common
> carrier" at the Port of Ponce. [Louis Dreyfus Corp. v.] Plaquemines [Port, Harbor and
> Terminal Dist., 21 Pike and Fischer Shipping Regulation Reports (S.R.R.) 219
> (I.D.1981), adopted, 21 S.R.R. 1072, (FMC 1982), appeal dismissed, No. 82-1941 (D.C.
> Cir. May 17, 1983)21 S.R.R. at 1083 (FMC 1982)] (Moakley, dissenting) ("Plaquemines
> does not own or operate any facilities serving common carriers by water. This [fact]
> should end the [jurisdictional] inquiry."). PRPA's sole function at Ponce is to provide
> such general harbor services as law enforcement, radio communications, harbor cleaning,
> and port captain services. While PRPA may furnish terminal facilities at San Juan and
> Mayaguez, the Commission properly did not base its jurisdiction on those activities. We
> hold that PRPA, through the imposition of a harbor service fee at Ponce, has not
> subjected itself to the jurisdiction of the Commission.

Id. at 802-803.

The Court agrees with the reasoning of Puerto Rico as applied to the allegations here, and

concludes that the Bridgeport Port Authority is not a "Marine Terminal Operator" within the

meaning of the Shipping Act.  Under the plain meaning of the Act, the Port Authority is not

engaged "in the business of furnishing wharfage, dock warehouse or other facilities in connection

with a common carrier."  46 U.S.C. App. § 1702(15).  The only terminal facility operated by the

Port Authority is the Water Street Dock, and it is undisputed that it is used only by the Ferry

Company, which is not a common carrier.   Although the Port Authority retains regulatory

authority over the private cargo terminals at Bridgeport Harbor, there are no claims that it

exercised significant control over the use of the terminals by common carriers or limited their

access to the terminals.  This conclusion is consistent with both Puerto Rico and Plaquemines

Port and reflects the intent of Congress in enacting the Shipping Acts: to encourage participation

by U. S. shipping in the international shipping cartels, but prohibit discrimination by terminal

facilities serving the commercial maritime trade.  Id. at 806-808.  Since the Port Authority

exercises little control over the operations of the private marine cargo terminals at the Bridgeport

Harbor, and since its control over the Ferry Company does not impact those private facilities, it

does not implicate the concerns behind the Shipping Act or make the Authority a "Marine

Terminal Operator" under the Shipping Act.

        As the Court finds that the FMC does not have jurisdiction over this action, it need not

further consider the application of primary jurisdiction.  See Fulton Cogeneration Assocs. v.

Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d Cir. 1996) ("As a threshold matter, of course,

a court must find that the agency has jurisdiction over the issue presented.").

        3.  Standing

        The Port Authority claims that because the Ferry Company does not pay the Passenger

Fee  (it merely collects it on behalf of the Port Authority) it does not have standing to pursue the

claims in the amended complaint.  See Def.'s Reply Mem. in Supp. of Mot. to Dismiss or Stay, at

8 ("[A]s an entity that does not pay the fee at issue here, the Ferry Company lacks standing to

assert its invalidity as a matter of law.").

The Second Circuit summarized the requirements of constitutional standing in Center for

Reproductive Law and Policy v. Bush, 304 F.3d 183 (2d Cir. 2002):

> A federal court has jurisdiction only if a claim presents a "case" or "controversy" under
> Article III of the U.S. Constitution. This "irreducible constitutional minimum" of standing
> requires (1) that the plaintiff has suffered an "injury in fact," i.e., an invasion of a
> judicially cognizable interest which is concrete and particularized as well as actual or
> imminent, rather than conjectural or hypothetical; (2) that there is a causal connection
> such that the injury is fairly traceable to the challenged conduct; and (3) that it is likely, as
> opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 191 (citations omitted).  The Court concludes that, although the Ferry Company does not

pay the Passenger Fee, it will have suffered an injury in fact should the Court determine that the

Fee is unlawful.  Indirect injury is sufficient to support standing as long as that injury is "fairly

traceable" to the challenged conduct.  See Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 529 (2d

Cir. 1983) ("The injury may be indirect ... but the complaint must indicate that the injury is

indeed fairly traceable to the defendant's acts or omissions.").  The harm to the Ferry Company is

fairly traceable to the Passenger Fee:  it increases the real cost of ferry transportation to its

customers, thereby depressing demand for such transportation.  In the absence of the Passenger

Fee, the Ferry Company could either charge the same rates it charges now but attract more

customers because of the lower real cost to the passengers or charge a higher rate for ferry

passage without depressing demand from its current level (or some combination).  The United

States Supreme Court in Bacchus Imports, Ltd. v. Dias, 468 U.S. 263 (1984) observed, in

response to the State of Hawaii's assertion that the plaintiffs had not demonstrated an economic

injury resulting from an allegedly discriminatory liquor tax because their customers bore the costs: "[E]ven if the tax is completely and successfully passed on [to consumers], it increases the price of their products as compared to the exempted beverages, and the wholesalers [plaintiffs] are surely entitled to litigate whether the discriminatory tax has had an adverse competitive impact on their business." Id. at 267.[12]

The Port Authority also claims that the Ferry Company lacks "prudential standing" to assert its claims.  Prudential standing is a discretionary doctrine, developed by the U.S. Supreme Court to "further protect, to the extent necessary under the under the circumstances, the purpose of Article III." Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1106 (2d Cir. 1992).  In applying the doctrine of prudential standing, "a court must ask whether a plaintiff's claim [1] rests on the legal rights of a third party, [2] asserts only a generalized grievance, or [3] asserts a claim that falls outside the zone of interests protected by the legal provision invoked." Center for Reproductive Law, 304 F.3d at 196.

