## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BRIDGEPORT AND PORT JEFFERSON :
STEAMBOAT COMPANY, ET AL., :
  Plaintiffs, :
    :  3:03-CV-599 (CFD)
    v. :
    :
BRIDGEPORT PORT AUTHORITY, :
  Defendant. :

## RULING ON MOTION FOR ATTORNEYS' FEES

### I. Introduction

   This case arises out of a suit between the plaintiffs, Bridgeport and Port Jefferson

Steamboat Company ("Ferry Company"), and the defendant Bridgeport Port Authority ("Port

Authority").  The Ferry Company challenged the legality of passenger fees the Port Authority

was charging on its ferries between Bridgeport, Connecticut and Port Jefferson, New York.

After a five-day bench trial, this Court awarded the Ferry Company nominal damages and

granted in part its request for injunctive relief.  On appeal to the Second Circuit, this Court's

ruling was affirmed.  The Supreme Court declined to grant certiorari.  See Bridgeport and Port

Jefferson Steamboat Company, et al. v. Bridgeport Port Authority, 567 F.3d 79 (2d Cir. 2009),

*cert. denied*, 130 S. Ct. 1075 (2010).  The Ferry Company has filed a motion for attorney's fees

and costs, as well as a motion for contempt.

### II. Background

   This case was filed on April 2, 2003.  Plaintiffs filed claims alleging that the collection of

the Passenger Fee: (1) violated the River and Harbors Appropriation Act of 1884; (2) violated the

"dormant" Commerce Clause of the U.S. Constitution; (3) violated the right to travel guaranteed by the Constitution; (4) violated the Tonnage Clause of the Constitution; (5) unjustly enriched the Port Authority; (6) was beyond the power granted to the Port Authority by the Connecticut statute that created it; (7) constituted an unfair tax or user fee under Connecticut law; and (8) violated the Connecticut Unfair Trade Practices Act.  Plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages.  The Court granted plaintiffs' motion to amend the complaint in September, 2009 to allege a claim under 42 U.S.C. §1983 (based on the same underlying facts as the Commerce Clause claim).

The case was tried during a five-day bench trial in April, 2006.  On July 3, 2008, the Court filed its Memorandum of Decision, holding that the Port Authority's assessment of a portion of the Passenger Fee that was not related to the passengers' use of the port violated the Commerce Clause and the Tonnage Clause of the U.S. Constitution.  The Court awarded nominal damages to the Port Authority ($1) and damages in the amount of $494.63 to passenger plaintiff D&D Flowers.  In addition, the Court enjoined the Port Authority from the further use of the revenues from the Passenger Fee to fund activities that do not benefit the ferry passengers.  The Court held the Port Authority shall not be allowed to collect a Passenger Fee in an amount that exceeds what is necessary for their expenses that benefit ferry passengers.  The Court's ruling was affirmed by the Second Circuit, and the Supreme Court denied certiorari.

The plaintiffs now move for attorneys' fees.  They are seeking $1,835,163 in fees, plus $94,842.71 in costs, for a total of $1,930,005.71.

**III.     Applicable Law and Discussion**

**A.     Recovery of Attorney's Fees and Costs under 42 U.S.C. § 1988**

Generally, parties to a lawsuit are expected to pay their own attorney's fees, unless a statute authorizes another arrangement.  See generally Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975).  Title 42 of the United States Code provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  This is an action under § 1983.  Attorney's fees are authorized under § 1988 in part to encourage the victims of civil rights violations to bring actions in court to vindicate those rights.  See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968).

**B.     Whether to Award Fees and Costs**

1.     Prevailing Party

"The question of whether plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a threshold question."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d. Cir. 1998).  The Supreme Court has held that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-112 (1992). "A plaintiff who wins nominal damages is a prevailing party under §1988." Id. at 112.

The Port Authority does not directly dispute that the Ferry Company is a prevailing party. Instead, in its opposition to the motion for attorneys' fees, the Port Authority suggests a fee

award would be improper because "plaintiffs had limited success." But the degree of the plaintiffs' success is not a relevant factor for determining, as a threshold matter, if the plaintiffs "prevailed." Instead, the Supreme Court has instructed district courts to ask whether the relief plaintiffs obtained materially altered the legal relationship between the parties. The relief awarded by this Court—nominal damages and an injunction—has done so. First, the Port Authority is now enjoined from charging fees over the amount necessary to cover the expenses that directly benefit ferry passengers. This has materially altered the relationship between the Port Authority and the Ferry Company. Second, the Port Authority is responsible to the Ferry Company for nominal damages of one dollar. "A plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages. A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." Id. Therefore, the court finds that plaintiffs are the prevailing party.