The Port Authority claims that the Ferry Company's claims rest on the legal rights of a third party–its passengers.  While district courts are generally instructed to refrain from hearing cases based on the rights of third parties not involved in the litigation, such courts will permit third party standing in cases where: 1) there is a close relationship between the litigant and the third party or 2) the third person is somehow disabled from asserting its own right. Erwin Chemerinsky, Constitutional Law:  Principles and Policies,  § 2.5.4 at 82-84 (2d ed. 2002).

---

[12]Although the Court in Bacchus was addressing a liquor tax that was imposed directly on the plaintiffs, the Court finds that the reasoning of the Court in addressing the defendant's claim that the cost of the tax was passed to the consumers as applicable here.  Here, as in Bacchus, the economic costs of the tax are borne, at least in part, by the Ferry Company.

Here, there is no impediment to ferry passengers asserting their own rights–indeed, two ferry passengers are plaintiffs. However, at least one district court has held that a similar relationship between a firm and its customers "is one in which third party standing is warranted." Czajkowski v. Illinois, 460 F. Supp. 1265, 1275 (N. D. Ill. 1977). In Czajkowski, an Indiana cigarette retailer challenged an Illinois statute that "prohibit[ed] any person from transporting more than 2,000 untaxed cigarettes (10 cartons) into Illinois without a permit issued by the Illinois Department of Internal Revenue." Id. at 1269. The statute authorized both civil and criminal penalties. The State of Illinois argued that the cigarette retailer in Indiana –who had not transported any cigarettes into Illinois– did not have standing to challenge the statute. The District Court held that the retailer did have standing because of the economic impact on its business:

> Nevertheless, the customer-retailer relationship here is one in which third party standing is warranted. The gravamen of the retailers' complaint is that enforcement of the challenged statutes against the third party-customers infringes the constitutional rights of both groups *and causes indirect economic injury to the retailers' business*."

Id. at 1275 (emphasis added). Here, although the challenge is to the Passenger Fee, rather than to civil or criminal sanctions, the result of the imposition of the Passenger Fee is economic injury to the Ferry Company. As a result, the Court finds that the Ferry Company has standing to challenge the Passenger Fee.

For the foregoing reasons, the Port Authority's Renewed Motion to Dismiss or Stay [Doc. # 23] and Motion to Dismiss or Stay [Doc. #13] are DENIED.

B.  Motion for Partial Summary Judgment

The Port Authority has moved for partial summary judgment regarding the individual plaintiff Greg Rose.  The Port Authority claims that Rose lacks standing because he failed to pay the Passenger Fee himself.  Rather, the Passenger Fee was apparently paid by D & D Wholesale Flowers, Inc. ("D & D"), a corporation owned by Rose.  Rose argues that he does have standing because 1) he is the sole shareholder of D & D, which is a Subchapter S corporation; therefore any fee paid by D & D directly harms Rose by reducing his income; and 2) that Rose has, at times, taken the ferry for personal reasons and has paid the Passenger Fee himself on those occasions, without receiving reimbursement from D & D.  If the Court finds that Rose does not have standing, Rose asks that the Court direct D & D to be substituted as plaintiff for Rose.  The Port Authority argues that this request is inappropriate as a response to its motion for partial summary judgment, but notes in a footnote that it has advised Rose that it would not object to a "properly filed motion to substitute D & D as named plaintiff in place of Mr. Rose (subject to and without waiver of the right to bring a dispositive motion on D & D's claims if appropriate at a later time)."  Reply Mem. in Supp. of Def.'s Mot. for Partial Summ. J., at 1, fn.1.

In light of these representations, it appears that all parties agree that D & D would be a proper plaintiff in this action, and therefore there is no need for the Court to consider the question of whether Rose has standing as an individual to assert the claims in the amended complaint. Rather than requiring Rose to file a formal motion to substitute, the Court hereby orders that D & D be substituted as plaintiff for Rose.

For the foregoing reasons, the Port Authority's Motion for Partial Summary Judgment [Doc. #28] is DENIED.

SO ORDERED this  8th  day of September 2004, at Hartford, Connecticut.


_____         ___/s/ CFD_____
                                      **CHRISTOPHER F. DRONEY**
                                      **UNITED STATES DISTRICT JUDGE**