   2. Denial of Fees

   A prevailing party is not automatically entitled to fees. However, as the Second Circuit has noted, "the legislative history of § 1988 makes clear that the plaintiff who has prevailed on a claim under § 1983 should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Orchano v. Advanced Recovery, 107 F.3d 94, 97 (2d Cir. 1997). The case law suggests that such "special circumstances" are rare and unusual. For example, courts in this Circuit have refused to deny the prevailing party an award based on the following circumstances: the defendant's financial hardship or inability to pay, Sharrock v.

Harris, 489 F. Supp. 913 (S.D.N.Y. 1980); that the action provided a private benefit to the

plaintiff rather than a public benefit; Wheatley v. Ford, 679 F.2d 1037, 1040 (2d Cir. 1982); legal

fee arrangements, Sabir v. Jowett, 214 F. Supp. 2d 226, 251-52 (D. Conn. 2002) (Droney, J.);

and the degree to which plaintiff prevailed, LeBlanc, 143 F.3d at 757.  This case does not involve

any "special circumstances" that would render an award to the Ferry Company unjust.  The Port

Authority has failed to point to any such circumstance that would justify the unusual step of

denying fees to a prevailing party, relying instead on arguments that go to the proper amount of

the award.  Since the court has determined that the Ferry Company is entitled to some award as

the prevailing party, the court now turns to a determination of that amount.

     **C.**     **Determining the Amount of Fees and Costs**

     To determine the amount of fees to award, courts traditionally employed the "lodestar"

method: first the court multiplied a reasonable number of hours worked by a reasonable hourly

rate to calculate the "lodestar" amount, and then adjusted the lodestar amount up or down based

on case-specific factors.  See, e.g., Adorno v. Port Authority of New York and New Jersey, 685

F.Supp. 2d 507 (S.D.N.Y. 2010).  Recently, however, the Second Circuit has suggested the term

"lodestar" be abandoned.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, 522 F.3d 182, 190 (2d Cir. 2008).  The Second Circuit outlined a slightly different

process for calculating fees.  The district court should first determine a "reasonable hourly rate,"

based on case-specific variables, and then multiply that rate by the number of hours reasonably

expended to arrive at a "presumptively reasonable fee."  Id.  That amount is only

"presumptively" reasonable; the court may still adjust that amount based on relevant factors

specific to the instant case.  See  Robinson v. City of N.Y., No. 05 Civ. 9545(GEL), 2009 WL

3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively

reasonable fee, the court must then consider whether an upward or downward adjustment of the

fee is warranted based on factors such as plaintiffs' success in the litigation."); McDow v.

Rosado, 657 F.Supp.2d 463, 467 (S.D.N.Y.2009) ("unstated, but again presumed, is that the

presumptively reasonable fee is just that—a presumptive figure that can be further adjusted as

circumstances warrant").

The Supreme Court has identified twelve factors that should be taken into account when

calculating the "reasonable hourly rate," and that would warrant an adjustment of the

presumptively reasonable fee.  See Eckerhart, 461 U.S. 429-30, citing Johnson v. Georgia

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  These factors are: (1) the time and labor

required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal

service properly; (4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by

the client or the circumstances; (8) the amount involved and the results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar

cases.  See Johnson, 488 F.2d at 717-719.  One factor that should not be considered is the

defendant's municipal status.  Cohen v. West Haven Board of Commissioners, 638 F.2d 496, 505

(2d Cir. 1980).[1]

The Supreme Court has held that "'the most critical factor' in determining the

---

[1] The Port Authority is a quasi-independent agency of the City of Bridgeport, formed in
1993 under Connecticut state law.  The Port Authority was created pursuant to Conn. Gen. Stat.
§§ 7-329a to 7-329u, and governed by Chapter 2.28 of the Bridgeport City Code.

reasonableness of a fee award 'is the degree of success obtained.'"  Farrar v. Hobby, 506 U.S.

103, 114 (1992), quoting Hensley, 461 U.S. at 436.  As such, "[w]here a plaintiff achieves only

limited or partial success, an adjustment may be made, even where the plaintiff's unsuccessful

claims were nonfrivolous and asserted in good faith."  Adorno v. Port Authority of New York

and New Jersey, 685 F.Supp.2d 507, 512 (S.D.N.Y. 2010).

**1. Reasonable Hourly Rate**

Reasonable hourly rates "are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation."  Blum v.

Stenson, 465 U.S. 886, 895 (1984).  There is a rebuttable presumption that the reasonable hourly

rate is one based on prevailing fees in the district where the case was litigated.  See Arbor Hill,

522 F.3d at 191-193.

Along with this motion, plaintiffs submitted a declaration by lead attorney Martin Domb

that describes the work done by plaintiffs' counsel over the six-and-a-half year history of this

litigation.  Dec. of Martin Domb, October 9, 2009, ECF No. 215.  Three law firms have

represented the Ferry Company in this case: Hill, Betts & Nash LLP from the commencement of

the case until November 2005, Akerman Senterfitt LLP from November 2005 to date,[2] and

Cohen and Wolf P.C. from the commencement of the case to date.  Hill, Betts & Nash is based in

New York.  Akerman Senterfitt has offices in several locations, but all the lawyers from that firm

who worked on this case were based in New York.  These two firms have had principal

responsibility for this case.  Cohen and Wolf is a Connecticut firm with several Connecticut

offices; the two main lawyers from Cohen and Wolf who worked on this case, Jonathan Bowman

---

[2] Lead lawyer Martin Domb transferred from Hill, Betts & Nash to Akerman Senterfitt in November 2005, and brought this case with him.

and Stewart Edelstein, work out of the firm's Bridgeport office.  Cohen and Wolf's role has been

to advise on local Connecticut rules and practice, and to participate in strategic decisions and at

trial.

As for the <u>Johnson</u> factors, this was a complicated, time-consuming case that involved

novel legal issues of maritime and constitutional law.  As this court recognized in its

memorandum of decision, "the great majority of the courts that have previously considered

similar user fees have reached the opposite conclusion."  Mem. of Decision 33, July 3, 2008,

ECF No. 186.  Attorney Domb stated in his declaration that the Ferry Company's legal team

spent over 5,000 hours on the case, and that commitment prevented him from accepting other

employment opportunities. The court has no doubt that the lead lawyers in this case are

experienced, highly qualified attorneys who were up to the task of litigating this complicated

case.  With these observations in mind, the court turns to a calculation of a reasonable hourly

rate.

The Ferry Company claims the following hourly rates for the lawyers and legal staff at the

various firms who worked on the case:

| Lawyer | Firm | Experience | Rate Sought |
|---|---|---|---|
| Lead Counsel:<br>Martin Domb | Akerman Senterfitt<br>(formerly at Hill, Betts & Nash) | 31 years | $460 |
| Jonathan S. Bowman<br>Stewart Edelstein | Cohen and Wolf<br>Cohen and Wolf | 43 years<br>35 years | $460<br>$460 |
| Other Partners:<br>Katherine E. Giddings<br>Frank H. Loomis | Akerman Senterfitt<br>Hill, Betts & Nash | 18 years<br>41 years | $350<br>$450 |

-8-

| Associates: | | | |
|---|---|---|---|
| Jeremy A. Shure | Akerman Senterfitt | 6 years | $250 |
| Jordan M. Smith | Akerman Senterfitt | 6 years | $250 |
| Adam J. Blank | Cohen and Wolf | 6 years | $250 |
| Jason A. Buchsbaum | Cohen and Wolf | 5 years | $240 |
| Deborah S. Erickson | Cohen and Wolf | 4 years | $220 |
| Elizabeth A. McCoy | Hill, Betts & Nash | 21 years | $300 |
| Eric M. Underriner | Hill, Betts & Nash | 14 years | $300 |

In addition, the Ferry Company seeks fees of $150 an hour for a summer associate who worked for Ackerman Senterfitt, fees of $125 an hour for paralegals who worked on the case,[3] and fees of $95 an hour for a legal librarian at Ackerman.  The Port Authority does not dispute the reasonableness of these hourly rates.[4]

In support of these rates, the Ferry Company submitted an affidavit by Frank Silvestri, Jr., a lawyer who has practiced civil litigation in Connecticut since 1975.  As a member of the management committees of two Connecticut firms, Silvestri became familiar with the prevailing rates for attorneys in the district.  See Aff. Re Mot. For Attorney Fees, October 9, 2009, ECF. No. 218.  Based on a review of the attorneys' qualifications, the papers in this case, and case law from this district, Silvestri determined that an hourly rate of $450 to $475 is reasonable for attorneys Domb, Edelstein and Bowman.  Id. at ¶ 9.  He also determined that the following are reasonable hourly rates for other lawyers and paralegals:

---

[3] The Ferry Company seeks fees of $125 of an hour for paralegals, with the exception of Elizabeth Kim, a paralegal at Ackerman Senterfitt.  For Kim the plaintiffs seek fees of only $55 an hour.

[4] Instead of disputing the hourly fees plaintiffs' counsel charged, the Port Authority focuses its memorandum in opposition on reasons why no fee should be awarded in the first place, or, in the alternative, why the presumptively reasonable fee amount should be adjusted downward.

| | |
|---|---|
| Associates with > 8 years experience | $270 to $300 |
| Associates with 4 to 8 years experience | $240 to $270 |
| Associates with 1 to 4 years experience | $210 to $240 |
| Paralegals | $125 to $150. |

Id. at ¶ 10.

The hourly rates sought by counsel for the Ferry Company fall within these ranges Silvestri suggested, but they are slightly higher than recent awards of attorneys' fees in this district.  See e.g., Pappas v. Watson Wyatt & Co., 04-cv-304, 2008 WL 45385 at *5 (D. Conn. January 2, 2008) (Burns, J.) (awarding fee based on hourly rate of $400 for lawyer primarily responsible for employment discrimination litigation, while noting "this case was not particularly complex and did not present a large number of particularly unusual issues"); M.K. v. Sergi, 578 F.Supp. 2d 425, 427-429 (D.Conn. September 25, 2008) (awarding fees of $375 an hour to lead lawyers in IDEA case, and summarizing cases); Tolnay v. Wearing, 02-cv-1514, 2007 WL 2727543 at *2 (D.Conn. September 19, 2007) (awarding fees of $350 an hour for two attorneys who successfully represented the plaintiff in a "complex and time-consuming" civil rights action); cf. Muhammed v. Martoccio, 06-cv-1137, 2010 WL 3718560 (D.Conn. September 13, 2010) (awarding fee based on hourly rate of $500 for plaintiff's trial attorney who had "substantial experience litigating criminal and civil cases").

Mindful of the Second Circuit's admonition that attorney's fees be awarded with an "eye to moderation," New York State Assoc. for Retarded Children v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983), the court finds that $425 an hour is a reasonable hourly fee for attorneys Domb, Bowman and Edelstein.   That fee is also appropriate for Attorney Loomis, a partner with over 40

years of experience, but who spent considerably less time on this case than lead counsel.    The court also finds that $325 an hour is a reasonable hourly fee for Attorney Giddings.

As for the associates that worked on the case, the court finds that a reasonable hourly fee for the two most senior associates, Attorneys McCoy and Underriner, is $275 an hour, and that a reasonable fee for the other associates is $225 an hour.  The court also finds that the reasonable hourly fee for the summer associate and paralegals who worked on the case is $100 an hour, and $95 an hour is reasonable for the legal librarian.  See e.g., M.K. v. Sergi, 578 F.Supp. 2d at 428 (awarding fees of $100 to paralegals).[5]

### 2. Reasonable Number of Hours

A request for attorney's fees should be accompanied by contemporaneously created time records that reflect, for each attorney, the date, hours expended, and a summary of the work performed.  Hensley, 461 U.S. at 434.  In determining a reasonable number of hours, the district court should review the time records to insure that time was "usefully and reasonably expended," and the court should subtract those specific hours that were not reasonable.  Lunday v. City of Albany, 42 F.3d 131, 133–34 (2d Cir. 1994). As an alternative method, "a district court can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours."  Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  See also, In re Agent Orange Product Liability Litigation, 818 F.2d 226, 238 (2d Cir. 1987) ("Here, the fee petitions, to say the least, were voluminous, consisting of tens of thousands of pages of billing sheets and other exhibits. To suggest that the district court could not take advantage of percentage reductions in such a context would be absurd.")

---

[5] A spreadsheet calculating the fee award based on these awarded rates is attached to this opinion as Exhibit A.

In this case, the Ferry Company has submitted voluminous, contemporaneously created time records. Dec. of Martin Domb, Exs. C – E.  In total, the three firms representing the Ferry Company billed it for 5,177 hours of work.  Attorney Domb supplied a summary which shows how many hours were billed during each stage of the litigation.  The most time-intensive stages of this litigation were trial preparation (977 hours), post-trial briefing and argument (698 hours), appeal (531 hours), work with experts (431) and party depositions (414).  For this motion, the Ferry Company applied an overall reduction of 10%  to the total number of hours billed, resulting in a request for fees for 4,660 hours of work.  The 10% reduction was not made to account for any specific inefficient use of time, but because "in a case of this magnitude . . . some degree of inefficiency was inevitable." Dec. of Martin Domb, 10.

The Port Authority disputes the reasonableness of these hours.  Specifically, the Port Authority objects to six categories of activity which it believes should be excluded from the hours calculation: (1) time spent on (an ultimately unsuccessful)  motion for preliminary injunction; (2) time spent on investigating the Port Authority's imposition of a surcharge; (3) time spent on what the Port Authority characterizes "efforts to shut down Port Authority;" (4) time spent amending the complaint; (5) time spent on efforts to enforce the judgment; and (6) time spent on additional, unrelated expenses including efforts to recruit potential class counsel. The Port Authority has listed those time entries which it believes represents activities in those categories, and has identified 812.32 hours it believes were unreasonably expended.

The Port Authority's approach to identifying these hours is overly broad.  For example, in its identification of hours devoted to the motion for a preliminary injunction, the Port Authority has included activities that were central to the overall litigation.  For example, the Port Authority

objects to an entry in the time records which records 9 hours on February 10, 2004 spent on "tel[ephone] conf[erence with] E. Underriner re legal research for possible motion for TRO and preliminary injunction."  But that same entry also includes "deposition of Brian McAllister at Bridgeport."  Mem. of Law in Opp. To Pls.' Renewed Mot. for Attorneys' Fees, Ex. A, p. 1, Nov. 17, 2009, ECF No. 227-1.  The Port Authority does not indicate how those nine hours billed on February 10 should be sub-divided into hours reasonably expended and unreasonably expended.  This problem runs throughout the Port Authority's identification of the hours to which they object.  There are also some hours which are counted in multiple categories, overly inflating the Port Authority's calculation of unreasonable hours.

As to the specific categories of work which the Port Authority claims are unreasonable, the first, the work on the preliminary injunction, goes to the extent of the Ferry Company's success in this case.  Whether or not the presumptively reasonable fee should be reduced based on the extent of the Ferry Company's success will be addressed in the next subsection below.

Second, the Port Authority claims the hours spent on investigating and challenging the Port Authority's collection of a surcharge were hours unreasonably spent.  But how the surcharge collection related to the Passenger Fee collection, and the impact of both on passengers as well as the Port Authority's finances were important to the case.  The court noted the surcharge and how it was collected in its Memorandum of Decision, ECF No. 186, p. 6.

As for the third category of activities, what the Port Authority terms "efforts to shut down the Port Authority," a review of the entries highlighted by the Port Authority shows that many of those entries are for hours related to settlement efforts.  The Office of the Mayor of the City of Bridgeport understandably took an interest in this case, and discussed a possible settlement with

the parties, including a proposal that the Ferry Company take over the ferry terminal building owned by the Port Authority.  The court does not agree that these efforts by the Ferry Company's counsel were an unreasonable use of time.

Fourth, the Port Authority disputes the approximately 36 hours that plaintiffs' counsel devoted to amending the complaint.  The overinflation of the Port Authority's calculations are evident here—included in the 36 hours the Port Authority identifies are hours spent on this motion for attorneys' fees.  The Ferry Company does not separate out which hours should be attributed to the motion to amend, and which to the motion for attorneys' fees.  Because the motion and the proposed amendment were very brief, the court does not consider time spent on them to have been unreasonable.

Fifth, the Port Authority highlights time spent on what it characterizes as "attempts to enforce the judgment."  It argues it is the job of the court, not the Ferry Company, to enforce the judgment and any time spent doing so was unreasonably spent.  Those time entries include activities such as arranging a FOIA request to the Port Authority and drafting a memo on "enforcing money judgment against the Port Authority."  Mem. of Law in Opp. To Pls.' Renewed Mot. for Attorneys' Fees, Ex. A, p. 22, Nov. 17, 2009, ECF No. 227-1.  Plaintiffs' counsel says that time spent on "enforcing a money judgment" was in fact time spent on researching enforcement of a potential award of attorneys' fees, in advance of bringing these motions.  Counsel also argues that time spent on researching the enforcement of the injunction was an important part of their client's representation, and was well spent.  Because the Port Authority's identification of disputed hours in this category suffers from the same defects as discussed above, the court declines to subtract these specific hours.

-14-

Finally, the Port Authority disputes hours spent on various other activities, including efforts to work with potential class counsel.  Counsel for the Ferry Company deny that they ever proactively sought to work with other counsel on a potential class action, but admits that they met with other lawyers who approached them after the appeal in this case.  The lawyers for the Ferry Company say they never offered those other lawyers any assistance other than providing them with some publicly available documents.  Given counsel's limited contact with the other lawyers, and the fact they acted with their client's permission, the court declines to subtract these specific hours.

Nevertheless, although the court finds that the specific categories of hours the Port Authority identified were reasonably expended, the total number of hours spent on this case seem excessive for other reasons.  First, more half of all the hours billed on this case were billed by Martin Domb, who commands the highest billing rate.  Courts have made across-the-board reductions in hours for "lack of delegation."  Winkler v. Metropolitan Life Ins. Co, 2006 WL 2347826 *2 (making a twenty percent across-the-board reduction for excessive charges and lack of delegation when lawyer could have delegated preparation of papers to lower-billing associate).  Also, the fact that Domb's firms (first Hill, Betts & Nash and then Ackerman Senterfitt) had to coordinate with Cohen and Wolf means that some efforts were duplicated and inter-firm communications took extra time.  See e.g., Handschu v. Special Services Div, 727 F.Supp.2d 239, 255 (making ten percent across-the-board reduction when for duplication of effort when five veteran attorneys who worked on the case all billed at the top rate).  For these reasons, the court will apply an additional fifteen percent across-the-board reduction to the hours billed in this case.  Therefore, after an original total of 5177 hours billed, and the plaintiffs' voluntary ten percent

reduction down to 4659 hours billed,[6] the application of this additional fifteen percent reduction results in a reasonable hours total of 3960.

These hours, times the adjusted rates described above, result in a presumptive reasonable fee of $1,435,576.[7]

### 3. Reasonable Adjusted Fee

Having determined the presumptively reasonable fee, the final step in the fee determination is to inquire whether an upward or downward adjustment is required.  The Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  Farrar v. Hobby, 506 U.S. 103, 114 (1992), quoting Hensley, 461 U.S. at 436.  The Second Circuit has recently explained how district courts should consider the degree of success obtained:

> A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims. . . . Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved. . . . Indeed, this comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case.

Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 152 (internal quotations and citations omitted).  In making this assessment, courts have rejected a proportionality rule, that is awarding the prevailing party fees in the same ratio as the monetary success achieved.  See e.g., City of Riverside v. Rivera, 477 U.S. 561, 578 (1986).  While a court may exclude hours spent on "several unsuccessful claims," Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004), "where the

---

[6]Plaintiffs' counsel calculated the 10 percent reduction by subtracting 517 from 5117 to get 4660.  The actual figure is 4659.3, and the court has rounded down to the nearest whole hour.

[7]See Exhibit A, attached.

successful and the unsuccessful claims were interrelated and required essentially the same proof," the fee amount need not be reduced.  Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997).

In this case, the plaintiffs brought claims for damages or injunctive relief under seven different legal theories: (1) the Commerce Clause of the U.S. Constitution; (2) the constitutional right to travel; (3) the Tonnage Clause of the U.S. Constitution; (4) the Rivers and Harbors Appropriation Act of 1884; (5) unjust enrichment under Connecticut law; (6) the statute that created the Bridgeport Port Authority, Conn. Gen. Stat. §§7–329a to 7–329u, and (7) the Connecticut Unfair Trade Practices Act.  This court, in its decision, found that the passenger fee collected by the Port Authority constituted a constitutional violation under the Commerce Clause, the right to travel and the Tonnage Clause.  It also ruled that the plaintiffs had failed to establish that the passenger fee constituted unjust enrichment as to the Ferry Company,[8] or that the collection of the fee violated the Connecticut Unfair Trade Practices Act.  Finally, the court declined to reach the merits of either the River and Harbors Appropriation Act claim or the Conn. Gen. Stat. §§7–329a to 7–329u claim.  In both cases, the court said it was not clear whether the statutes provided for private rights of action, but any relief under either statute would be duplicative, so the court did not need to reach those issues.  Mem. of Decision 24–39, July 3, 2008, ECF No. 186.

As remedies, plaintiffs sought a declaratory judgment, a permanent injunction, $9,038,500 in damages for the Ferry Company, and damages for the passenger plaintiff.  The court awarded a permanent injunction enjoining "the Port Authority from the further use of the

---

[8]The court did not decide the issue of whether the passenger fee constituted unjust enrichment as to the individual passenger plaintiff, because it decided that any such relief under this theory would be duplicative.  Mem. of Decision 36–37, July 3, 2008, ECF No. 186.

revenues from the Passenger Fee to fund its activities that are unrelated to and do not benefit the ferry passenger or approximate their use of the Port," nominal damages of $1 to the Ferry Company,[9] and damages of $494.63 to the passenger plaintiff.  Id. at 40–43.

The fact that the court ruled in the plaintiffs' favor on only three of the seven claims does not diminish the degree of success obtained.  "Where a particular case involves several legal theories relating to a common core of underlying facts, a court need not analyze fees on a claim-by-claim basis, but instead "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Sabir v. Jowett, 214 F.Supp.2d 226, 249 (D.Conn. 2002) (Droney, J.) (quoting Hensley, 461 U.S. at 435).  All seven of the plaintiffs' claims in this case related to the same set of underlying facts, which is why the court did not need to reach the merits on all seven, since once the court found the passenger fee violated the U.S. Constitution, any additional relief under federal or state statutes would have been duplicative.

However, the limited monetary damages award to the Ferry Company does impact the court's consideration of the degree of success obtained.  See Farrar, 506 U.S. at 114. ("Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded.") The Ferry Company's failure to prevail on the $9 million they sought in compensatory damages is significant, and the court finds the plaintiffs' success was limited to some degree.  In determining an overall

---

[9]In declining to award compensatory damages to the Ferry Company, the court said the Ferry Company had not provided substantial evidence of its damages.  Because ferry ridership has risen steadily since 1993, and because the ferry operation has been highly profitable, this court did not award compensatory damages to the Ferry Company despite the constitutional violation.

reduction to the presumptively reasonable fee, there is no precise formula on which a district court may rely.  But the following factors are helpful guideposts for the court's analysis: how much time at trial was devoted to arguments related to damages compared to arguments related only to the injunction, to the extent the arguments were separate;  how much preparation time was devoted to damages arguments compared to injunction-only arguments; how the remedies obtained compare to the remedies sought; and how important each form of relief was to the Ferry Company.

The plaintiffs called thirteen witnesses at trial.  Of those, four testified extensively about how the passenger fee had impacted the Ferry Company's revenues, the central topic in the claim for damages.  William Merritt, the acting Chief Financial Officer of McAllister Towing, the Ferry Company's parent company, testified that the Ferry Company's profits would have increased significantly in the absence of fee overcharge.  Frederick Hall, the Ferry Company's general manager, similarly testified that in the absence of an overcharge, the Ferry Company would have experienced increased revenues and profits.  Brian McAllister, the Ferry Company's president, who along with Hall has set the Company's rates since 1993, testified that if the Passenger Fee had been lower, the Company would have either raised their rates or seen ridership increase.  Alan Schachter, the plaintiffs' principal expert witness, is a forensic accountant who testified at length about three models he developed to calculate by how the Passenger Fees exceeded the reasonable cost of the facilities and services that the Port Authority has actually provided to the ferry operation.  In addition to examining these witnesses, plaintiffs' counsel also spent significant time cross-examining the defendant's two expert witnesses, Edward Deak and John Arnold, who testified about the effect of the Passenger Fee on the Ferry Company's

revenues.  Of course, much of these witnesses' testimony was not specifically about the remedies sought.  Much of the testimony was relevant to both damages and the injunction, because it helped to establish the Port Authority's liability.  While it is impossible to quantify exactly what testimony or which witnesses should be attributed to the plaintiffs' request for damages and which to plaintiffs' request for an injunction—because the issues related to both necessarily overlap—in the court's estimation fifteen to twenty percent of the trial testimony was directly related to plaintiffs' unsuccessful claim for damages.

Just as the court cannot calculate precisely how much time during trial was devoted to damages, neither can the court calculate precisely how much time counsel devoted to the damages claim over the course of their representation.  Plaintiffs' attorneys report having spent 431 hours on "work with experts," 414 hours on depositions and 977 hours on trial preparation. See Dec. of Martin Domb, Exs. C–E.  Given the complexity of the expert testimony in this case, it is likely that plaintiffs' counsel had to devote more time to preparing for the depositions and examinations of the accounting experts than for other witnesses.  In the court's estimation, plaintiffs' counsel likely spent fifteen to twenty percent of their representation preparing the plaintiffs' claim for damages.

Next, the court considers the relief sought compared to the relief obtained.  In this case, plaintiffs sought injunctive relief and over $9 million in damages.  They obtained the injunction, compensatory damages of $494.63 for passenger plaintiff D&D Flowers, and $1 in nominal damages for the Ferry Company.  Although courts have rejected a strict "proportionality rule," see City of Riverside, 477 U.S. at 578, in determining the degree of success obtained the size of the plaintiffs' damages claim is relevant.  Had the Ferry Company sought only $50,000 in

damages, an award of nominal damages would have reduced their degree of success to a lesser

extent.  In this case, the difference between the damages the plaintiffs hoped to win and the final

award diminishes their overall degree of success.

Finally, it is important to note that though plaintiffs did not recover the $9 million in

damages they sought, the injunction they obtained was significant.  It will have a long, future

effect, regulating the relationship between the parties as long as their relationship to the ferry

service remains the same.

Weighing these factors, the court further reduces the presumptively reasonable fee by 25

percent, to account for the partial degree of success achieved.  Therefore, the court awards

$1,076,682.04 in fees.

### 4. Costs

The plaintiffs also seek $94,842.71 in out-of-pocket costs.  "[A]ttorney's fees awards

include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to

their clients." LeBlanc-Sternberg, 143 F.3d at 763 (quoting United States Football League v.

National Football League, 887 F.2d 408, 416 (2d Cir.1989)).  These costs include $19,822.23

already filed in a bill of costs (ECF No. 206), and $303 taxed by the Court of Appeals.

Plaintiffs' counsel has submitted detailed records of the costs which the Ferry Company has paid.

Dec. of Martin Domb, Exs. J, K and L.  The bulk of costs relate to court reporters, photocopies

and telephone and communications.  The court finds these costs to be reasonable for a litigation

of this duration and complexity.

**IV.      Conclusion**

For the reasons set forth above, the plaintiffs' motions for attorney fees [Dkt. # 209 and #214] are GRANTED in part.  The Port Authority shall pay the Ferry Company $1,171,524.75 in fees and costs, in accordance with this ruling.

SO ORDERED this 22nd  day of February 2011, at Hartford, Connecticut.


 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

| Firm/Attorney | Requested Rate | Awarded Rate | Requested Hours | Hours with 10% Reduction | Hours Further Reduced by 15% | Requested Rate x Reduced Hours | Awarded Rate x Awarded Hours |
|---|---|---|---|---|---|---|---|
| **Akerman Senterfitt** | | | | | | | |
| Martin Domb | 460 | 425 | 1333 | 1199.7 | 1019.745 | $ 551,862.00 | $ 433,391.63 |
| Katherine Giddings | 350 | 325 | 3 | 2.7 | 2.295 | $ 945.00 | $ 745.88 |
| Jeremy Shure | 250 | 225 | 606 | 545.4 | 463.59 | $ 136,350.00 | $ 104,307.75 |
| Jordan Smith | 250 | 225 | 183 | 164.7 | 139.995 | $ 41,175.00 | $ 31,498.88 |
| Vincent Falcone | 150 | 100 | 3 | 2.7 | 2.295 | $ 405.00 | $ 229.50 |
| Lindsay Goldblatt | 125 | 100 | 8 | 7.2 | 6.12 | $ 900.00 | $ 612.00 |
| Rose Marie Illuzi | 125 | 100 | 8 | 7.2 | 6.12 | $ 900.00 | $ 612.00 |
| Elizabeth Kim | 55 | 100 | 2 | 1.8 | 1.53 | $ 99.00 | $ 153.00 |
| Howard Kogan | 150 | 100 | 5 | 4.5 | 3.825 | $ 675.00 | $ 382.50 |
| Ben Werber | 125 | 100 | 9 | 8.1 | 6.885 | $ 1,012.50 | $ 688.50 |
| Larry G. Stallings | 95 | 95 | 1 | 0.9 | 0.765 | $ 85.50 | $ 72.68 |
| | | | | | | | |
| **Cohen and Wolf** | | | | | | | |
| Jonathan Bowman | 460 | 425 | 309 | 278.1 | 236.385 | $ 127,926.00 | $ 100,463.63 |
| Stewart Edelstein | 460 | 425 | 272 | 244.8 | 208.08 | $ 112,608.00 | $ 88,434.00 |
| Adam Blank | 250 | 225 | 41 | 36.9 | 31.365 | $ 9,225.00 | $ 7,057.13 |
| Jason Buchsbaum | 240 | 225 | 15 | 13.5 | 11.475 | $ 3,240.00 | $ 2,581.88 |
| Deborah Erickson | 220 | 225 | 18 | 16.2 | 13.77 | $ 3,564.00 | $ 3,098.25 |
| Jillian Edo | 125 | 100 | 2 | 1.8 | 1.53 | $ 225.00 | $ 153.00 |
| Teresa Hankcock | 125 | 100 | 1 | 0.9 | 0.765 | $ 112.50 | $ 76.50 |
| Sandee Molden | 125 | 100 | 8 | 7.2 | 6.12 | $ 900.00 | $ 612.00 |
| Victoria Schneider | 125 | 100 | 3 | 2.7 | 2.295 | $ 337.50 | $ 229.50 |
| Kyle Thompson | 125 | 100 | 1 | 0.9 | 0.765 | $ 112.50 | $ 76.50 |
| Eileen Treanor | 125 | 100 | 9 | 8.1 | 6.885 | $ 1,012.50 | $ 688.50 |
| C.E. Williams | 125 | 100 | 8 | 7.2 | 6.12 | $ 900.00 | $ 612.00 |
| | | | | | | | |
| **Hill, Betts & Nash** | | | | | | | |
| Martin Domb | 460 | 425 | 1459 | 1313.1 | 1116.135 | $ 604,026.00 | $ 474,357.38 |
| Frank Loomis | 450 | 425 | 38 | 34.2 | 29.07 | $ 15,390.00 | $ 12,354.75 |
| Elizabeth McCoy | 300 | 275 | 32 | 28.8 | 24.48 | $ 8,640.00 | $ 6,732.00 |
| Eric Underriner | 300 | 275 | 778 | 700.2 | 595.17 | $ 210,060.00 | $ 163,671.75 |
| Kenneth McGinish | 125 | 100 | 20 | 18 | 15.3 | $ 2,250.00 | $ 1,530.00 |
| Otmaha Chiong | 125 | 100 | 2 | 1.8 | 1.53 | $ 225.00 | $ 153.00 |
| | | | | | | | |
| **Total Hours** | | | **5177** | **4659** | **3960** | | |
| | | | | | | | |
| **Requested Fee** | | | | | | $ 1,835,163.00 | |

| | |
|---|---|
| **Presumptively Reasonable Fee** | **$ 1,435,576.05** |
| - 25% Overall Reduction for Degree of Success Obtained | - $ 358,894.01 |
| | |
| **Fee Award** | **$ 1,076,682.04** |
| plus costs | + 94,842.71 |
| | |
| **Total Award** | **$ 1,171,524.75** |